UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| ABAXIS, INC., | ) | Case No.: 10-CV-02840-LHK |
| Plaintiff, | ) ) | ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS |
| v. | ) ) | |
| CEPHEID, | ) ) | |
| Defendant. | ) ) ) | |

Plaintiff Abaxis, Inc. moves to dismiss Defendant Cepheid's eighth defense and ninth counterclaim. Dkt. No. 33 ("Mot."); *see also* Dkt. No. 39 ("Reply"). Cepheid opposes the motion. Dkt. No. 35 ("Opp'n"). After reviewing the parties' submissions, considering the relevant legal authorities, and hearing oral arguments, the Court hereby GRANTS Abaxis' motion to dismiss with leave to amend.

**I. BACKGROUND**

In its First Amended Complaint ("FAC"), Abaxis alleges that Cepheid is infringing four of its patents and is in breach of a license agreement. Dkt. No. 24. Cepheid has denied liability. In its Answer, Cepheid raises ten defenses and asserts eleven counterclaims. Dkt. No. 32 ("Ans."). Cepheid's Eighth Defense and Ninth Counterclaim are at issue here. They allege that Abaxis engaged in inequitable conduct during the prosecution of United States Patent Nos. 5,413,732 ("the '732 patent"), 5,624,597 ("the '597 patent"), 5,776,563 ("the '563 patent"), and 6,251,684 ("the

1

'684 patent") (collectively "the patents-in-suit").[1] In addition, Cepheid alleges that Abaxis, through its employees and/or its patent attorneys, fraudulently misrepresented its status as a small entity in paying reduced fees to the PTO. Ans. ¶ 17.[2]

### A. Abaxis' Alleged Failure to Disclose Material Prior Art

Cepheid's Eight Defense contains allegations that one or more of the inventors of the patents-in-suit and/or Abaxis' patent attorneys knowingly and intentionally failed to disclose to the United States Patent & Trademark Office ("PTO") material prior art while prosecuting one or more of the patents-in-suit. *Id.* According to Cepheid's Answer, this material prior art was United States Patent No. 4,470,202 ("the Buxton Patent"). *Id.* ¶ 28.[3] As described by Cepheid in its Answer, the patents-in-suit "include claims directed to reagent spheres and a process for forming reagent spheres by dispensing uniform, precisely measured drops of a solution into a cryogenic liquid." *Id.* ¶ 25. These "reagent spheres are uniform in size and weight, contain a filler in a concentration sufficient to form a chemical lattice, and/or dissolve in less than about 10 seconds." *Id.* Cepheid alleges that the Buxton Patent is material to the patents-in-suit because it "discloses a process for forming reagent spheres by dispensing uniform, precisely measured drops of a solution into a cooling liquid." *Id.* ¶ 27. In addition, Cepheid alleges that "[t]he reagent spheres disclosed in the [Buxton P]atent are uniform in size and weight, contain a filler in a concentration sufficient to form a chemical lattice, and dissolve rapidly (e.g., within 5 seconds) in water." *Id.*[4]

Cepheid claims that Abaxis' patent counsel Kevin L. Bastian and/or one or more of the named inventors of the patents-in-suit were aware of the materiality of the Buxton Patent and failed to disclose the patent to the PTO during the prosecution of the patents-in-suit. *Id.* ¶¶ 33-34.

---

[1] These patents were pending before the PTO for the following periods, at the close of which the patents issued: (1) the '732 patent was pending from August 19, 1991 until May 9, 1995; (2) the '597 patent from May 8, 1995 until April 29, 1997; (3) the '563 patent from June 6, 1995 until July 7, 1998; and (4) the '684 patent from April 24, 1998 until June 26, 2001. Ans. ¶¶ 18-21.
[2] Paragraph numbers refer to the paragraph numbers beginning on page 4 of Cepheid's Answer under the heading, "Affirmative and Other Defenses." Cepheid's Ninth Counterclaim incorporates by reference the allegations in Cepheid's Eighth Defense. Therefore, the Court will refer in this section only to the allegations contained in Cepheid's Eighth Defense.
[3] The Buxton Patent is entitled "Process and Apparatus for Freezing a Liquid Medium" and issued on September 11, 1984, more than a year before the earliest claimed priority date for the patents-in-suit. *Id.* ¶ 26.
[4] Cepheid's Answer provides a more detailed description of the Buxton Patent in subsequent paragraphs. *See* Ans. ¶¶ 50-55.

