1  COOLEY LLP
   RICARDO RODRIGUEZ (No. 173003) (rr@cooley.com)
2  ADAM M. PIVOVAR (No. 246507) (apivovar@cooley.com)
   Five Palo Alto Square
3  3000 El Camino Real
   Palo Alto, CA 94306-2155
4  Tel:     (650) 843-5000
   Fax:    (650) 857-0663
5

6  Attorneys for Plaintiff-Counterdefendant
   ABAXIS, INC.
7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10                  SAN JOSE DIVISION

11

12 ABAXIS, INC.,                          Case No. 5:10-cv-2840 LHK (HRL)

13            Plaintiff-                   **PLAINTIFF ABAXIS INC.'S OPENING**
              Counterdefendant,           **CLAIM CONSTRUCTION BRIEF**

14      v.                                HEARING DATE: JUNE 21, 2011
                                          TIME: 1:30 P.M.
15 CEPHEID,                               COURTROOM: 4, 5TH FLOOR
                                          JUDGE: HON. LUCY H. KOH
16            Defendant-
              Counterclaimant.
17

18

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

1

TABLE OF CONTENTS

2

PAGE

3    I.    INTRODUCTION ................................................................................................ 1

4    II.    BACKGROUND .................................................................................................. 1

     A.    Technology ................................................................................................ 1

5    B.    The Patents-in-Suit .................................................................................... 3

6    C.    The Defendant's Infringement of the Patents-in-Suit ............................... 4

7    III.    LEGAL STANDARDS FOR CLAIM CONSTRUCTION ................................. 4

     IV.    THE COURT SHOULD ADOPT ABAXIS' CONSTRUCTIONS OF THE
8    DISPUTED TERMS ........................................................................................... 5

9    A.    "dissolves in less than about 10 seconds in water/an aqueous solution"
           ('563 patent, claim 1; '684 patent, claim 6) ............................................ 5

10   B.    "about" ('732 patent, claims 1-4; '597 patent, claims 3-5, 16; '563 patent,
           claims 1, 3-4; '684 patent, claims 1, 6-7, 12-13) .................................... 7

11   C.    "A container holding a dried chemical composition . . . wherein said dried
12         chemical composition comprises a preselected precisely measured aliquot
           of said dried chemical composition" ('563 patent, claim 1) ................... 10

13   D.    "bead" ('563 patent, claim 1; '684 patent, claims 1, 2, 6, 7, 10, 12, 13, 14) ........ 11

14   V.    CONCLUSION .................................................................................................. 12

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

i.

ABAXIS, INC.'S OPENING
CLAIM CONSTRUCTION BRIEF
CASE NO. 5:10-CV-2840 LHK (HRL)

1

## TABLE OF AUTHORITIES

2
PAGE

3

**CASES**

4

*Acromed Corp. v. Sofamor Danek Grp., Inc.,*
   253 F.3d 1371 (Fed. Cir. 2001)...................................................................... 7

*Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.,*
   340 F.3d 1298 (Fed. Cir. 2003)...................................................................... 8

*Chef Am., Inc. v. Lamb-Weston, Inc.,*
   358 F.3d 1371 (Fed. Cir. 2004).................................................................. 5, 8

*Chimie v. PPG Indus., Inc.,*
   402 F.3d 1371 (Fed. Cir. 2005)...................................................................... 6

*Conoco, Inc. v. Energy & Envtl. Int'l, L.C.,*
   460 F.3d 1349 (Fed. Cir. 2006).................................................................. 6, 8

*Datamize, LLC v. Plumtree Software, Inc.,*
   417 F.3d 1342 (Fed. Cir. 2005).................................................................... 11

*Hoganas AB v. Dresser Indus., Inc.,*
   9 F.3d 948 (Fed. Cir. 1993).......................................................................... 9

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.,*
   381 F.3d 1111 (Fed. Cir. 2004)...................................................................... 6

