UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

ABAXIS, INC.,

Plaintiff-Counterdefendant,

v.

CEPHEID,

Defendant-Counterclaimant.

Case No. C 10-2840 LHK (HRL)

**DISCOVERY DISPUTE JOINT REPORT #1**

Pursuant to Honorable Magistrate Judge Lloyd's Standing Order re: Civil Discovery Disputes, the Parties submit this Discovery Dispute Joint Report #1 to resolve the parties' dispute regarding whether Cepheid's Vice President of Intellectual Property, Vincent M. Powers, should be permitted to review highly confidential information dated prior to 1995.

The parties engaged in several telephonic meetings regarding this dispute, in addition to several in person meetings between the parties' lead counsel, which occurred most recently on December 15, 2011 at the offices of Abaxis' counsel. In total, the meetings lasted about 60 minutes. Close of discovery is February 16, 2012. Lead counsel, through their signatures below, attest that they have complied with Judge Lloyd's Standing Order re: Civil Discovery Disputes.

COOLEY LLP

*/s/ Ricardo Rodriguez*
Ricardo Rodriguez (Bar No. 173003)
Lead counsel for Plaintiff and Counterdefendant ABAXIS INC.

FISH & RICHARDSON PC

*/s/ Steven Carlson*
Steven Carlson (Bar No. 206451)
Lead counsel for Defendant and Counterclaimant CEPHEID

## I. RELEVANT FACTS AND THE PARTIES' DISPUTE

Cepheid and Abaxis stipulated to the terms of a Protective Order, which was entered by the Court on November 9, 2010. The parties' present dispute involves the application of sections 7.1 and 7.3(b) of the protective order, which set forth the restrictions on the use of information generally and by "House Counsel":

> 7.1 Basic Principles. A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a non-party in connection with this case only for prosecuting, defending, or attempting to settle this litigation, and for no other purpose.
>
> * * *
>
> 7.3 (b) the Receiving Party's House Counsel, who will use the information solely for assisting outside counsel in prosecuting, defending, or attempting to settle this litigation, who will not reveal, share or discuss information or its contents with anyone involved in competitive decision making and who will sign the "Agreement To Be Bound by Protective Order" that is attached hereto as Exhibit A prior to obtaining information access,

The Protective Order defines "House Counsel" as "attorneys who are employees of a Party or of a corporate parent owning 100% of a Party." Protective Order, ¶ 2.10 (Doc. No. 23).

The parties have worked extensively over several months to resolve certain issues relating to information designated "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY," leading to the proposed amended protective order. The parties' remaining dispute is whether Cepheid's Vice President of Intellectual Property, Dr. Vincent M. Powers, should be permitted to review highly confidential information dated prior to 1995.

## II. ABAXIS' POSITION

The limits imposed by the protective order on the use of the information are unqualified and make no exceptions: confidential information can be used only for this case and for no other purpose. Abaxis intended these restrictions to be self-policing, such that Abaxis highly confidential information would not -be disclosed to Cepheid employees whose duties placed them at risk of inadvertent or unavoidable use of Abaxis' confidential information. However, it became clear to Abaxis that no such self-policing was occurring when Abaxis was informed that Dr. Powers would be accessing deposition testimony live, as it was being taken, and thus there would be no way for anyone to first determine whether the disclosed information should be

provided to Dr. Powers. Accordingly, it became necessary to seek a more explicit delineation in the protective order regarding access to confidential information.

**A. Abaxis' Pre-1995 Documents Include Substantial Confidential and Proprietary Information**

The first of the patents in suit was filed on August 19, 1991. In the years between then and 1995, Abaxis was developing technology relating to mass production and manufacturing, in order to make many thousands of beads efficiently, as well as technology to incorporate the beads into Abaxis' products. This involved technology that is not claimed in the patents in suit, such as the particular dispensing tips, the use of degassing, the development of the chambers for the reagent, the sample chamber in the rotor, the design of the rotor channels, manufacture of the rotor, fluidics control within the rotor, and the instrument used with the rotor.[1] For example, in one document that Cepheid recently introduced in a deposition, Abaxis describes a goal of producing only a certain number of unwanted "doublets" per 10,000 beads, and the various factors and strategies used to achieve this goal. ABAX 101353-54. The same document describes issues relating to ice and humidity that arose, and ways to address those problems. *Id.* This document is dated October 1991, long before Cepheid's proposed 1995 cutoff date.

