Juanita R. Brooks (CA #75934/brooks@fr.com)
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Telephone:  (858) 678-5070
Facsimile:  (858) 678-5099

Steven C. Carlson (CA #206451/scarlson@fr.com)
Limin Zheng (CA #226875/zheng@fr.com)
Rebecca C. Grant (CA #264214/rgrant@fr.com)
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone: (650) 839-5070
Facsimile: (650) 839-5071

Jonathan E. Singer (CA #187908/singer@fr.com)
Rebecca L. Shult (*pro hac vice*/shult@fr.com)
FISH & RICHARDSON P.C.
60 South Sixth Street, Suite 3300
Minneapolis, MN 55402
Telephone:  (612) 335-5070
Facsimile:  (612) 288-9696

Attorneys for Defendant and Counter-Claimant
CEPHEID

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ABAXIS, INC.,<br><br>　　　　Plaintiff and Counter-Defendant,<br><br>　　v.<br><br>CEPHEID,<br><br>　　　　Defendant and Counter-Claimant. | Civil Case No. 10-2840 LHK (HRL)<br><br>**CEPHEID'S OPPOSITION TO ABAXIS' MOTION TO EXCLUDE EXPERT TESTIMONY**<br><br>**Hearing Date:** June 28, 2012<br>**Time:** 1:30 p.m.<br>**Courtroom:** 8, 4th Floor<br><br>**Judge:** Hon. Lucy H. Koh |

# TABLE OF CONTENTS

I. SUMMARY OF ARGUMENT ..................................................................................................1

II. LEGAL STANDARD ..............................................................................................................1

III. UNDER DAUBERT, DR. WILLIAMS IS A WELL QUALIFIED EXPERT —ABAXIS'S CRITICISMS GO TO WEIGHT, NOT ADMISSIBILITY ......................................................3

    A. Dr. Williams' Expertise Vastly Exceeds the Person of Ordinary Skill in the Art of the Inventions ..................................................................................................................3

    B. Dr. Williams Has More than Sufficient Technical Background in Making Freeze-dried Materials to Testify to the Jury .................................................................................4

    C. Dr. Williams is Qualified to Opine about IVEK Pumps ................................................8

IV. DR. WILLIAMS HAS NOT OFFERED AND DOES NOT INTEND TO OFFER LEGAL CONCLUSIONS .....................................................................................................................9

    A. Dr. Williams Has Not Offered and Does Not Intend to Offer Legal Opinions Regarding "Offer for Sale" .......................................................................................................9

    B. Dr. Williams' Opinions Regarding the Lack of Evidentiary Support for Abaxis' Commercial Success Argument Are Proper ............................................................10

    C. Dr. Williams' Opinions Regarding the Lack of Evidentiary Support for Abaxis' Copying Argument Are Proper ................................................................................11

V. CONCLUSION .....................................................................................................................12

# TABLE OF AUTHORITIES

**Cases**

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993) ..................................................................................................1, 2, 7, 8

*DSU Med. Corp. v. JMS Co., Ltd.*,
296 F. Supp. 2d 1140 (N.D. Cal. 2003) ................................................................................2

*Hangarter v. Provident Life and Acc. Ins. Co.*,
373 F.3d 998 (9th Cir. 2004) ......................................................................................2, 7, 10

*Mformation Techs., Inc. v. Research in Motion Ltd.*,
No. C 08-04990, 2012 WL 1142537 (N.D. Cal. Mar. 29, 2012) ..........................................2

*Micro Chem., Inc. v. Lextron, Inc.*,
317 F.3d 1387 (Fed. Cir. 2003) .........................................................................................2, 8

*Mytee Prods., Inc. v. Harris Research, Inc.*,
439 Fed. App'x 882 (Fed. Cir. 2011) ....................................................................................8

*Ormco Corp. v. Align Tech., Inc.*,
463 F.3d 1299 (Fed. Cir. 2006) ...........................................................................................11

*S.E.C. v. Leslie*,
No. C 07–3444, 2010 WL 2991038 (N.D. Cal. July 29, 2010) (J. Fogel) .............................7