According to Cepheid, they did so with the intent to deceive the PTO. *Id.* ¶ 34. Kevin L. Bastian, the same attorney who prosecuted the '732, '597, and '563 patents, also prosecuted United States Patent No. 5,275,016 ("the '016 patent"). *Id.* ¶ 30. The '016 patents names Steven N. Buhl, Bhaskar Bhayani, and Thuy N. Tang as inventors, all three of whom were named as inventors of the patents-in-suit. *Id.* Cepheid alleges that the '016 patent "discloses methods and devices for freezing drops of liquid reagent solution in a cryogenic liquid" and claims that "the subject matter of the '016 patent application overlapped substantially with the subject matter of the" patents-in-suit. *Id.* ¶ 31. On August 6, 1993, while prosecuting the '016 patent, Bastian submitted a supplemental disclosure statement to the PTO. *Id.* ¶ 32. Cepheid alleges that this statement was accompanied by a copy of the Buxton Patent. *Id.* ¶ 32.

Cepheid further alleges that Bastian and others made several statements to the PTO while prosecuting the patents-in-suit. According to Cepheid, these statements were made in order to distinguish the patents-in-suit from prior art cited by the PTO. *Id.* ¶¶ 35-49. Cepheid's Answer alleges that in making these statements, Bastian and others claimed that the patents-in-suit taught features that were actually disclosed in the Buxton Patent. *Id.*

### B. Abaxis' Alleged False Claim of Small Entity Status

Cepheid alleges that Abaxis, through its employees and/or its patent attorneys, fraudulently misrepresented its status as a small entity in paying reduced fees to the PTO. *Id.* ¶ 97. According to Cepheid, Abaxis licensed its patent rights to a large entity in 1994. *Id.* ¶¶ 63-66. Cepheid alleges that because Abaxis licensed its patent rights to a large entity, Abaxis was required to pay fees to the PTO at a large entity rate. *Id.* Cepheid claims that Abaxis continued to pay small entity fees even though Abaxis and Abaxis' counsel had to verify Abaxis' small entity status whenever Abaxis paid its issue fees. *Id.* ¶¶ 73, 80, 86, 94.

### II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, 173 L. Ed. 2d 868 (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929). These requirements apply with equal rigor to pleadings made under both Federal Rule of Civil Procedure 9 and Federal Rule of Civil Procedure 8. *Id.* at 1954, 173 L. Ed. 2d 868.

Under Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* "Inequitable conduct, while a broader concept than fraud, must be pled with particularity under Rule 9(b)." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009) (quoting *Ferguson Beauregard/Logic Controls, Div. of Dover Resources, Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1344 (Fed. Cir. 2003)) (quotation marks and alterations omitted).[5] As outlined in *Exergen*, the substantive elements of inequitable conduct are as follows: "(1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information; and (2) the individual did so with a specific intent to deceive the PTO." *Id.* at 1327 n.3 (citing *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1365 (Fed. Cir. 2008); *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178, 1181 (Fed. Cir. 1995); 37 C.F.R. § 1.56 (2008)).

"[I]n pleading inequitable conduct in patent cases, Rule 9(b) requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Id.* at 1327.[6] In addition, in pleading "knowledge" and "intent," which may be averred generally under Rule 9(b), a pleading of inequitable conduct "must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material

---

[5] The law of the Federal Circuit, not the law of the regional circuit, applies to the question of whether inequitable conduct has been pled in accordance with Rule 9(b). *See Exergen*, 575 F.3d at 1326 (citation omitted).
[6] Even though the court in *Exergen* did not list "why" among the questions that a pleading must answer with particularity, it did require, later in the opinion, that the pleading allege why the withheld information is material and not cumulative. 575 F.3d at 1329.

4
Case No.: 10-CV-02840-LHK
ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS

misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Id.* at 1328-29.