*Markman v. Westview Instruments, Inc.,*
   517 U.S. 370 (1996)...................................................................................... 4

*Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings,*
   370 F.3d 1354 (Fed. Cir. 2004).................................................................... 10

*Nikon Corp. v. ASM Lithography B.V.,*
   308 F. Supp. 2d 1039 (N.D. Cal. 2004) ........................................................ 9

*North Am. Vaccine, Inc. v. Am. Cyanamid Co.,*
   7 F.3d 1571 (Fed. Cir. 1993)........................................................................ 10

*Orion IP, LLC v. Staples, Inc.,*
   406 F. Supp. 2d 717 (E.D. Tex. 2005) .......................................................... 5

*Ortho-McNeil Pharm., Inc. v. Caraco Pharm. Labs. Ltd.,*
   476 F.3d 1321 (Fed. Cir. 2007)...................................................................... 8

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

i.

ABAXIS, INC.'S OPENING
CLAIM CONSTRUCTION BRIEF
CASE NO. 5:10-CV-2840 LHK (HRL)

TABLE OF AUTHORITIES
(CONTINUED)

PAGE

*Pall Corp. v. Micron Separations, Inc.*,
   66 F.3d 1211 (Fed. Cir. 1995) ................................................................. 8

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) (en banc) ................................... 4, 5, 10

*PPG Indus. v. Guardian Indus. Corp.*,
   156 F.3d 1351 (Fed. Cir. 1998) ................................................................. 9

*Seachange Int'l, Inc. v. C-Cor Inc.*,
   413 F.3d 1361 (Fed. Cir. 2005) ................................................................. 9

*Semiconductor Energy Lab. Co. v. Chi Mei Optoelectronics Corp.*,
   No. C 04-04675 MHP, 2006 WL 6130994 (N.D. Cal. Mar. 27, 2006) ........................ 5, 11, 12

*Varco, L.P. v. Pason Sys. USA Corp.*,
   436 F.3d 1368 (Fed. Cir. 2006) ................................................................. 6

*Young v. Lumenis, Inc.*,
   492 F.3d 1336 (Fed. Cir. 2007) ................................................................. 11

**STATUTES**

35 U.S.C. § 112 ................................................................................... 10

35 U.S.C. § 282 ................................................................................... 10

**OTHER REFERENCES**

Webster's II New College Dictionary (1995) ............................................... 8

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

1

## I.    INTRODUCTION

2    The claims in this case use ordinary language and are straightforward.  Indeed, all of the

3    four terms in dispute are sufficiently clear for a jury that no further construction by the Court is

4    needed.  Defendant instead proposes constructions that are inconsistent with the intrinsic evidence

5    and would likely require further explanation or interpretation.  These constructions are driven by

6    Cepheid's theories of non-infringement and invalidity and, consequently, do not withstand

7    scrutiny under the recognized rules of claim construction.

8

## II.    BACKGROUND

9

### A.    Technology

10    Abaxis was formed in the late 1980s with the goal of developing a fast, reliable, and easy-

11    to-use automated health-care diagnostic testing platform.  Such diagnostic testing involves mixing

12    a patient's sample with chemical reagents and monitoring the products of the chemical reaction

13    that ensues.  For example, a doctor may order a test to measure the amount of glucose in the

14    blood of a patient at risk for diabetes or a test to measure the amount of cholesterol in the blood of

15    a patient at risk for heart disease.  These tests would be performed by mixing a sample solution of

16    the patient's blood with chemical reagents that specifically enable measurements of glucose or

17    cholesterol, respectively.

18    At the time of Abaxis' founding, diagnostic testing in hospitals and clinics was expensive

19    and inefficient because it was cumbersome, labor intensive, and required chemical laboratories

20    with various dedicated pieces of specialized equipment.  This was compounded by the fact that a

21    trained technician was typically needed to control and monitor the progress of the testing

22    protocols, which, in turn, was further compounded by the fact that doctors frequently ordered

23    multiple tests for a particular patient.