This is just a small amount of the vast information relating to manufacturing that has been produced in this case, and on which Cepheid has inquired about it in every deposition it has taken. At the court's request, Abaxis can submit many deposition excerpts in which detailed information on manufacturing of beads has been elicited from Abaxis witnesses. This information would be extraordinarily useful to a company such as Cepheid, which manufactures reagent beads for use in all of its products. Abaxis is rightly concerned that disclosure of this information could result, even inadvertently, of the improper use of many years of Abaxis' hard work in scaling up its processes for manufacture.

**B. Competitive Decision Makers, Such as Dr. Powers, Should Not Have Access to Pre-1995 Confidential Information**

[1] For example ABAX 000137, ABAX 003381, ABAX 099758, ABAX 009833, and Burd Dep. Tr. at 23-24 have been produced and document or discuss this sensitive information.

The case law recognizes that competitive decision-makers are not permitted access to the highly confidential information of the other party. *See Vasudevan Software, Inc. v. Int'l Bus. Mach. Corp.*, No. C09-05897 RS (HRL), 2010 WL 3629830, at *2 (N.D. Cal. Sept. 14, 2010); *M.A. Mobile Ltd. v. Indian Inst. of Tech. Kharagpur*, No. C08-02658 RMW (HRL), 2010 WL 3490209, at *2 (N.D. Cal. Sept. 3, 2010). This reflects a practical conclusion that such individuals cannot mentally compartmentalize the information, resulting in an unacceptable likelihood of inadvertent use of that information. *See, e.g.*, *In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373, 1378-79 (Fed. Cir. 2010); *Intel Corp. v. VIA Techs., Inc.*, 198 F.R.D. 525, 531 (N.D. Cal. 2000).

The Federal Circuit has defined "competitive decision making" as "counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *Intel Corp.*, 198 F.R.D. at 529 (quoting *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984)); *see also Deutsche Bank*, 605 F.3d at 1378-79. Examples of other activities recognized by courts as involving competitive decisionmaking include, for example: (1) advising on patent licenses, *see Intel Corp.*, 198 F.R.D. at 530 (if party's in-house counsel is given information about technical aspects of the other party's products, licensing agreements, and marketing information, that "may provide [the party] a competitive advantage in negotiating related licenses in the future"); and (2) advising on contracts, employment, and marketing decisions, *see Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1471 (9th Cir. 1992). Attorneys engaged in patent prosecution and counseling are also typically considered competitive decision makers. *Deutsche Bank*, 605 F.3d at 1380.

The Federal Circuit has also recognized that disclosure to an employee of a competitor, as here, magnifies the risk of inadvertent disclosure. *See Akzo N.V. v. U.S. Int'l Trade Comm'n*, 808 F.2d 1471, 1483 (Fed. Cir. 1986). Similar concerns have been reflected when the individuals seeking access to highly confidential information report to others involved in competitive decision making. *See Intel Corp.*, 198 F.R.D. at 532.

Dr. Powers is Cepheid's Vice President of Intellectual Property, a member of Cepheid's executive management team, and involved in competitive decision making. To Abaxis' best knowledge, Dr. Powers' competitive decision making has (at least) involved: product and process design, including the design around of the present litigation; management of Cepheid's patent portfolio and pending applications; patent prosecution; and advising Cepheid on licensing discussions. Accordingly, he should be precluded from having access to Abaxis' highly confidential information.

**C. Cepheid Cannot Rely on Alleged Lack of Competition to Permit Disclosure.**

Cepheid argues that because Abaxis and Cepheid's products are not directed to identical tests, they are not competitors. However, Abaxis' competitive concerns go well beyond the particular products of the companies. Abaxis has spent many years developing and refining manufacturing techniques for the production of its reagent beads. Abaxis has several current and prospective licensees that utilize and/or plan to utilize Abaxis' patented reagent bead technology in the medical diagnostic field. Abaxis and Cepheid both have the capacity to manufacture reagent beads for supply to third parties. Cepheid's website specifically identifies such manufacture for other companies as an area of its business. (http://cepheid.com/tests-and-reagents/industrial-reagent/customer-reagents). Further, even as to the particular reagents of the companies, Cepheid could decide to release a competing product. Cepheid brushes these concerns aside as "speculation," but notably, it fails to provide any commitment or assurance that Cepheid has not and will not compete in this manner.