*Tokai Corp. v. Easton Enters., Inc.*,
632 F.3d 1358 (Fed. Cir. 2011) ...........................................................................................10

**Rules**

Fed. R. Evid. 702 ..............................................................................................................................1

Fed. R. Evid. 703 ..............................................................................................................................8

## I. SUMMARY OF ARGUMENT

Abaxis fails to identify any opinion by Cepheid's expert, Dr. Phil Williams, that is either unreliable or irrelevant. Dr. Williams—a highly regarded professor with over two decades of experience in the relevant field of the asserted patents— has provided well-supported opinions backed by his high qualifications. Any disputes that Abaxis has would go to the weight, not the admissibility, of Dr. Williams' testimony. As for the "non-technical" opinions that Abaxis identifies, these are either legal matters for which Dr. Williams has repeatedly testified he is *not* offering opinions, or other rebuttal points for which Dr. Williams is simply pointing out the lack of proof offered by Abaxis' expert witness, Dr. Carpenter.

## II. LEGAL STANDARD

Admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Furthermore it is well established that to be admissible, expert testimony must be relevant and reliable. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 588-90 (1993). Relevancy is governed by the "liberal" standard of having "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Id*. at 587 (citing Fed. R. Evid. 401).

To satisfy the requirement for reliability, it is Cepheid's burden to show both that the expert is qualified to render the opinion and that his opinion is adequately supported. *Id*. at 589-

90.  Expert testimony need not be based on firsthand knowledge. *Id.* at 592 ("Unlike an ordinary witness, . . . an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation.") (citing Fed. R. Evid. 702, 703). The Ninth Circuit has interpreted Rule 702 as "contemplat[ing] a *broad conception* of expert qualifications." *Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1015 (9th Cir. 2004) (quoting *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269 (9th Cir. 1994)) (emphasis added in *Hangarter*). "[T]he advisory committee notes emphasize that Rule 702 is broadly phrased and intended to embrace more than a narrow definition of qualified expert." *Id.*[1]

Once the basic threshold of reliability and relevance is met, then disputes about relevance or accuracy go to the weight, not the admissibility, of the evidence. *Mformation Techs., Inc. v. Research in Motion Ltd.*, No. C 08-04990, 2012 WL 1142537, at *3 (N.D. Cal. Mar. 29, 2012) ("When the methodology is sound, and the evidence relied upon sufficiently related to the case at hand, disputes about the degree of relevance or accuracy (above this minimum threshold) may go to the testimony's weight, but not its admissibility.") (citations omitted); *see also Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, No. C 03-1431, 2006 WL 1390416, at *9 (N.D. Cal. May 18, 2006) ("The threshold issue of admissibility only requires the Court to examine the connection between the opinion proffered and the reconstructed market data. Where, as here, there is a sufficient connection, the opinion is admissible with its weight to be determined by the fact-finder.") (citations omitted). Once the threshold of relevancy and reliability is met, as is the case here, matters of weight, credibility, and ultimate fact are properly resolved through cross examination. *DSU Med. Corp. v. JMS Co., Ltd.*, 296 F. Supp. 2d 1140, 1156 (N.D. Cal. 2003) ("If there is a sufficient connection [between the proffered opinion and the data], the opinion is admissible with its weight to be determined by the fact-finder.").

---

[1] The admissibility of expert testimony is governed by regional circuit law. *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1390-91 (Fed. Cir. 2003).