"[I]n dismissing for failure to state a claim under Rule 12(b)(6), 'a district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

### III.  ANALYSIS

Abaxis argues that Cepheid's allegations of inequitable conduct fail to meet the pleading standard outlined in *Iqbal* and *Exergen*. Abaxis claims that Cepheid's counterclaim does not identify with sufficient particularity the who, what, why and how of the alleged material omission practiced before the PTO. Mot. 7-8. In addition, Abaxis claims that Cepheid has not provided factual allegations from which knowledge and intent to deceive can be reasonably inferred. *Id.* at 5-6. Finally, Abaxis argues that Cepheid's pleadings related to Abaxis' small entity status fail to allege actual knowledge and intent to deceive. *Id.* at 8-10.

**A. Pleading with Particularity the Circumstances Surrounding the Alleged Material Omission of the Buxton Patent**

    **1. Who**

"Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the [PTO] . . . ." 37 C.F.R. § 1.56(a). To plead with the required particularity the "who" of the alleged material omission, Cepheid's pleading must name a "specific individual associated with the filing or prosecution of the application[s] issuing as the" patents-in-suit "who both knew of the material information and deliberately withheld or misrepresented it." *See Exergen*, 575 F.3d at 1329 (citations omitted).

Abaxis claims that Cepheid's allegations fail to identify the "who" of the alleged material omission because Cepheid's pleading only lists individuals in an "and/or" laundry list fashion. Mot. 7. In opposition, Cepheid contends that its pleading specifically alleges that Kevin Bastian knew of material information and deliberately withheld it. Opp'n 14. Even though Abaxis correctly notes that Cepheid uses "and/or" whenever it names Kevin Bastian, Cepheid's allegations

5

still go beyond what was alleged in *Exergen*. There, the pleading referred generally to "Exergen, its agents and/or attorneys." *Exergen*, 575 F.3d at 1329 (quotation and quotation marks omitted). In contrast to the pleading at issue in *Exergen*, where no individuals were named, Cepheid's pleading names more than generic categories of people, it names a specific person.

In its reply, Abaxis concedes this fact. *See* Reply 2. Abaxis nevertheless argues that Cepheid's pleading fails because Cepheid does not allege in its pleading that Bastian knew of any specific material information contained in the Buxton Patent. *Id.* The Court finds it more appropriate to address this argument when the Court considers whether Cepheid has properly pled "knowledge." *See infra* Part III.B.1. Accordingly, the Court finds that Cepheid's Answer properly pleads the "who" of the alleged material omission by naming Bastian.

This finding does not, however, apply to the '684 patent. Because Cepheid's Answer does not allege that Bastian prosecuted the '684 patent, Cepheid's inequitable conduct defense and counterclaim fail with respect to the '684 patent. Nevertheless, Cepheid may amend its Answer to properly allege the "who" of the alleged material omission with respect to the '684 patent.

### 2. What and Where

To plead with the required particularity the "what" and "where" of Abaxis' alleged material omission, Cepheid's pleading must "identify which claims, and which limitations in those claims, the withheld references are relevant to, and where in those references the material information is found." *See Exergen*, 575 F.3d at 1329 (citations omitted).

Abaxis argues that Cepheid's pleading fails because it only generically refers to the claims of the patents-in-suit. Mot. 7. According to Abaxis, Cepheid's Answer only mentions specific claims from the patents-in-suit when it quotes from those patents' prosecution history. *Id.* Abaxis claims that Cepheid never mentions specific claims from the patents-in-suit in relation to any allegedly withheld material information. *Id.*

Cepheid argues that it does allege the relevant limitations of the patents-in-suit to which the Buxton Patent is relevant. Opp'n 8. To support its argument, Cepheid cites to paragraph 25 of its Inequitable Conduct Affirmative Defense. *Id.* Paragraph 25, however, does not identify specific claims found in the patents-in-suit. Instead, paragraph 25 states that the patents-in-suit "include

6

claims directed to reagent spheres and a process for forming reagent spheres by dispensing uniform, precisely measured drops of a solution into a cryogenic liquid." This generic description of claims found in the patents-in-suit does not satisfy the requirement that Cepheid identify the specific "what" of the material omission practiced before the PTO.

Cepheid also argues that it satisfies the "what" requirement because its Counterclaim incorporates by reference the claims of the patents-in-suit. *Id.* at 9. This argument also fails because incorporating by reference the claims of the patents-in-suit does not correct the fundamental flaw in Cepheid's pleading. Cepheid's pleading does not specify to what claims and what limitations in those claims the withheld references are relevant.