24    To address these issues, Abaxis made a fully integrated diagnostic testing system utilizing

25    a disposable disk-shaped cartridge, which is also referred to as a "centrifugal rotor."  A current

26    Abaxis rotor with 17 reaction chambers filled with reagent beads is depicted below:

27

28

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

1.

ABAXIS, INC.'S OPENING
CLAIM CONSTRUCTION BRIEF
CASE NO. 5:10-CV-2840 LHK (HRL)



The centrifugal rotor design—which Abaxis spent several years developing and for which it was awarded several patents—provided an efficient way to subdivide a sample solution and controllably transfer it to various test cells. By performing a different test in each of the chambers, multiple tests could be performed simultaneously.

To perform a diagnostic test within each of the cells, each cell had to contain a precise amount of the specific chemical reagent(s) needed to perform the test. Additionally, to ensure consistent test results reliable enough to justify FDA approval and to facilitate commercial scale production on the order of millions of rotors, the amount of chemical reagent had to be precise and it had to have minimal variation between rotors to maintain consistent and reproducible testing conditions.

Aware of problems with cross-contamination that would result from using liquid reagents, Abaxis focused its initial efforts on solid-form chemical reagents. Scientists at Abaxis had the idea of making small, solid, and spherically shaped reagent beads. They did so by forming a

Cooley LLP
Attorneys At Law
Palo Alto

2.

Abaxis, Inc.'s Opening
Claim Construction Brief
Case No. 5:10-cv-2840 LHK (HRL)

1  solution of the chemical reagents that also contained filler materials, dispensing precisely

2  measured drops of the solution, cryogenically flash-freezing the drops, and freeze-drying the

3  frozen drops thereby forming mechanically stable and rapidly dissolving porous beads that

4  contained precisely measured amounts of chemical reagents and could be mass produced.  After

5  extensive research, Abaxis was able to develop bead-forming solutions and methods that resulted

6  in the formation of solid reagent particles that would be useful in the centrifugal rotors, or other

7  similar integrated machines or procedures.  Various aspects of these methods of making the

8  reagents, and the resulting beads, are the claimed inventions of the Patents-in-Suit.  A close-up

9  image of the reagent beads in a centrifugal rotor demonstrate their appearance and uniformity:

22  Abaxis' system and the technologies pioneered using the inventions of the Patents-in-Suit

23  still to this day represent the leading, cutting-edge technologies in the field of diagnostic testing.

24  **B.    The Patents-in-Suit**

25  The four Patents-in-Suit are all part of the same patent family.  They each derive from an

26  August 19, 1991 application that issued as U.S. Patent No. 5,413,732 ("the '732 patent").  The

27  '732 patent shares the same specification with U.S. Patent No. 5,624,597 ("the '597 patent").

28  U.S. Patent Nos. 5,776,563 ("the '563 patent") and 6,251,684 ("the '684 patent") are child patents

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

3.

ABAXIS, INC.'S OPENING
CLAIM CONSTRUCTION BRIEF
CASE NO. 5:10-CV-2840 LHK (HRL)

of an abandoned continuation-in-part application.  The specification of the '563 and '684 patents has essentially overlapping subject matter with the specification of the '732 and '597 patents, though they are not identical.

### C.    The Defendant's Infringement of the Patents-in-Suit

Cepheid sells various medical diagnostic testing kits that use chemical reagent beads with physical properties achieved by its infringing use of the methods claimed in the Patents-in-Suit. When Abaxis first confronted Cepheid regarding its infringement of the Patents-in-Suit in 2005, Cepheid entered into a royalty bearing license agreement for the patents.  For over 4 years Cepheid paid fees under the license agreement for its use of Abaxis' patented inventions. However, in late 2009, Cepheid refused to make payments for the infringing products it was selling under the licensing agreement and has since refused to cease the infringement.