Further, the concerns regarding disclosure go beyond competition. Abaxis has spent substantial company resources developing its manufacturing techniques. Another company, whether currently a direct competitor or not, should not be able to benefit from Abaxis' hard work. The nature of the information on manufacturing is such that it simply cannot be segregated in a person's mind, and thus the risk of inadvertent use of the information is very high.

**D. Cepheid's In-House Counsel is Not Indispensable to this Litigation.**

Cepheid presently has eight outside attorneys of record in this case. Those attorneys are more than capable of representing Cepheid's interests in this litigation and do not pose the same risk of inadvertently disclosing Abaxis' highly confidential information in the future. Furthermore, there is no indication that any of the in-house personnel at Cepheid have any specialized knowledge that would in any way prejudice Cepheid's ability to defend itself through outside counsel. *See Intel Corp.*, 198 F.R.D. at 529 (N.D. Cal. 2000) (refusing access since there was no demonstration that individual had "specialized knowledge" indispensible to the litigation). Moreover, Cepheid already has one in-house attorney, Mr. Burrows, who will have access to the pre-1995 documents (and thus is subject to a prosecution bar).

**E. Abaxis' Final Proposal**

Dr. Powers should not have any access to Abaxis' highly confidential information. He plays a critical role on Cepheid's management team, has involvement with licensing discussions, has involvement in process and product design (including with respect to the design around at the center of this litigation), and is involved in patent prosecution or counseling. There is an exceptionally high risk the information would be inadvertently used by him in his role at Cepheid.[2]

Additionally, he was involved in the attempt to design-around the patents-in-suit. Accordingly, he is a fact witnesses in this case, and will be deposed on issues such as the available technology during the time Cepheid initially licensed the patents and began to try to design-around them. Access to Abaxis' internal, confidential pre-1996 technology would pose a substantial risk of coloring his recollection of these percipient facts.

Cepheid has already shared some Abaxis' Highly Confidential – Attorneys' Eyes Only information with Dr. Powers. To the extent such information was more than a *de minimus* amount, he should be subject to the following competitive decision making bar: Dr. Powers shall

[2] To the extent certain information, such as particular types of financial information, are necessary for settlement purposes, Abaxis can provide limited access on a case-by-case basis. Abaxis did so for the mediation.

not participate in decisions relating to the production, design, or licensing of dissolvable lyophilized reagent beads for up to one year after final termination of this litigation.

## III. CEPHEID'S POSITION

### A. The Terms of the Stipulated Protective Order Expressly Allow Dr. Powers to Access Highly Confidential Information

The terms of the Stipulated Protective Order are clear—in-house counsel of both parties are allowed access to Highly Confidential material. The Protective Order does not limit access to particular in-house counsel, nor does it contain a prosecution bar. The only requirements are that (a) the material only be used in connection with this case; (b) that house counsel "will not reveal, share or discuss information or its contents with anyone involved in competitive decision making," and (c) that they sign the "Agreement To Be Bound by Protective Order." Cepheid has fully complied with this Order.

Abaxis is now attempting to rewrite the Protective Order a year after its entry. Abaxis asserts that no in-house counsel should have access to materials designated as "Highly Confidential" if they have a role of advising the company on "any or all of the client's decisions" relating to the technology in suit. *See* Joint Report at 4 (Abaxis' Position). The Protective Order is clear that in-house counsel may have access to Highly Confidential materials, so long as they do not thereafter share the information with the company's competitive decision-makers – *i.e.*, they "will not reveal, share or discuss information or its contents with anyone involved in competitive decision making." Protective Order, ¶ 7.3. Cepheid fully understands and has always complied with this Order.

There is no basis for Abaxis to attempt now to rewrite the protective order to exclude Dr. Powers, when the stipulated order does allow his access. *See, e.g., Hassaine v. Home Depot U.S.A., Inc.* 2011 WL 1213094 (S.D. Cal. 2011) ("Plaintiffs chose to enter into this agreement . . . . Accordingly, the Court declines to interpret the Protective Order in a manner that contradicts the explicit terms of section 1.7. The Court further declines to amend the Protective Order to remove the language defining what constitutes confidential material.").