### III. UNDER *DAUBERT*, DR. WILLIAMS IS A WELL QUALIFIED EXPERT — ABAXIS'S CRITICISMS GO TO WEIGHT, NOT ADMISSIBILITY

#### A. Dr. Williams' Expertise Vastly Exceeds the Person of Ordinary Skill in the Art of the Inventions

Both experts in this case have set a relatively low level of training for the person of ordinary skill in the art. ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅.[2] Ex. A (2012-04-13 Carpenter Rebuttal Report) at ¶ 20;[3] Rodriguez Decl. Ex. 3 at ¶ 22;[4] *see also id.* at ¶¶ 19-23 (explaining basis of skill level chosen). Consistent with this skill level of the hypothetical person of skill in the art, most of the named inventors on Abaxis' patents have at most a bachelor's degree in a relevant field. Ex. B (Burd Depo. Tr.) at 10:18-15:16 (B.S. in Chemical Engineering); Ex. C (Tang Depo. Tr.) at 8:6-9:25 (B.S. in Chemical Engineering); Ex. D (Yu Depo. Tr.) at 8:9-11:16 (B.S. in Chemical Engineering); Ex. E (Torke (formerly Bogart) Depo. Tr.) at 10:1-25 (B.S. in Chemistry); Ex. F (Schembri Depo. Tr.) at 8:23-11:15 (B.S. in Mechanical Engineering and M.S. in Engineering Management); Ex. G (Ostoich Depo. Tr.) at 8:16-16:8 (B.S. in Electrical Engineering, M.S. in Fiber Optics, Ph.D. in Fiber Optics).

Dr. Williams, a Professor of Biophysics at the School of Pharmacy, University of Nottingham, possesses vastly more experience and expertise than the person of ordinary skill. He has over two decades of education, training and professional experience in the field of pharmacy

---

[2] ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅ Ex. A at ¶ 20. Dr. Carpenter's requirement for experience ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅ is unsupported, as discussed below. Dr. Williams offers his opinion of the level of skill in the field as follows: "Thus, I conclude that a person of ordinary skill in the art would have a Bachelor's degree in chemistry and/or the pharmaceutical arts, with a focus on analytical chemistry, followed by approximately three to four years of experience in the field. A person of ordinary skill in the art may have graduate training in lieu of industry experience in the field." Rodriguez Decl, Ex. 3 at ¶ 22.

[3] Unless otherwise specified, all exhibits referred to in this brief are attached to the Declaration of Steven C. Carlson in Support of Cepheid's Opposition to Abaxis' Motion to Exclude Expert Testimony, filed concurrently herewith.

1  and pharmaceutical preparations.  *See* Ex. H (Declaration of Dr. Philip Michael Williams) at ¶¶ 1 & 3 - 9.  He graduated from University of Nottingham in 1988 with a Bachelor's degree in Pharmacy—which covered "the subjects of pharmaceutical chemistry, pharmaceutics, physiology, pharmacology, mathematics, biology, and professional skills"— qualified as a registered pharmacist in 1989, and received his Ph.D. in Biophysics from the University of Nottingham in 1995. *Id.* at ¶¶ 3-4 & 7.  During his Ph.D. studies, he continued to work as a pharmacist, taught and supervised undergraduate students, and developed computational chemistry software.  *Id.* at ¶ 6.  A primary role of a pharmacist is to ensure the safe and appropriate use of medicines, which involves the accurate measurement of chemicals, reagents, and medicines and the correct application of statistical analysis.  *Id.* at ¶ 5.

After receiving his Ph.D., Dr. Williams continued his research and teaching career at University of Nottingham, first as a lecturer in the School of Pharmacy in 1996, then Reader in Biophysics in 2003, and then Professor of Biophysics in 2008. *Id.* at ¶¶ 7-9.  He became a Fellow of the Royal Pharmaceutical Society of Great Britain in 2004. *Id.* at ¶ 9.  Dr. Williams is a founder of the contract research firm Molecular Profiles, where he regularly counsels pharmaceutical and biotechnology companies. *Id.* at ¶ 11.  He has authored over 150 scientific papers, presented at over 40 scientific meetings, published 12 book chapters, and edited two books. *Id.* at ¶ 14 & App. A at pp. 5-16, 21-23.  In short, he is an extremely well qualified expert.

**B.  Dr. Williams Has More than Sufficient Technical Background in Making Freeze-dried Materials to Testify to the Jury**

Abaxis identifies paragraphs "86, 92, 109, 140, 177" of Dr. Williams' opening report as allegedly beyond Dr. Williams' indisputably substantial expertise because, according to Abaxis, Dr. Williams does not have sufficient experience in "freeze-drying."  *See* Abaxis Br. at 3.  There is no merit to this claim.  Any of Abaxis' perceived concerns would go to the weight, not the admissibility, of evidence.