Accordingly, Cepheid's inequitable conduct counterclaim and defense fail because Cepheid does not properly identify in its Answer to which claims of the patents-in-suit, and to which limitations in those claims, the Buxton Patent is relevant. Nevertheless, the Court grants Cepheid leave to amend its pleading because Cepheid could cure the defect by alleging additional facts.

### 3. Why and How

To plead with the required particularity the "why" and "how" of Abaxis' alleged material omission, Cepheid's pleading must "identify the particular claim limitations, or combination of claim limitations, that are supposedly absent from the information of record." *Exergen*, 575 F.3d at 1329. In other words, Cepheid's pleading must contain allegations explaining both "'why' the withheld information is material and not cumulative, and 'how' an examiner would have used this information in assessing the patentability of the claims." *Exergen*, 575 F.3d at 1329-1330 (citations omitted).

Although Abaxis admits that Cepheid's Answer provides specific citations to various disclosures made in the Buxton Patent, *see* Mot. 8 (citing Ans. ¶¶ 27, 51-55),[7] Abaxis argues that Cepheid has failed to plead how the allegedly withheld Buxton Patent would have been material and non-cumulative, *id.* at 7-8. Cepheid argues that its Answer does contain allegations explaining both the "why" and "how." Opp'n 11. Cepheid points to statements that Abaxis' attorneys made

---

[7] Although Cepheid's Answer does reference disclosures made in the Buxton Patent, Cepheid's Answer does not appear to identify any claim limitations in the Buxton Patent that are material to the patents-in-suit.

7

Case No.: 10-CV-02840-LHK
ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS

to the PTO in order to distinguish the patents-in-suit from prior art cited by the PTO. *Id.* (citing Ans. ¶¶ 36-44). According to Cepheid, Abaxis' attorneys claimed in these statements that the patents-in-suit contained features that were not present in the prior art. *Id.* As alleged in Cepheid's Answer, however, these claimed features were actually disclosed in the Buxton Patent. Ans. ¶ 50.

The Federal Circuit has "held that 'information is material when a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent.'" *Star Scientific*, 537 F.3d at 1367 (quoting *Symantec Corp. v. Computer Assocs. Int'l, Inc.*, 522 F.3d 1279, 1297 (Fed. Cir. 2008)). Here, Cepheid's Answer contains allegations that specific disclosures from the Buxton Patent contradict statements made by Abaxis' attorneys about the state of the prior art. These allegations suffice to explain why a reasonable examiner would have considered the Buxton Patent important in deciding whether to allow the patents-in-suit to issue.[8]

Nevertheless, Abaxis argues that Cepheid has failed to allege that the Buxton Patent is "non-cumulative." *See* Reply 4. The Federal Circuit has held that "[i]t is well-established . . . that information is not material if it is cumulative of other information already disclosed to the PTO." *Scientific*, 537 F.3d at 1367 (citing *Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*, 488 F.3d 982, 1000 (Fed. Cir. 2007); 37 C.F.R. § 1.56(b)). According to Abaxis, Cepheid has only alleged that the Buxton Patent is non-cumulative with reference to two pieces of prior art cited to the PTO. Reply 4. Abaxis argues that Cepheid has failed to allege that the allegedly material information within the Buxton Patent was not found in any of the references before the PTO. *Id.*

Although Abaxis' argument reads Cepheid's Answer rather narrowly, the Court nevertheless finds that Cepheid's Answer fails to allege with the required particularity that the material information within the Buxton Patent was not already before the PTO. Cepheid's Answer contains some allegations that the Buxton Patent possessed material information not before the PTO. These include allegations that the Buxton Patent "claimed features allegedly missing from the cited prior art," Ans. ¶ 51, and that the Buxton Patent is "not cumulative of the art already before the Examiners," *id.* ¶ 56. Nevertheless, these allegations are too conclusory to satisfy Rule

---

[8] It does not appear, however, that Cepheid identifies any specific claim limitations from the Buxton Patent that were absent from the record before the patent examiner.