### III.    LEGAL STANDARDS FOR CLAIM CONSTRUCTION

Claim construction is a question of law for the Court.  *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 389-90 (1996).  Claim construction begins with the claim language itself, as it is "unjust to the public, as well as an evasion of the law, to construe [a claim] in a manner different from the plain import of its terms." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal quotations and citations omitted).  Claim terms are therefore "generally given their ordinary and customary meaning" as understood by "a person of ordinary skill in the art in question at the time of the invention." *Id.* at 1312-13 (internal quotations and citations omitted).  Where terms use "commonly understood words," then "the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning" of the words.  *Id.* at 1314.

While "the claims themselves provide substantial guidance as to the meaning of particular claim terms," a claim term is read "not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.* at 1313-14.  However, "reading a limitation from the written description into the claims" is "one of the cardinal sins of patent law." *Id.* at 1320 (internal quotations and citation omitted).  The Court

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

4.

ABAXIS, INC.'S OPENING
CLAIM CONSTRUCTION BRIEF
CASE NO. 5:10-CV-2840 LHK (HRL)

may also consult the prosecution history and extrinsic evidence, although extrinsic evidence "is less significant than the intrinsic record in determining the legally operative meaning of claim language." *Id.* at 1317 (internal quotations and citation omitted).

**IV.    THE COURT SHOULD ADOPT ABAXIS' CONSTRUCTIONS OF THE DISPUTED TERMS**

    **A.    "dissolves in less than about 10 seconds in water/an aqueous solution" ('563 patent, claim 1; '684 patent, claim 6)**

| Abaxis' Construction | Defendant's Construction |
|---|---|
| No construction necessary. (*i.e.*, "dissolves" means dissolves) | "completely dissolves in less than about 10 seconds in water/an aqueous solution" (*i.e.*, "dissolves" means *completely* dissolves) |

Defendant identified the entire claim phrase "dissolves in less than about 10 seconds in water/an aqueous solution" from the '563 and '684 patents as requiring judicial construction. But, as is apparent from its proposed construction, Defendant only actually seeks to rewrite the claims to include the adverb "completely." There is no basis for doing so. If the patentee had wished to use the words "*completely* dissolves" in the claims, those words would have been used. *Chef Am., Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004) ("we must construe the claims based on the patentee's version of the claim as he himself drafted it") (internal quotations and citation omitted).

The term "dissolves" itself needs no construction. The plain meaning of "dissolves" is "sufficiently clear" to direct the jury's infringement fact-finding. *See Semiconductor Energy Lab. Co. v. Chi Mei Optoelectronics Corp.*, No. C 04-04675 MHP, 2006 WL 6130994, at *6 (N.D. Cal. Mar. 27, 2006) ("Claims themselves consist of language, which may already be sufficiently clear . . . [such] claim terms will not benefit from further clarification"). One district court has noted that there are generally three circumstances under which terms need to be construed: terms "that might be unfamiliar to the jury, confusing to the jury, or affected by the specification or prosecution history." *Orion IP, LLC v. Staples, Inc.*, 406 F. Supp. 2d 717, 737-38 (E.D. Tex. 2005). None of those circumstances exist here. The word "dissolves" is a commonly known word that is familiar to lay jurors.

Nor is there anything in the intrinsic record that redefines or disavows the plain scope of

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

ABAXIS, INC.'S OPENING
CLAIM CONSTRUCTION BRIEF
CASE NO. 5:10-CV-2840 LHK (HRL)

"dissolves." *See Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*, 460 F.3d 1349, 1357 (Fed. Cir. 2006) (deviations from ordinary meaning of claim terms are permitted only where the specification contains "expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope") (internal quotations and citation omitted).  To the contrary, the term "dissolves" is used without modification throughout the '563 patent specification. *See, e.g.*, '563 patent, col. 1:40 ("dissolved"), col. 2:5 ("dissolve"), col. 2:11 ("dissolve"), col. 4:14 ("dissolved"), col. 7:10 ("dissolve").  Its plain meaning in the context of the claims is further confirmed by the description of preferred embodiments within the specification: "The beads typically *dissolve* in less than about . . . ." *Id.* col. 7:9-13 (emphasis added).  Defendant's construction impermissibly ignores the description of these embodiments. *See Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1377 (Fed. Cir. 2005) (a construction that excludes a preferred embodiment will "rarely if ever [be] correct and would require highly persuasive evidentiary support.") (internal quotations and citations omitted).