**B. Cepheid and Abaxis Do Not Compete**

Abaxis and Cepheid are not competitors. Indeed, Abaxis' lead counsel has acknowledged and represented this fact to the Court:

THE COURT: LET ME ASK, WHAT IS THE BUSINESS RELATIONSHIP BETWEEN THE PARTIES? IT IS JUST THE LICENSE OR DO YOU MANUFACTURE THINGS FOR EACH OTHER? **ARE YOU COMPETITORS?** WHAT'S THE SITUATION BETWEEN THE TWO PARTIES?

MR. RODRIGUEZ: MY UNDERSTANDING IS THAT IT'S JUST THE LICENSE.

10/27/10 Hrg. Tr. at 5 (emphasis supplied). Abaxis' counsel reiterated:

THE COURT: OKAY. ALL RIGHT. DOES YOUR – MR. RODRIGUEZ, **DOES YOUR CLIENT MAKE A COMPETING PRODUCT TO THE DEFENDANT'S**?

MR. RODRIGUEZ: I DON'T BELIEVE THEY DO, YOUR HONOR.

*Id.* at 10 (emphasis supplied).

Abaxis' prior representations were correct. Abaxis is a clinical chemistry company – it sells devices and assays for quantifying compounds in a blood sample, like glucose, cholesterol, potassium, and enzymes. In contrast, Cepheid is a molecular diagnostics company focusing on detecting genetic markers (*i.e.*, DNA) indicative of pathogens (*e.g.*, tuberculosis and methicillin resistant Staphylococcus aureus) or disease states (*e.g.*, cancer). These markets do not overlap – *i.e.*, no Cepheid product competes with any Abaxis product and vice versa.

Abaxis speculates about potential competition in the future, without any basis in the evidence. Cepheid's proposal fully addresses even this speculation, by restricting Dr. Powers' access to documents dated prior to 1995. And Dr. Powers will be bound by the enclosed amendment to the protective order which bars him from prosecuting beadmaking patents.

**C. Dr. Powers Is Not A Competitive Decision-maker With Respect to Abaxis**

Abaxis distorts the law on competitive decision-making. The Federal Circuit has defined competitive decision-making as involvement in advice and participation of the client's decisions "made in light of similar or corresponding information about a competitor." *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 & n.3 (Fed. Cir. 1984). Critically, the touchstone for analysis is not whether an in-house counsel is engaged in decision-making, as all in-house

counsel are, but whether they are engaged in "*competitive* decision-making"—that is, decision-making which is made in light of information about a *competitor*. *Id.* As this Court has noted, a rationale for the focus on competitive decision-making is that "in-house counsel who is exposed to a *competitor*'s confidential information often cannot simply forget what he or she has learned." *Vasudevan Software, Inc. v. International Business Machines Corp*., 2010 WL 3629830, 2 (N.D. Cal. 2010) (emphasis added). Thus, when the parties were "no longer in competition" this Court has ruled that "the risk of unauthorized use . . . of the information that concerns defendants is negligible . . . but the detriment to plaintiff if the information is denied to [its in-house counsel] could be substantial." *Softwareworks Group, Inc. v. IHosting, Inc.*, 2006 WL 345665 (N.D. Cal. Nov. 29, 2006) (Lloyd, J.); *see also Adobe Sys. v. Davachi*, 2011 U.S. Dist. LEXIS 71296, 9-13 (N.D. Cal. July 1, 2011) ("The concern for inadvertent disclosure is particularly acute where the party seeking access to the information is a direct competitor."); *Cheah IP LLC v. Plaxo Inc*., 2009 WL 1190331 (Fed. Cir. 2009) (denying plaintiff's motion to restrict defendant's in-house counsel from access to highly confidential information when "Plaintiff has failed to establish that [in-house counsel] is engaged in competitive decision-making with respect to Plaintiff.").

Because Abaxis and Cepheid are not competitors, Dr. Powers is not engaged in decision-making that adversely affects Abaxis, and there is no basis for considering him a competitive decision-maker for the purpose of the Protective Order.