---

[4]  "Rodriguez Decl." refers to the Declaration of Ricardo Rodriguez in Support of Motion to Exclude Expert Testimony lodged by Abaxis in connection with its Administrative Motion to File Under Seal (D.I. 168).

### 1. Paragraphs 86 and 92

As a threshold matter, the first two paragraphs identified by Abaxis—paragraphs 86 and 92—have nothing to do with freeze drying. These paragraphs concern the precision of prior art dispensing pumps. *See* Rodriguez Decl. Ex. 3, at ¶¶ 86, 92. The dispensing of liquid reagents is a fundamentally different process than freeze drying. The first step of Abaxis' process is to dispense its reagents into liquid nitrogen (*e.g.*, using a precision pump), and a separate step is to freeze dry the frozen beads (*e.g.*, using a lyophilizer). *See* Rodriguez Decl. Ex. 1, at 5:30-38; 5:64-6:13.

There is no basis for Abaxis to criticize Dr. Williams' background in the precise dispensing of drops. As a registered pharmacist, Dr. Williams has been trained in dispensing very precise, discrete amounts of chemicals, which is paramount to ensuring the safety and efficacy of medications. Ex. H at ¶ 5. Dr. Williams is thoroughly experienced in using a wide range of precision pumps. *Id*. at ¶12

Ignoring Dr. Williams' education, training, and experience, Abaxis relies solely on its mischaracterization of Dr. Williams' deposition testimony. *See* Abaxis Br. at 3. For example, asserting that Dr. Williams "could not identify any of the factors contributing to the ability of a dispensing pump to dispense consistent, precise drops," Abaxis neglects to mention that Dr. Williams was never asked to identify these factors. *See generally* Rodriguez Decl. Ex. 2. Dr. Williams was only asked to identify "different factors that would affect whether or not in the [prior art] milk reference there actually is a normal distribution of particle sizes around the mean[,]" to which Dr. Williams responded: "So the factors which generally affect particle size distribution are random chaotic events. In this case it would be on the dispensing of the drop." *Id.* at 89:7-19. Similarly, Dr. Williams never testified that "nothing would affect the consistency of a dispensed droplet," as Abaxis alleges. *See* Abaxis Br. at 3; *see also generally* Rodriguez Decl. Ex. 2. Indeed, he was never even asked what would affect "the consistency of a dispensed droplet." *See* Rodriguez Decl. Ex. 2.[5] Dr. Williams is fully qualified to testify about dispensing

---

[5] Abaxis also accuses Dr. Williams of "evasive, circular responses." Abaxis Br. at 3. The so called "evasive, circular responses" were a result of counsel asking nonsensical questions—

precision, and Abaxis' deposition excerpts show nothing to the contrary. Abaxis can certainly cross-examine Dr. Williams on these statements if it chooses to in front of the jury.

### 2. Paragraphs 109, 140, 177

Dr. Williams has opined that persons of ordinary skill in the art would know how to perform lyophilization, such that various prior art references are enabling. In particular, he opines:

- **¶ 109**: "Further, freeze-drying was known to those of ordinary skill in the art at the time."
- **¶ 140**: "The process of freezing beads and freeze-drying beads was known to those of ordinary skill in the art at the time."
- **¶ 177**: disagreeing with Abaxis' contention that "the Schembri reference is non-enabling"

Rodriguez Decl. Ex. 3. There is no basis for Abaxis to challenge Dr. Williams' credentials to make this point.

Abaxis previously made the very same point to the Patent Office that it now challenges. During the prosecution of the '597 patent application, Abaxis represented to the Patent Office that "[l]yophilization is *one of the most common procedures conducted in the chemical arts*. One of skill is fully able to practice lyophilization over a wide range of temperatures, using a wide variety of commercially available apparatus." Ex. I at ABAX020536 (emphasis added). Indeed, the patents-in-suit simply state that lyophilization "is carried out according to standard procedures known in the art," with only scant elaboration. Rodriguez Decl. Ex. 1 at 5:33-37. Likewise, the Schembri article (written by Abaxis inventors about the Abaxis product) says that the Abaxis beads are "dried with conventional lyophilization." *See* Ex. J at 1668.