8

Case No.: 10-CV-02840-LHK
ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS

9(b). Accordingly, Cepheid's inequitable conduct counterclaim and defense fail because Cepheid does not properly allege in its Answer why the material information contained in the Buxton Patent is not cumulative to the prior art that was before the PTO during the prosecution of the patents-in-suit. Cepheid could allege facts to cure this defect. Thus, the Court grants Cepheid leave to amend.

### B. Knowledge and Intent

#### 1. Knowledge of the Withheld Material Information

Abaxis argues that Cepheid's Answer does not properly allege that any specific individual knew of the allegedly material information contained in the Buxton Patent. Mot. 5-6. Cepheid argues that its counterclaim provides ample facts from which it is reasonable to infer that Bastian knew of the material information contained in the Buxton Patent. Opp'n 15.

"[A] pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual . . . knew of the withheld material information . . . ." *Exergen*, 575 F.3d at 1328. "A reasonable inference is one that is plausible and that flows logically from the facts alleged, including any objective indications of candor and good faith." *Id.* at 1329 n.5 (citation omitted). The court cannot, however, "assume that an individual, who generally knew that a reference existed, also knew of the specific material information contained in that reference." *Id.* at 1330 (citing *FMC Corp. v. Manitowoc Co.*, 835 F.2d 1411, 1415 (Fed. Cir. 1987)).

Based on *Exergen*, the fact that Bastian disclosed the Buxton Patent while prosecuting the '016 patent does not lead to a reasonable inference that Bastian knew of the specific material information contained in the Buxton Patent. Nevertheless, Cepheid argues that its counterclaim supports a reasonable inference that Bastian knew of the relevant portions of the Buxton Patent because Cepheid's Answer contains allegations that the '016 patent is directed to the same technology as the patents-in-suit. Opp'n 15-16. This, according to Cepheid, distinguishes the instant case from *Exergen*. In *Exergen*, the Federal Circuit observed that a reference "may be relevant to different applications for different reasons." 575 F.3d at 1330. Cepheid argues that this principle does not apply here because the Buxton Patent applies to the '016 patent and the patents-

in-suit for the same reasons. Opp'n 15. Furthermore, Cepheid specifically points out that the '016 patent incorporates by reference the '732 patent application and that Bastian made statements during the prosecution of the '732 patent that were inconsistent with disclosures made in the Buxton Patent. *Id.* at 15.

The Court finds the question of whether Cepheid's Answer properly alleges knowledge to be a difficult one. On the one hand, Abaxis is correct that Cepheid is basically asking the Court to make the assumption that an individual who knew of a material reference generally also knew of the specific material information contained in the reference. Under *Exergen*, the Court cannot make this inference. On the other hand, Cepheid's argument regarding the substantial overlap between the '016 patent and the patents-in-suit has persuasive force. It seems plausible that an individual who knows of the materiality of a reference to one patent application must recognize that the same information is also material to other, substantially related applications.

Even though the question is close, the Court finds Abaxis' position more persuasive. Cepheid's Answer fails to allege that Bastian had knowledge of any specific material information contained in the Buxton Patent. Without this allegation, Cepheid's Answer does not support the reasonable inference that Bastian knew of anything more than the general relevance of the Buxton Patent to the '016 patent. If Bastian knew only of the general relevance of the Buxton Patent to the '016 patent, Cepheid's Answer fails to support the reasonable inference that Bastian knew of the specific information contained in the Buxton Patent that is allegedly material to the patents-in-suit.

The fact that comes closest to supporting Cepheid's position is the '016 patent's incorporation by reference of the '732 patent application. This fact, nevertheless, fails to persuade the Court to find in Cepheid's favor. Cepheid's Answer does not contain allegations supporting the inference that the Buxton Patent is material to the '016 patent for the same reasons that the '732 patent was referenced in the '016 patent. Without allegations supporting this inference, Cepheid's allegation that the '016 patent references the '732 patent application does nothing more than support Cepheid's general allegation that the patents-in-suit were related to the '016 patent. As stated, this general relationship alone is not sufficient to support a reasonable inference that Bastian knew of specific material information contained in the Buxton Patent.