Indeed, even the only use of "completely dissolves" in the '563 specification fails to support defendant's construction. *See* '563 patent, col. 3:41-44 ("In *some embodiments*, the dried compositions are provided in the form of beads or spheres that comprise a chemical lattice to facilitate rapid and complete dissolution of the spheres in an aqueous solution." (emphasis added).)  This statement discusses only the *facilitation* of "complete dissolution."  Further, this passage expressly refers to "some," not all embodiments of the inventions described in the '563 patent.  Thus, even if this passage of the '563 specification is viewed as disclosing something more than merely facilitating "complete dissolution," there is no basis to rewrite the claim language to conform with this description, while ignoring the other descriptions. *See Varco, L.P. v. Pason Sys. USA Corp.*, 436 F.3d 1368, 1373 (Fed. Cir. 2006) ("this court will not at any time import limitations from the specification into the claims") (internal quotations and citations omitted); *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1117 (Fed. Cir. 2004) ("[E]ven where a patent describes only a single embodiment, claims will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope . . . .") (internal quotations and citation omitted).

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

6.

ABAXIS, INC.'S OPENING
CLAIM CONSTRUCTION BRIEF
CASE NO. 5:10-CV-2840 LHK (HRL)

Defendant's construction attempts to add extraneous language to the claim that doesn't exist.  This attempt must be rejected.  The claim language speaks for itself and the word "dissolves" needs no further construction.

**B.    "about" ('732 patent, claims 1-4; '597 patent, claims 3-5, 16; '563 patent, claims 1, 3-4; '684 patent, claims 1, 6-7, 12-13)**

| Abaxis' Construction | Defendant's Construction |
|---|---|
| "approximately" | "within experimental error" |

"About" is a straightforward term.  It is used in the claims to modify a variety of numerical values in the claims.  During the claim construction disclosure process, however, Defendant identified its use in connection with only four distinct properties of the claimed methods and reagent beads: (1) a coefficient of weight variation (*e.g.*, "reagent spheres having a coefficient of weight variation less than about 3%" ('732 patent, claim 1)); (2) a diameter (*e.g.*, "the reagent spheres have a mean diameter between about 1.5 mm and 2.3 mm" ('732 patent, claim 2)); (3) a volume (*e.g.*, "a volume between about 2.0 μl and about 6.5 μl" ('732 patent, claim 4)); and (4) a duration of time (*e.g.*, "dissolves in less than about 10 seconds" ('563 patent, claim 1)).  Yet, while defendant did not include every instance of "about" in the claims as needing construction, it nevertheless sought a single construction of the term for application across every instance of its usage in the claims.  Any construction of the term "about" cannot unduly focus on one instance of its use but rather must be consistently applicable to all claims elements.[1]  *See Acromed Corp. v. Sofamor Danek Grp., Inc.*, 253 F.3d 1371, 1382 (Fed. Cir. 2001) (multiple "uses of the term require a meaning broad enough to apply to each" of the uses).

---

[1] As a term of degree, "about" will inherently result in different applications within its various context in the claims depending the particular physical property it is modifying.  For example, the scope of "about 1.5 mm" will implicitly not be identical to "about ten seconds" because one is related to a length measurement and the other related to time.  Since the teaching of the Patents-in-Suit and the understanding of one skilled in the art inform the understanding of the extent of these ranges as they apply to specific physical properties, those sources would have to be consulted to determine what the full phrases each mean—i.e., "about ten seconds" or "about 1.5 mm."  Defendant, however, chose to seek only construction of the term "about," without consideration of its varied uses in the claims.  As such, the construction presented in this analysis is directed to construing the word "about" as it is used throughout the claims and not in regard to any specific claimed physical property.