**D. Dr. Powers' Role**

As described above, Dr. Powers is not engaged in competitive decision-making with regard to Abaxis, because Abaxis and Cepheid do not compete. As a corporate officer, Dr. Powers at times advises and participates in decisions around product design to avoid third party patents. While Dr. Powers oversees Cepheid's patent prosecution work, under the proposed amendment to the protective order he would be heretofore barred from involvement in prosecuting patents relating to methods for beadmaking. Dr. Powers has specialized knowledge relevant to the litigation, including a Ph.D. in Pharmaceutical Chemistry, and has been crucial in managing the present litigation and internal decisions relating to Cepheid's defense. Cepheid's

ability to litigate will be unjustifiably prejudiced if Dr. Powers does not have access to the designated material. In particular, Dr. Powers should be able to assist in the rapidly-approaching expert discovery and summary judgment phases and to be present throughout trial. Both of these important roles would be compromised under Abaxis' attempted rewriting of the Protective Order.

**E. Cepheid's Response to Abaxis' Concerns**

Abaxis first raised its purported concerns in August 2011 when deposition discovery commenced. Immediately thereupon, Cepheid's counsel ceased providing Dr. Powers with any designated materials pending resolution of this dispute, and also resolved access concerns relating to Dr. Robert Burrows (in-house counsel at Cepheid). Prior to Abaxis raising this issue, Dr. Powers had reviewed a small quantity of Abaxis documents dated 1993 or earlier (as the Protective Order expressly allowed), and Dr. Powers shared none of this information with others (beyond Dr. Robert Burrows and another patent agent, both of whom are allowed under the protective order per agreement). Cepheid has agreed to a "prosecution bar" as recited in the proposed amended protective order accompanying this submission, as will apply to both Drs. Burrows and Powers.

**F. If the Court Finds it Necessary to Amend the Protective Order to Limit House Counsel's Access to Designated Material, Cepheid's Final and "Most Reasonable" Proposal Would Negate Any Potential Harm From Inadvertent Disclosure**

On a going-forward basis, the best solution is to continue maintaining the Protective Order as-is, allowing disclosure of Confidential and Highly Confidential material to Dr. Powers, with the requirement that he continue to abide by the Stipulated Protective Order (including the prohibition of his disclosure of the designated materials to others, and the prohibition on using the materials for purposes beyond this litigation).[3]

As a compromise, Cepheid is willing to agree to the additional limitation that Dr. Powers

[3] Abaxis also requested that certain recent technical documents be produced on an outside-counsel only basis. In order to avoid unnecessary disputes, Cepheid agreed to adding this confidentiality tier, which is reflected in the accompanying proposed protective order. Through this compromise to expedite discovery, Cepheid does not agree that the information would pose a competitive risk.

would only have access to designated materials before 1995. He would also have access to certain high-level financial documents to which the parties have already agreed (and may agree in the future). He will continue to abide by the other provisions of the Stipulated Protective Order, including the prohibition on disclosing the designated materials to others, and using the materials only for the purpose of this litigation.

This limitation would allow Dr. Powers to have access to the documents of highest relevance to the case -- *i.e.*, during the time period of the development of the alleged invention and the initial prosecution of the patents in suit. This limitation provides Abaxis the additional protection that Dr. Powers would not have access to any research done by Abaxis over the last 17 years, nor any pending patent applications. Similarly, Dr. Powers would not have any access to information about Abaxis' future business plans or unreleased products. Nor would he have access to current financial data, except for certain high level summary information agreed to by the parties. By agreeing to screen Dr. Powers from all recent information from Abaxis, any threat to Abaxis' interests from inadvertent disclosure would be negligible.

Ultimately, decisions on access under a Protective Order require a balancing of interests. Abaxis already entered the Stipulated Protective Order in this case allowing access by in-house counsel of either party, which it now seeks to limit or preclude. Restricting this access would amount to significant prejudice to Cepheid's ability to utilize its highly trained in-house counsel group to efficiently and cost-effectively supervise this important litigation.

Dated: December 21, 2011

COOLEY LLP

*/s/ Ricardo Rodriguez*
Ricardo Rodriguez (Bar No. 173003)
Lead counsel for Plaintiff and Counterdefendant ABAXIS INC.

Dated: December 21, 2011

FISH & RICHARDSON PC

*/s/ Steven Carlson*
Steven Carlson (Bar No. 206451)
Lead counsel for Defendant and Counterclaimant CEPHEID

**FILER'S ATTESTATION PURSUANT TO GENERAL ORDER 45**

I, Lam K. Nguyen, attest that concurrence in the filing of this Discovery Dispute Joint Report #1 has been obtained from each of the other signatories.  Executed on December 21, 2011, at Palo Alto, California.

*/s/ Lam K. Nguyen*
Lam K. Nguyen