Dr. Williams is fully qualified to make the unremarkable point that persons skilled in the art knew how to freeze dry reagents, which is exactly what Abaxis already represented to the Patent Office. Through his professorship and his work at Molecular Profiles, he commonly

---

whether *dispensed* liquid would accumulate at the dispensing tip. *See* Rodriguez Decl. Ex. 2 at 90:14-91:5. As Dr. Williams explained: "As liquid is being dispensed from the tip, then the liquid is no longer there." *Id.* at 90:17-18. But, once again, Abaxis can raise these responses at cross-examination at trial, if it so chooses.

1 oversees the lyophilization of various compounds. Ex. H at ¶ 12. Lyophilization is one of the ways he instructs his students to remove water molecules from compounds of interest and to stabilize enzymes and other proteins. *Id.* He frequently directs his students in his lab to freeze dry enzymes and other proteins for long term storage (frequently using liquid nitrogen to freeze the proteins). The studies conducted by Dr. Williams' research group include examining the effect of freeze-drying on the activity and structure of enzymes and proteins. *Id.* He instructs students on how to lyophilize such compounds, typically by introducing the students to one of his laboratory's lyophilizers and directing the students to the machines' standard operating procedures. *Id.*; Rodriguez Decl. Ex. 2 (Williams Depo. Tr.) at 18:9-12. He has found that pointing the students to the lyophilizers' standard operating instructions is sufficient to allow his students to successfully lyophilize the compounds of interest. Ex. H at ¶ 12. His personal operation of the machines is not required. Dr. Williams' general knowledge and experience in freeze-drying, and his instruction of his students on how to use the freeze-dryer, are more than sufficient to qualify him as an expert for purposes of providing an opinion as to whether the prior art provides sufficient disclosure to enable a person of ordinary skill in the art to practice freeze-drying. *See S.E.C. v. Leslie*, No. C 07–3444, 2010 WL 2991038, at *10 (N.D. Cal. July 29, 2010) (J. Fogel) ("The standard of qualification as an expert witness under Rule 702 is not particularly high.") (citing *Hangarter*, 373 F.3d at 1016, 1016 n.12, and noting that the *Hangarter* panel was "unaware of precedent that found it to be an abuse of discretion to admit an expert with general knowledge in a field [to testify] as to more specific issues").

To the extent Abaxis believes that not operating lyophilizers, but supervising and teaching dozens of students' how to operate lyophilizers, somehow makes Dr. Williams deficient to testify about "one of the most common procedures conducted in the chemical arts," Abaxis is free to cross-examine him at trial – again, this goes to weight, not admissibility.[6] *Daubert* should not be used to preclude an expert opinion based on the type of concerns raised by Abaxis.

---

[6] In its brief, Abaxis further seeks to preclude Dr. Williams from offering opinions on the "technical evaluation of lyophilization." Abaxis Br. at 3. Abaxis has identified no particular opinion from Dr. Williams on this point that it seeks to exclude, thus making it impossible for Cepheid to respond.

### C. Dr. Williams is Qualified to Opine about IVEK Pumps

Abaxis' criticisms concerning Dr. Williams' expertise on IVEK pumps fare no better. While neither of the parties' experts personally used this particular brand of pump, as Dr. Williams testified, he "come[s] across pumps which dispense volumes of liquid all the time." Rodriguez Decl. Ex. 2 at 55:13-21. He has personally used at least "syringe-driven pumps, peristaltic pumps, impeller-driven pumps." *Id.* at 56:7-10; *see also id.* at 56:13-22 (explaining generally what these pumps are and how they operate). Many of these pumps are known for their ability to dispense very precise amounts of liquid. Ex. H at ¶ 13.