10

Case No.: 10-CV-02840-LHK
ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS

Accordingly, Cepheid's inequitable conduct counterclaim and defense fail because Cepheid's Answer does not contain sufficient allegations to support the inference that a specific individual knew of specific material information contained in the Buxton Patent. Cepheid could allege facts to cure this deficiency. Thus, the Court grants leave to amend.

### 2. Specific Intent to deceive the PTO

Abaxis argues that Cepheid has failed to plead that any specific individual acted with intent to deceive the PTO during the prosecution of the patents-in-suit. Mot. 6. Cepheid argues that it has provided sufficient factual allegations to support a reasonable inference that Bastian intended to deceive the PTO. Opp'n 16.

"[A] pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual . . . withheld" material information "with a specific intent to deceive the PTO." *Exergen*, 575 F.3d at 1328-29 (footnote omitted). "[T]he mere fact that an applicant disclosed a reference during prosecution of one application, but did not disclose it during prosecution of a related application, is insufficient to meet the threshold level of deceptive intent required to support an allegation of inequitable conduct." *Id.* at 1331.

Here, Cepheid attempts to distinguish this case from *Exergen* by arguing that just 13 days after submitting the Buxton Patent in connection with the '016 patent, Bastian made statements to the PTO contradicting the disclosures contained in the Buxton Patent. Opp'n 16. Cepheid's argument that Bastian had intent to deceive the PTO is premised on Bastian having knowledge of specific material information contained in the Buxton Patent. Because Cepheid's Answer does not support this inference, Cepheid's inequitable conduct counterclaim and defense fail. Nevertheless, Cepheid may amend its pleading to cure this deficiency.

### C. Abaxis' Payment of Small Entity Status Fees

"While a misrepresentation of small entity status is not strictly speaking inequitable conduct in the prosecution of a patent, as the patent has already issued if maintenance fees are payable (excepting an issue fee), it is not beyond the authority of a district court to hold a patent unenforceable for inequitable conduct in misrepresenting one's status as justifying small entity

11
Case No.: 10-CV-02840-LHK
ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS

maintenance payments." *Nilssen v. Osram Sylvania, Inc.*, 504 F.3d 1223, 1231 (Fed. Cir. 2007) (citing *Ulead Sys., Inc. v. Lex Computer & Mgmt. Corp.*, 351 F.3d 1139, 1146 (Fed. Cir. 2003)).

Abaxis does not dispute that falsely claiming small entity status with an intent to deceive the PTO constitutes inequitable conduct. Rather, Abaxis argues that Cepheid's counterclaim fails because it does not contain allegations that any individual at Abaxis committed inequitable conduct in association with the payment of small entity fees. Reply 5. Cepheid argues that it has pled sufficient facts in its Answer to support the reasonable inference that someone at Abaxis acted with intent to deceive the PTO in helping Abaxis claim small entity status fees. Opp'n 19. In its Answer, Cepheid did allege that Abaxis licensed its patent rights to a large entity, which stripped Abaxis of its eligibility for small entity status. Ans. ¶¶ 60-61. Cepheid pled that for each patent, Abaxis' counsel signed the form averring compliance with the PTO's directive to verify small entity status. *Id.* ¶¶ 73, 80, 86, 94. Finally, Cepheid pled that each time Abaxis' counsel paid the issue fee, they falsely claimed small entity status. *Id.*

Cepheid's allegations are inadequate. Cepheid does not allege sufficient facts to create a reasonable inference that any particular individual knew of the license agreements that removed Abaxis' small entity status, knew that the license agreements did in fact remove Abaxis' small entity status, and knew that Abaxis was still making small entity payments despite the licenses. Accordingly, Cepheid's inequitable conduct counterclaim and affirmative defense, based on Abaxis' false claiming of small entity status, are dismissed with leave to amend.

///
///
///
///
///
///
///
///
///

IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS Abaxis' motion to dismiss Cepheid's inequitable conduct counterclaim and affirmative defense.  Cepheid shall file an amended answer, if any, within twenty-one (21) days of the date of this Order to cure the deficiencies discussed herein.  Cepheid may not add new counterclaims or affirmative defenses without leave of Court or by stipulation of the parties pursuant to Federal Rule of Civil Procedure 15.

**IT IS SO ORDERED.**

Dated: March 22, 2011

*Lucy H. Koh*
LUCY H. KOH
United States District Judge