Cooley LLP
Attorneys At Law
Palo Alto

7.

Abaxis, Inc.'s Opening
Claim Construction Brief
Case No. 5:10-cv-2840 LHK (HRL)

The claims use the term "about" in various contexts, each of which is consistent with its ordinary meaning.  In addition to the varied uses identified by Defendant as requiring construction, "about" also applies to the concentrations of the components of the beads both in the form of percentages ("about 10%") and mass ("about 3.1 g").  *See, e.g.*, '597 patent, claim 21 ("concentration of the surfactant in the sample is between about 0.08 g and about 3.1 g"), claim 19 ("concentration of the filler is between about 10% and about 50%").  As is apparent from these uses, the patented inventions are not meant to be precisely defined by strict numerical limits. *Ortho-McNeil Pharm., Inc. v. Caraco Pharm. Labs. Ltd.*, 476 F.3d 1321, 1326 (Fed. Cir. 2007) ("The use of the word 'about,' avoids a strict numerical boundary to the specified parameter." (quoting *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1217 (Fed. Cir. 1995))).  The only construction of "about" that would properly apply to the claims is its ordinary meaning: "approximately."[2]  *Chef Am.*, 358 F.3d at 1374.

Not only is construing "about" to mean "approximately" consistent with the claims themselves, it is also consistent with the level of technical description of the patents.  *Pall Corp.*, 66 F.3d at 1217 ("The word 'about' does not have a universal meaning in patent claims . . . the meaning depends on the technological facts of the particular case.").  When considering the claim construction of the word "about," "the inventor's intended meaning is relevant."  *Id.*  Here, the intrinsic evidence demonstrates that the claimed inventions were meant to tolerate some variation in the claimed physical property limits.  The specifications variously describe the embodiments as having approximate values—*i.e.*, "about" a particular value.  *See, e.g.*, '732 patent, col. 3:9 ("about ten seconds"), col. 3:11-12 ("a coefficient of weight variation less than about 3%"), col. 3:23-24 ("about 0.08 g and about 3.1 g"), col. 5:33 ("about 6% residual moisture"), col. 5:36 ("about 4 hours").  *See Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298, 1308-09 (Fed. Cir. 2003) ("[V]aried use of a disputed term in the written description attests to the breadth of a term rather than providing a limiting definition.")  Conversely, the intrinsic record contains no disavowal of the ordinary meaning of "about," let alone the type of clear disclaimer

---

[2] *See* Pivovar Decl. Ex. 1 (Webster's II New College Dictionary (1995) at 3 ("about: **1.** Approximately")).

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

8.

ABAXIS, INC.'S OPENING
CLAIM CONSTRUCTION BRIEF
CASE NO. 5:10-CV-2840 LHK (HRL)

1    required to depart from its ordinary meaning.  *See Conoco*, 460 F.3d at 1357-58.  Thus, the

2    intrinsic evidence clearly leads to a conclusion that one of ordinary skill in the art would

3    understand "about" to mean "approximately."  Because this is its ordinary meaning, it is also

4    appropriate for the Court to conclude that the term simply does not require construction at all.