The fact that Dr. Williams, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓[7] did not personally know of the IVEK pump nor see advertisements for them until this litigation is immaterial to Abaxis' motion. "An expert may base an opinion on facts or data in the case that the expert has been made aware of[.]" Fed. R. Evid. 703; *see also Daubert*, 509 U.S. at 592 ("Unlike an ordinary witness, . . . an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation."). Dr. Williams has based his opinion—that IVEK pumps were well known at the time of the invention—on extensive documentary as well as testimonial evidence in the record, including numerous advertisements marketing IVEK pumps for their accuracy and repeatability and testimony from third party IVEK representative and employees. *See, e.g.*, Rodriguez Decl. Ex. 3 at ¶¶ 107, 122-23, 125-27. To the extent Abaxis disputes the reliability of the facts underlying Dr. William's opinion, Abaxis is free to challenge their correctness at trial. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1392 (Fed. Cir. 2003) (finding that "the trial court properly did not rule inadmissible [expert]'s damages testimony simply because it was based on Micro Chemical's version of the contested facts," noting that

---

[7] ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ex. K (Carpenter Depo. Tr.) at 61:9-10. A ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ to offer opinions on precision pumps ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *See Mytee Prods., Inc. v. Harris Research, Inc.*, 439 Fed. App'x 882, 887 (Fed. Cir. 2011) (rejecting plaintiff's argument that defendant's expert was not qualified in view of his lack of experience in carpet cleaning, noting that plaintiff had proffered its own expert's testimony even though he also had no experience in the carpet cleaning field).

"[w]hen, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony").

Abaxis also erroneously concludes that "[t]he same is true of Dr. Williams' opinions on other precision pumps." Abaxis Br. at 4 (citing to Rodriguez Decl. Ex. 2 at 55:13-56:24). The testimony upon which Abaxis relies demonstrates that Dr. Williams was fully capable of explaining in general what different pumps are and how they operate. *See* Rodriguez Decl. Ex. 2 at 55:13-56:24. Indeed, Dr. Williams testified that he "come[s] across pumps which dispense volumes of liquid all the time," *id.* at 55:13-21, and that he has personally used at least "syringe-driven pumps, peristaltic pumps, impeller-driven pumps," *id.* at 56:7-10; *see also* Ex. L (Williams Depo. Tr.) at 49:24-50:19 (describing peristaltic and syringe pumps).

Accordingly, Abaxis' request to exclude Dr. Williams' testimony relating to IVEK and other precision pumps, including testimony based on paragraphs 121-135 of his opening invalidity report (Rodriguez Decl. Ex. 3), should be rejected. Any questions about Dr. Williams' understanding of IVEK pumps go to the weight, not the admissibility, of evidence.

### IV. DR. WILLIAMS HAS NOT OFFERED AND DOES NOT INTEND TO OFFER LEGAL CONCLUSIONS

#### A. Dr. Williams Has Not Offered and Does Not Intend to Offer Legal Opinions Regarding "Offer for Sale"

Abaxis moves this Court for an order precluding Dr. Williams from offering legal opinions as to whether prior contracts constitute an "offer for sale." Abaxis Br. at 4. It is unclear why Abaxis is pressing this point, considering that Dr. Williams repeatedly disavowed that he was offering such an opinion:

> Q: Is that a legal conclusion that you intend to provide? Offer for sale is a term in the law of patents.
>
> A: I am not proffering a legal conclusion.
>
> …
>
> Q: And so is it your understanding that that constitutes an offer for sale for purposes of being prior art?
>
> A: I am not an expert in the law, so I'm not making that legal conclusion.

Ex. L at 138:13-139:16, 139:9-15. Abaxis ignores this deposition testimony. And in the sections of Dr. Williams' expert report identified by Abaxis, Dr. Williams prefaced his remarks about the commercial transactions in question with the term "I understand that" or, in some cases more explicitly, "I understand from Cepheid's counsel that . . . ." *See* Rodriguez Decl. Ex. 3 at ¶¶ 157-160, 182-187. For Abaxis to pretend otherwise is unsupportable.