5    Despite the term's use under its ordinary meaning in the claims and intrinsic record,

6    Defendant seeks to impart the extraneous limitation "within experimental error" onto the claims.

7    There are two fundamental flaws with Defendant's construction.  First, Defendant's proposed

8    construction is entirely divorced from the claims and the intrinsic record.  It is a fundamental

9    tenet of claim construction that "[i]t is improper for a court to add 'extraneous' limitations to a

10   claim, that is, limitations added wholly apart from any need to interpret what the patentee meant

11   by particular words or phrases in the claim."  *Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948, 950

12   (Fed. Cir. 1993) (internal quotations and citations omitted).  Nowhere do the claims, the

13   specification, or the file history ever mention "experimental error," let alone an "experimental

14   error" that is defined in connection with the claimed physical properties.  This alone is sufficient

15   to reject Defendant's construction.  *Seachange Int'l, Inc. v. C-Cor Inc.*, 413 F.3d 1361, 1375-76

16   (Fed. Cir. 2005) ("it is improper to import a limitation into a claim where the limitation has no

17   basis in the intrinsic record").

18   Second, Defendant's construction obfuscates rather than clarifies the meaning of the

19   claim.  Because the patents do not speak of an "experimental error," it is unclear what Defendant

20   means by it or even what "experiments" Defendant contends are used to determine the "error"

21   associated with the claimed physical properties.  Without this information there is no way to

22   make sense of Defendant's construction, with the result that Defendant's construction would itself

23   require additional construction.  *See Nikon Corp. v. ASM Lithography B.V.*, 308 F. Supp. 2d 1039,

24   1072 (N.D. Cal. 2004) (rejecting proposed definition that would "substitute one imprecise verbal

25   formula for another").  Conversely, the teachings of the patents apprise that the limitations are

26   meant only as approximations, as it would be understood by those skilled in the art based on the

27   technical level of the descriptions within the specification, and the fact-finder could readily apply

28   that understanding in the infringement analysis.  *See PPG Indus. v. Guardian Indus. Corp.*, 156

Cooley LLP
Attorneys At Law
Palo Alto

9.

ABAXIS, INC.'S OPENING
CLAIM CONSTRUCTION BRIEF
CASE NO. 5:10-CV-2840 LHK (HRL)

1    F.3d 1351, 1355 (Fed. Cir. 1998) ("[A]fter the court has defined the claim with whatever

2    specificity and precision is warranted by the language of the claim and the evidence bearing on

3    the proper construction, the task of determining whether the construed claim reads on the accused

4    product is for the finder of fact.").  Defendant's construction must also be rejected for this reason.

5          Accordingly, the Court should adopt Abaxis' proposed construction.

6    **C.      "A container holding a dried chemical composition . . . wherein said dried
            chemical composition comprises a preselected precisely measured aliquot of
7            said dried chemical composition" ('563 patent, claim 1)**

| Abaxis' Construction | Defendant's Construction |
|---|---|
| No construction necessary. | indefinite |

10         The language in dispute consists of ordinary English words that are easily understood as

11   they are written.  The Court need look no further than that language to understand the scope of

12   this claim, which involves "[a] container holding . . . a preselected precisely measured aliquot of

13   [a] dried chemical composition . . . in bead form."  '563 patent, claim 1.  The parties have agreed

14   that the term "aliquot" means "a discrete quantity."  Hence, the claim requires only that the

15   container hold "a preselected precisely measured [discrete quantity] of [a] dried chemical

16   composition . . . in bead form."  None of these terms are redefined or used in any manner that is

17   inconsistent with their plain meaning in the intrinsic record.  Thus, the Court need not look

18   beyond the claim language itself to understand the meaning of this claim.  *Phillips*, 415 F.3d at

19   1312-13 ("words of a claim are generally given their ordinary and customary meaning") (internal

20   quotations and citations omitted).