However, Dr. Williams is entitled to offer his opinions—based on his scientific and technical knowledge and expertise and the information he "has been made aware of," *see* Fed. R. Evid. 703—as to whether the subject matters of the Pfizer agreement or the Teramecs agreement embodied the asserted claims, an *issue* related to the ultimate conclusion of whether there is an applicable on-sale bar. *See Hangarter*, 373 F.3d at 1016. There is nothing improper for Dr. Williams to rely on Cepheid's counsel's interpretations of these agreements and assume for the purposes of his analysis that counsel's interpretations were correct. While "an expert witness cannot give an opinion as to her legal conclusion, *i.e.*, an opinion on an ultimate issue of law[,]" it is "well-established . . . that expert testimony concerning an ultimate issue is not per se improper." *Hangarter*, 373 F.3d at 1016 (citations omitted); *see also* Fed. R. Evid. 704(a) ("An opinion is not objectionable just because it embraces an ultimate issue.").

Accordingly, Abaxis' request to exclude Dr. Williams' testimony based on paragraphs 157-160 and 182-187 of his opening invalidity report (Rodriguez Decl. Ex. 3) must be rejected.

### B. Dr. Williams' Opinions Regarding the Lack of Evidentiary Support for Abaxis' Commercial Success Argument Are Proper

In his report dated April 13, 2012, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. A at ¶ 287. Apparently, Abaxis intends to rely on Dr. Carpenter's testimony to argue that Abaxis' process and beads sold by Abaxis are evidence of commercial success, one of the secondary indicia of non-obviousness.

While commercial success "may have relevancy" to the overall obviousness determination, "a nexus must exist between the commercial success and the claimed invention." *Tokai Corp. v. Easton Enters., Inc.*, 632 F.3d 1358, 1369 (Fed. Cir. 2011) (citing *Graham v. John Deere Co.*, 383

1  U.S. 1, 18 (1966); *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311–12 (Fed. Cir. 2006)

2  ("Evidence of commercial success ... is only significant if there is a nexus between the claimed

3  invention and the commercial success.")). In his *rebuttal* expert report, Dr. Williams pointed out

4  the lack of evidence establishing a nexus between the claimed invention and the alleged

5  commercial success. *See* Rodriguez Decl. Ex. 6 at ¶¶ 60-78.

6  Dr. Williams does not intend to opine on the ultimate question of commercial success.

7  However, he is entitled to rely on the evidence in the record (or the lack thereof) to offer his

8  opinion that based on his review of the record and his knowledge, training, and technical expertise,

9  he is unable to attribute Abaxis' alleged "commercial success" to the patented invention.

10  Accordingly, Abaxis' request to exclude Dr. Williams' testimony based on paragraphs

11  ¶¶ 60-78 of his rebuttal report regarding secondary considerations of obviousness (Rodriguez

12  Decl. Ex. 6) must be rejected.

### C. Dr. Williams' Opinions Regarding the Lack of Evidentiary Support for Abaxis' Copying Argument Are Proper

In his report, 

Cepheid is entitled to proffer Dr. Williams' testimony rebutting Dr. Carpenter's conclusory opinion. While Dr. Williams has no intention to offer an opinion on the ultimate question of copying, he is entitled to rely on the evidence in the record—including deposition testimony—to offer his assessment of Abaxis' copying claim based on his knowledge, training and technical expertise.

Abaxis' argument that Dr. Williams "is simply interpreting the testimony as a layperson would" has no basis. Part of the copying analysis involves comparing the technologies of the

parties, understanding how Cepheid's process was developed, and assessing which parts of the parties' technologies were well known in the art. This is not a task for a layperson.

Accordingly, Abaxis' request to exclude Dr. Williams' testimony based on paragraphs ¶¶ 80-88 of his rebuttal report regarding secondary considerations of obviousness (Rodriguez Decl. Ex. 6) must be rejected.

## V. CONCLUSION

For the foregoing reasons, Abaxis' motion to exclude expert testimony must be denied.

Dated: May 31, 2012　　　　　　　　　　　FISH & RICHARDSON P.C.


By:　*/s/ Steven C. Carlson*
　　　　Steven C. Carlson

Attorneys for Defendant and Counter-Claimant
CEPHEID