21         Defendant nevertheless contends that the claim is somehow indefinite.  For a charge of

22   indefiniteness, the burden of overcoming the presumption of patent validity under 35 U.S.C. §

23   282 lies with Defendant, who must establish by clear and convincing evidence that the patent fails

24   to satisfy the definiteness requirement of 35 U.S.C. § 112, ¶ 2.  *See Metabolite Labs., Inc. v. Lab.*

25   *Corp. of Am. Holdings*, 370 F.3d 1354, 1365 (Fed. Cir. 2004); *North Am. Vaccine, Inc. v. Am.*

26   *Cyanamid Co.*, 7 F.3d 1571, 1579 (Fed. Cir. 1993).  In this regard, claims are only "considered

27   indefinite when they are not amenable to construction or are insolubly ambiguous. . . .  Thus, the

28

1  definiteness of claim terms depends on whether those terms can be given any reasonable

2  meaning." *Young v. Lumenis, Inc.*, 492 F.3d 1336, 1346 (Fed. Cir. 2007) (internal quotations and

3  citations omitted).  "The definiteness requirement, however, does not compel absolute clarity."

4  *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005). In its

5  disclosures to date, Defendant has identified no arguments or evidence in support of its

6  indefiniteness assertion.  As such, Defendant's indefiniteness argument must be rejected.

7     **D.     "bead" ('563 patent, claim 1; '684 patent, claims 1, 2, 6, 7, 10, 12, 13, 14)**

| Abaxis' Construction | Defendant's Construction |
|---|---|
| No construction necessary. | a small, rounded mass |

10        No construction is necessary for the term "bead" because the plain meaning would be

11  sufficient to guide the jury's fact-finding, in the event any such fact-finding is needed.  In the

12  claims, "bead" is used consistent with the regular meaning it would have to a lay person to simply

13  describe the form of the claimed chemical compositions.  *See, e.g.*, '563 patent, claim 1

14  ("chemical composition is in bead form").  Nothing in the intrinsic evidence specifically redefines

15  the term.  To the contrary, "bead" is simply a label used to generally describe the form of the

16  chemical compositions made using the methods of the patent.  *See, e.g.*, '563 patent, col. 2:54-55

17  ("drying the frozen drops to form dried beads"), col. 2:65 ("[t]he dried beads produced by the

18  methods"), col. 3:41-42 ("the dried compositions are provided in the form of beads or spheres");

19  col. 6:9-10 ("[t]he frozen masses are then dried . . . to produce the dried beads").

20        Defendant's contentions also demonstrate there is no need to construe this term.  Neither

21  Defendant's non-infringement arguments nor its validity challenges demonstrate any material

22  importance of the term "bead" to the claims in which it is used.  Defendant nevertheless identified

23  this term as requiring a specialized construction.  But where, as here, the plain meaning of a claim

24  term is "sufficiently clear" to a lay person without further explanation by the Court, and further

25  construction would only serve to complicate or create new issues, the Court should refrain from

26  undertaking to construe the term.  *Semiconductor Energy Lab.*, 2006 WL 6130994, at *6

27  ("Adding to or rephrasing the claim language often introduces more problems than it solves.").

28

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

11.

ABAXIS, INC.'S OPENING
CLAIM CONSTRUCTION BRIEF
CASE NO. 5:10-CV-2840 LHK (HRL)

1   This Court has previously counseled against providing this sort of unnecessary construction, as

2   "some claim terms will not benefit from further clarification." *Id.* Construing the term "bead" in

3   these claims as Defendant suggests will not serve any purpose other than to open a door to create

4   new disputes regarding the scope of the claims that do not presently exist.

5       Because "bead" has a plainly comprehensible meaning and has no impact on the issues in

6   dispute, the Court should let the term stand for itself in the claims.

7   **V.   CONCLUSION**

8       For the foregoing reasons, Abaxis respectfully requests that the Court adopt Abaxis'

9   proposed constructions and reject Defendant's proposed constructions.

10

11  Dated: April 29, 2011                    COOLEY LLP

12

13                                           by:  _____/s/ *Adam M. Pivovar*_____
                                                       Adam Pivovar

14                                           Attorneys for Plaintiff-Counterdefendant
15                                           ABAXIS, INC.

16

17

18  934634/HN

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

12.                                    ABAXIS, INC.'S OPENING
                                       CLAIM CONSTRUCTION BRIEF
                                       CASE NO. 5:10-CV-2840 LHK (HRL)