# EXHIBIT A

1  COOLEY LLP
   RICARDO RODRIGUEZ (No. 173003) (rr@cooley.com)
2  BRYAN J. BOYLE (No. 253725) (bryan.boyle@cooley.com)
   LAM K. NGUYEN (No. 265285) (lnguyen@cooley.com)
3  Five Palo Alto Square
   3000 El Camino Real
4  Palo Alto, CA  94306-2155
   Tel:    (650) 843-5000
5  Fax:    (650) 857-0663

6  Attorneys for Plaintiff-Counterdefendant
   ABAXIS, INC.
7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10                 SAN JOSE DIVISION

11

12  ABAXIS, INC.,                          Case No.  C 10-2840 LHK (HRL)

13                Plaintiff-               **ABAXIS' OPPOSITION TO CEPHEID'S
                  Counterdefendant,        MOTION FOR PARTIAL SUMMARY
14                                          JUDGMENT RE INVALIDITY OF THE '563
          v.                                AND '684 PATENTS UNDER 35 U.S.C. §
15                                          102(B)**
    CEPHEID,
16                                          **[PUBLIC VERSION]**
                  Defendant-
17                Counterclaimant.
                                            HEARING DATE:  JUNE 28, 2012
18                                          TIME: 1:30 P.M.
                                            COURTROOM: 8, 4th Floor
19                                          JUDGE:  HON. LUCY H. KOH
20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

**Page(s)**

I.      INTRODUCTION ................................................................................................. 1

II.     LEGAL STANDARD ........................................................................................... 1

III.    DIRECT EVIDENCE ON THE PRIORITY DATE PRECLUDES SUMMARY
        JUDGMENT ........................................................................................................ 2

IV.     NUMEROUS FACTUAL DISPUTES PRECLUDE SUMMARY JUDGMENT ............ 4

        A.      Cepheid's Motion Hinges on Disputed Factual Issues Regarding Priority
                Date ......................................................................................................... 4

                1.      Cepheid's enablement argument is flawed ................................... 4

                2.      Additional factual issues exist regarding the priority date based on
                        evidence also ignored by Cepheid............................................... 7

        B.      Factual Issues Regarding the Teramecs Agreement and the ██████████
                Also Preclude Summary Judgment ............................................................ 10

V.      CEPHEID SHOULD NOT BE PERMITTED TO IMPROPERLY RAISE
        ARGUMENTS IN REPLY THAT IT SHOULD HAVE RAISED IN ITS
        OPENING BRIEF ................................................................................................ 15

VI.     CONCLUSION .................................................................................................... 16

Cooley LLP
Attorneys At Law
Palo Alto

i.

Abaxis' Opp. to Cepheid's Mot. for
Partial Summary Judgment
Case No. C 10-2840 LHK

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Amgen, Inc. v. Hoechst Marion Roussel, Inc.*,
   126 F. Supp. 2d 69 (D. Mass. 2001), *aff'd in part, vacated in part, remanded sub nom*,
   314 F.3d 1313 (Fed. Cir. 2003) .................................................................................. 7

*Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*,
   670 F.3d 1171 (Fed. Cir. 2012) ................................................................................. 2

*Bilstad v. Wakalopulos*,
   386 F.3d 1116 (Fed. Cir. 2004) ............................................................................. 7, 8

*Coos County Bd. of County Comm'rs v. Kempthorne*,
   531 F.3d 792 (9th Cir. 2008) .................................................................................. 15

*Cybersource Corp. v. Retail Decisions, Inc.*,
   No. C04-03268MHP, 2008 WL 4543045 (N.D. Cal. Oct. 10, 2008) ...................... 2

*Dimension One Spas, Inc. v. Coverplay, Inc.*,
   Civ. No. 03cv1099-L(CAB), 2008 WL 4165034 (S.D. Cal. Sept. 5, 2008) ......... 15

*Eberle v. Anaheim*,
   901 F.2d 814 (9th Cir. 1990) .................................................................................. 15

*Eiselstein v. Frank*,
   52 F.3d 1035 (Fed. Cir. 1995) .................................................................................. 8

*F.B.T. Prods., LLC v. Aftermath Records*,
   621 F.3d 958 (9th Cir. 2010), *cert. denied*, 131 S. Ct. 1677 (2011), *reh'g denied*, 131
   S. Ct. 2482 (2011) .................................................................................................. 11

*Genentech, Inc. v. Trs. of the Univ. of Pa.*,
   No. 10-cv-02037-LHK, slip op. (N.D. Cal. May 14, 2012) ..................................... 2

*Gould v. Quigg*,
   822 F.2d 1074 (Fed. Cir. 1987) ................................................................................ 7

*Invitrogen Corp. v. Biocrest Mfg., L.P.*,
   424 F.3d 1374 (Fed. Cir. 2005) .............................................................................. 14

*Manville Sales Corp. v. Paramount Sys., Inc.*,
   917 F.2d 544 (Fed. Cir. 1990) .................................................................................. 2

*Moldflow Corp. v. Simcon, Inc.*,
  296 F. Supp. 2d 34 (D. Mass. 2003) .................................. 11

*Motionless Keyboard Co. v. Microsoft Corp.*,
  486 F.3d 1376 (Fed. Cir. 2007)..................................... 14

*MSM Investments Co. v. Carolwood Corp.*,
  70 F. Supp. 2d 1044 (N.D. Cal. 1999) ............................... 8

*N. Telecom, Inc. v. Datapoint Corp.*,
  908 F.2d 931 (Fed. Cir. 1990)........................................ 1

*Protech Diamond Tools, Inc. v. Liao*,
  No. C 08-3684 ...................................................... 16

*Regents of Univ. of California v. Dako N. Am., Inc.*,
  No. C-05-03955-MHP, 2009 WL 1083446 (N.D. Cal. Apr. 22, 2009) ................... 2

*Robbins Co. v. Lawrence Mfg. Co.*,
  482 F.2d 426 (9th Cir. 1973)........................................ 12

*Rodime PLC v. Seagate Tech., Inc.*,
  174 F.3d 1294 (Fed. Cir. 1999)..................................... 1, 2

*Rotec Indus., Inc., v. Mitsubishi Corp.*,
  215 F.3d 1246 (Fed. Cir. 2000) ...................................... 10

*Rudwall v. Blackrock, Inc.*,
  No. C09-5176 TEH, 2011 WL 767965 (N.D. Cal. Feb. 28, 2011) ........................ 15

*Sanofi-Aventis Deutschland GMBH v. Genentech, Inc.*,
  Nos. C08-4909SI, C 09-4919 SI, 2011 WL 839411 (N.D. Cal. Mar. 7, 2011), *aff'd*,
  *Sanofi-Aventis Deutschland GMBH v. Genentech, Inc.*, No. 2011-1397, 2012 WL
  1178059 (Fed. Cir. Mar. 22, 2012) .................................. 2

*Semitool, Inc. v. Dynamic Micro Sys. Semiconductor Equip. GmbH*,
  No. 3:01-CV-01391-WHA, 2002 WL 34213426 (N.D. Cal. Sept. 5, 2002) .................. 15

*Thompson v. Comm'n of Internal Revenue*,
  631 F.2d 642 (9th Cir. 1980)........................................ 15

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*,
  617 F.3d 1296 (Fed. Cir. 2010), *reh'g denied* (Oct. 29, 2010), *reh'g and reh'g en banc
  denied* (Nov. 30, 2010)............................................. 2

Cooley LLP
Attorneys At Law
Palo Alto

ii.

ABAXIS' OPP. TO CEPHEID'S MOT. FOR
PARTIAL SUMMARY JUDGMENT
CASE NO. C 10-2840 LHK

*Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*,
    200 F.3d 795 (Fed. Cir. 1999) ................................................................. 2

*Wertheim, In re*
    541 F.2d 257 (C.C.P.A. 1976) ................................................................. 8

**STATUTES**

35 U.S.C. § 102(b) .............................................................................. 3, 12

Cal. Civ. Code § 1638 ............................................................................ 11

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 56 .......................................................... 1

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

iii.

ABAXIS' OPP. TO CEPHEID'S MOT. FOR
PARTIAL SUMMARY JUDGMENT
CASE NO. C 10-2840 LHK

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD: PLEASE TAKE NOTICE that on June 28, 2012, at 1:30 P.M. or as soon thereafter as the matter may be heard before the Honorable Lucy H. Koh of the above-entitled Court, located at 280 South First Street, San Jose, California, 95113, Plaintiff Abaxis will and hereby does move the Court, pursuant to Federal Rule of Civil Procedure 56, to deny Cepheid's Motion for Partial Summary Judgment re Invalidity of the '563 and '684 Patents Under 35 U.S.C. § 102(b) ("Mot.")[1].

This opposition is based on this Notice of Motion and Motion, the accompanying points and authorities, the declaration and exhibits in support of hereof, and any other arguments and evidence as may be brought before the Court prior to or at the hearing of this motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Contrary to this Court's guidance, Cepheid's motion is rife with issues of fact that cannot be resolved on summary judgment.  Cepheid not only asks this Court to make inferences in its favor as to the evidence it does cite, but it also simply ignores contrary evidence, even evidence coming from the very same witnesses on which it relies.  Indeed, the only evidence directly bearing on the question of priority date is both contrary to Cepheid's position and completely absent from Cepheid's motion.  Cepheid's motion should be denied.

**II.   LEGAL STANDARD**

"While invalidity is a question of law, the party asserting invalidity must by clear and convincing evidence establish facts supporting a conclusion of invalidity, and asserted inferences of fact must similarly be supported to meet this standard." *N. Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 935 (Fed. Cir. 1990).  Summary judgment is appropriate only if there are no genuine issues of material fact. *Rodime PLC v. Seagate Tech., Inc.*, 174 F.3d 1294, 1301 (Fed. Cir. 1999) (quoting Fed. R. Civ. P. 56(c)).  In evaluating the evidence, the court must construe it

---

[1] United States Patent Nos. 5,776,563 ("'563 patent") and 6,251,684 ("'684 patent") are attached as Exhibits H and I to the Declaration of Steven C. Carlson in Support of Cepheid's Motion for Partial Summary Judgment re Invalidity of the '563 and '684 Patents Under 35 U.S.C. § 102(b) ("Carlson Decl."), D.I. 171.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

1.

ABAXIS' OPP. TO CEPHEID'S MOT. FOR
PARTIAL SUMMARY JUDGMENT
CASE NO. C 10-2840 LHK

in the light most favorable to the non-moving party.  *Id.*  Attorney argument unsupported by evidence is insufficient to meet a burden on summary judgment.  *See Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 812 (Fed. Cir. 1999) (in vacating grant of summary judgment, noting: "The truth of a disputed material fact can not be established on attorney statement alone…. [Movant] did not meet its initial burden of coming forward with evidence to establish the factual premise and support summary judgment based on [non-infringement] issue.").  The issues Cepheid presents here relate to the written description and enablement requirements of Section 112, as well as the on-sale and public use bar of Section 102.  Enablement is an issue of law, with underlying questions of fact.  *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1305 (Fed. Cir. 2010), *reh'g denied* (Oct. 29, 2010), *reh'g and reh'g en banc denied* (Nov. 30, 2010).  Written description is an issue of fact.  *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, 670 F.3d 1171, 1188 (Fed. Cir. 2012).  Accordingly, courts have denied summary judgment on the issues of written description and enablement based on disputed factual issues.  *Genentech, Inc. v. Trs. of the Univ. of Pa.*, No. 10-cv-02037-LHK, slip op. at 22-25 (N.D. Cal. May 14, 2012) (written description); *Sanofi-Aventis Deutschland GMBH v. Genentech, Inc.*, Nos. C08-4909SI, C 09-4919 SI, 2011 WL 839411, at *14-21 (N.D. Cal. Mar. 7, 2011), *aff'd, Sanofi-Aventis Deutschland GMBH v. Genentech, Inc.*, No. 2011-1397, 2012 WL 1178059 (Fed. Cir. Mar. 22, 2012); *Regents of Univ. of California v. Dako N. Am., Inc.*, No. C-05-03955-MHP, 2009 WL 1083446, at *8-18 (N.D. Cal. Apr. 22, 2009) (written description and enablement); *Cybersource Corp. v. Retail Decisions, Inc.*, No. C04-03268MHP, 2008 WL 4543045, at *3-4 (N.D. Cal. Oct. 10, 2008) (enablement).  The on-sale and public use restrictions of Section 102 are similarly issues of law with underlying facts.  *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 549 (Fed. Cir. 1990).  As shown below, here numerous factual issues compel the denial of Cepheid's motion.

## III.   DIRECT EVIDENCE ON THE PRIORITY DATE PRECLUDES SUMMARY JUDGMENT

As Cepheid concedes, its motion is dependent on a finding by this Court that, as a matter of law and with no genuine issues of fact, the asserted claims of the '563 and '684 patents are not entitled to rely on the filing date of the originally filed application.  Cepheid identifies no

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

2.

ABAXIS' OPP. TO CEPHEID'S MOT. FOR
PARTIAL SUMMARY JUDGMENT
CASE NO. C 10-2840 LHK

1    evidence that directly addresses this issue, and it has no opinion from its expert on the issues of

2    enablement or written description.  Rather, as fully discussed in Section IV.A below, Cepheid

3    instead asks this Court to make numerous improper inferences in its favor from evidence that is

4    related to the issue of priority date, but does not address it directly.

5            Remarkably, while relying on a finding of an inability to rely on the original filing date,

6    Cepheid knowingly ignores the evidence in the case that does directly address this issue.  Abaxis'

7    expert, Dr. John Carpenter, provides a specific opinion on this issue and concludes that the

8    original application does support the asserted claims of the '563 and '684 patents.  (Declaration of

9    John F. Carpenter, Ph.D., in Support of Abaxis' Opposition to Cepheid's Motion for Partial

10   Summary Judgment re Invalidity of the '563 and '684 Patents Under 35 U.S.C. § 102(b)

11   ("Carpenter Decl."), ¶ 2; *see also* Declaration of Ricardo Rodriguez in Support of Abaxis'

12   Opposition to Cepheid's Motion for Partial Summary Judgment re Invalidity of the '563 and '684

13   Patents Under 35 U.S.C. § 102(b) ("Rodriguez Decl."), Ex. 16 at 33-35.)  In doing so, Dr.

14   Carpenter identifies a portion of the specification that specifically contemplates the use of bead

15   sizes as dictated by the particular needs of the user: "The exact volume of the drops will depend

16   upon the particular application."  ('732 patent[2], col. 6:3-4.)  Consistent with this lack of a

17   limitation to a particular bead size, many of the claims in the patents issuing from this original

18   application have no restriction at all on bead size.  (*See, e.g.,* '732 patent, claims 1, 5, and 6; '597

19   patent[3], claims 1, 2, 4, 6-16, and 18-27.)  Cepheid questioned Dr. Carpenter about this opinion

20   during deposition.    (Rodriguez Decl., Ex. 2 at 46:6-48:22.)    Cepheid provides no

21   acknowledgement of this direct and contrary evidence.  Indeed, Cepheid's own expert did not

22   even provide an opinion to the contrary on the issue of priority date.

23           Cepheid also ignores the prosecution history of the '563 patent.  In adding the claims of

24   the '563 patent, Abaxis identified to the Patent Office the support for those claims in the

25   specification.  (*Id.*, Ex. 3 at ABAX 019105.)  That support, which the Patent Office did not

26   dispute, did not include any of the new experiments added to the CIP application.  (*Id.*)  This is

27   _____

28   [2] Carlson Decl., Ex. A, United States Patent No. 5,413,732 ("'732 patent").
     [3] Rodriguez Decl., Ex. 1, United States Patent No. 5,624,597 ("'597 patent").

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

3.

ABAXIS' OPP. TO CEPHEID'S MOT. FOR
PARTIAL SUMMARY JUDGMENT
CASE NO. C 10-2840 LHK

1   further direct evidence that the '563 patent claims are supported by the original application.  It is

2   also consistent with the real purpose of the CIP: to support claims relating to pharmaceutical uses.

3   A patent not at issue in this case has such claims that relate to this new matter.  (*See* Rodriguez

4   Decl., Ex. 4 at ABAX 018221-22.)  This direct evidence supporting reliance on the original filing

5   date, alone, precludes granting of Cepheid's motion.  Not only has Cepheid failed to identify any

6   direct evidence to the contrary (or even address the foregoing evidence), but the above evidence

7   must also be viewed in the light most favorable to Abaxis.  This evidence is clearly enough to

8   support a finding that the '563 patent claims are supported by the original application.

9   **IV.    NUMEROUS FACTUAL DISPUTES PRECLUDE SUMMARY JUDGMENT**

10      **A.    Cepheid's Motion Hinges on Disputed Factual Issues Regarding Priority
              Date[4]**

11

12          **1.    Cepheid's enablement argument is flawed**

13          In support of its argument that the '563 and '684 patent claims are not enabled, Cepheid

14   relies solely on the experiments and arguments that Abaxis made to the European Patent Office

15   regarding a European counterpart of the patents in suit.  (Mot. at 21-23.)  However, Cepheid fails

16   to point out, or in any way address, the fact that those proceedings and experiments were with

17   respect to claims that required a 3% CV for the freeze-dried beads.  (*Id.*; *see also* Carlson Decl.,

18   Ex. BB at ABAX 023259-62.)  As was pointed out to Cepheid by Abaxis' expert, *none of the*

19   *'563 patent claims at issue in this case have such a 3% limitation*.  (Rodriguez Decl., Ex. 2 at

20   52:6-15.)  Despite knowing of this problem with its argument, Cepheid again improperly ignores

21   it.

22          Given the difference in the claims, Cepheid cannot prevail on summary judgment unless it

23   receives an inference in its favor that despite the difference, the European Opposition proceedings

24   nonetheless are directly applicable to the '563 patent claims at issue here and compel a finding of

---

25   [4] Cepheid makes no distinction between the claims reciting a 3.5mm or 5mm upper limit, rather

26   than a 10mm upper limit.  Given the evidence identified in this section, an additional factual issue
     for a jury to resolve is whether these sets of claims should be treated differently.  Cepheid's own
     arguments regarding the alleged significance of the difference between a 2.3 mm size and a

27   10mm size further demonstrate that the size differences recited in the claims require them to be
     considered individually.

28

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

4.

ABAXIS' OPP. TO CEPHEID'S MOT. FOR
PARTIAL SUMMARY JUDGMENT
CASE NO. C 10-2840 LHK

no enablement as a matter of law.  But Cepheid has provided no evidence on which such an inference could be made, nor can it.  The issues before the European Patent Office were very specific to the 3% limitation, which is absent in the present case with respect to the '563 patent claims.  (*See* Rodriguez Decl., Ex. 5 at ABAX 023332-33, ABAX 023342.)  In any event, on summary judgment such an inference would be improper, as the evidence must be viewed in the light most favorable to Abaxis.

Furthermore, the evidence of record contradicts Cepheid's position as to both the '563 and '684 patent claims.  Cepheid ignores the testimony of its own expert that is relevant to the priority date question.  Cepheid's argument of non-enablement does not focus on the differences between the original application and the CIP; it is essentially an argument of non-enablement with respect to either disclosure.  But Cepheid chose not to present any expert opinion of lack of enablement (or written description) based on the original application.  And its expert, while pointing out that the CIP application added new experiments, conceded that there were no new techniques in those experiments that were not previously disclosed in the original application:

> Q.  Now, paragraph 67 talks about Examples 5 and 6 that were added to the 1993 specification; is that correct?
> A.  Correct.
> Q.  How were -- and it talks about larger dispense volumes in those examples; is that correct?
> A.  Correct.
> Q.  How were those larger dispense volumes achieved?
> A.  I don't know.
> Q.  Were there any changes made in the general process that was described in the original specification in order to achieve those larger dispense volumes?
> MS. ZHENG:  Objection.  Vague.
> THE WITNESS:  I don't know.
> * * *
> Q.  And does the 1993 specification have any examples relating to 10-millimeter beads?  Let me change the question.  Does the 1993 specification have any examples resulting in 10-millimeter beads?
> MS. ZHENG:  Objection.  Document speaks for itself.
> THE WITNESS:  I don't think it disclosed an [sic] examples, no.
> BY MR. RODRIGUEZ:  Q.  Does the 1993 specification provide any changes to the general methods that were disclosed in the 1991 specification in order to get beads with diameters of up to 10 millimeters?
> A.  I don't believe it did.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

1    (Rodriguez Decl., Ex. 6 at 40:6-41:19.)  Accordingly, Cepheid's own expert's testimony supports

2    the conclusion that the '563 and '684 patent claims are supported to the same extent in the

3    original application as in the CIP application.

4        Cepheid's own expert also takes a position inconsistent with Cepheid's argument of non-

5    enablement.  In asserting that the claims of the '563 and '684 patents are invalid over the prior

6    art, Cepheid's expert asserts that several prior art references are enabling.  (*See, e.g.*, Rodriguez

7    Decl., Ex. 7 ¶¶ 109, 140, 177.)  It is inconsistent for Cepheid to argue that the prior art—with less

8    disclosure than the patents in suit—somehow enables practicing of the '563 and '684 patent

9    claims, but somehow a person of ordinary skill in the art, with knowledge of the teachings of the

10    original specification in addition to the prior art, cannot make the claimed inventions without

11    undue experimentation.  This inconsistency plainly presents a factual issue that the jury must

12    decide.

13        Cepheid also ignores testimony that Cepheid itself elicited from IVEK, the company that

14    makes the pump used in the examples in the patents in suit.  The IVEK representatives testified

15    that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

16 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

17 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

18 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

19    (Rodriguez Decl., Ex. 8 at 14:14-24.)

20

21    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.*, Ex. 9 at 35:11-12.)  This

evidence also supports enablement of sizes exceeding those of the particular examples in the

22 patent, and is consistent with the increase in the '563 and '684 patent claim language of the upper

23 range of the bead size, while keeping the lower end the same as in the remaining patents, at

24 1.5mm.  (*See* '732 patent, claim 2; '597 patent, claims 3, 17; '563 patent, claims 1, 3; '684 patent,

25 claim 1.)

26        Cepheid also omits any mention of Abaxis' own internal work relating to larger beads.

27 Within six months of the original filing date, an Abaxis scientist ▮▮▮▮▮▮▮▮▮▮▮▮

28

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

6.

ABAXIS' OPP. TO CEPHEID'S MOT. FOR
PARTIAL SUMMARY JUDGMENT
CASE NO. C 10-2840 LHK

████████████████████████████████ (Rodriguez Decl., Ex. 10 at ABAX 009806-10.)  This

translates into a bead size of ███████████.[5]  Although this occurred after the original filing date,

when viewed in the light most favorable to Abaxis, it remains supportive of enablement as of the

filing date, particularly as to the claims reciting 3.5mm beads, but also as to the 5mm and 10mm

limitation, since no special additional techniques were used.  *See Gould v. Quigg*, 822 F.2d 1074,

1078 (Fed. Cir. 1987) (explaining that an expert may rely upon post-filing publications that apply

known techniques as of the filing date to show that the specification was enabling); *Amgen, Inc. v.*

*Hoechst Marion Roussel, Inc.*, 126 F. Supp. 2d 69, 162 (D. Mass. 2001), *aff'd in part, vacated in*

*part, remanded sub nom*, 314 F.3d 1313 (Fed. Cir. 2003).

       2.     **Additional factual issues exist regarding the priority date based on evidence also ignored by Cepheid**

In arguing written description, Cepheid relies substantially on the mere differences

between the original and CIP application.  However, the case law is clear that Section 112 does

not limit claims to what is disclosed in the specification, and the mere existence of differences is

insufficient to deprive claims of an earlier priority date.  *Bilstad v. Wakalopulos*, 386 F.3d 1116

(Fed. Cir. 2004).  In *Bilstad*, the Federal Circuit reviewed prior case law and noted that "this court

has continued to apply the rule that disclosure of a species may be sufficient written description

support for a later claimed genus including that species."  *Id*. at 1124.  The court also noted some

exceptions to the general rule, none of which apply here.  One exception was based on

unpredictability in the art that precluded persons of skill from knowing the performance of other

species.  Here, Cepheid had identified no argument or evidence of such unpredictability.  In fact,

the evidence is to the contrary.  As explained above, Cepheid's own expert also testified contrary

to any suggestion of unpredictability.  When asked about the procedures used in the new

experiments added in the CIP—including one that made beads of 3.37 mm in size—he said that

no new techniques were used. (Rodriguez Decl., Ex. 6 at 40:2-41:19.)  Moreover, Abaxis' own

---

[5] The relation between volume and diameter is represented by the equation $V = \pi d^3/6$ where "V"
is the volume of the sphere and "d" is the diameter of the sphere.  (Rodriguez Decl., Ex. 7 ¶ 64.)
██████████████ the diameter of a sphere is approximately ██████████ ████████ ██ ██
██████████████.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

7.

ABAXIS' OPP. TO CEPHEID'S MOT. FOR
PARTIAL SUMMARY JUDGMENT
CASE NO. C 10-2840 LHK

1   experiments in which it made beads ██████████ also supports predictability, not

2   unpredictability.   The same is true of the testimony from the IVEK pump representative, who

3   stated that ████████████████████.   All of this evidence confirms the

4   inapplicability of the unpredictability exception.

5          The other exception to the general rule is when the patent makes statements demonstrating

6   that the invention is limited: "Instead of suggesting that the 589 patent [the parent] encompasses

7   additional shapes, the specification specifically distinguishes the prior art as inferior and touts the

8   advantages of the conical shape of the 589 cup. Such statements make clear that the 589 patent

9   discloses *only* conical shaped cups and nothing broader." *Bilstad*, 386 F.3d at 1125 (internal

10  quotations and citation omitted).  Here, again, the evidence is to the contrary.  The original patent

11  specification specifically states that the size of the beads will be dependent on the particular

12  intended use. ('732 patent, col. 6:3-4; *compare* '563 patent, col. 6:49-51.)

13         The case law cited by Cepheid does not compel a different conclusion.  In *Eiselstein*, the

14  Federal Circuit did not identify any statements, such as the ones in the patents here, indicating

15  that the inventors contemplated bead sizes beyond those identified in the original application.

16  *Eiselstein v. Frank*, 52 F.3d 1035, 1039-40 (Fed. Cir. 1995).  In *In re Wertheim*, 541 F.2d 257,

17  263-65 (C.C.P.A. 1976), the court noted the lack of evidence on the question of written

18  description, while here the evidence shows that the same techniques disclosed in the patent were

19  used to make beads ████████.  In *MSM Investments Co. v. Carolwood Corp.*, 70 F. Supp.

20  2d 1044, 1056 (N.D. Cal. 1999), the court found that the specification simply contained no

21  information regarding what amount of drug was beneficial.  Contrary to Cepheid's assertion, the

22  court did not use the specification's identification of 20 grams of MSM per kilogram to contrast it

23  to the claims' recitation of 100 milligrams.  *Id*.  The description in the specification of the 20

24  grams/kg was with respect to rats, and indicated only a lack of adverse reaction, rather than any

25  beneficial effect. *Id.* at 1047.

26         The minimal evidence that Cepheid does cite, is selectively chosen to ignore contrary

27  evidence.  For example, Cepheid's motion cites the testimony of Richard Leute to attempt to

28  suggest that larger beads could not be made.  (Mot. at 21:1-5.)  But Cepheid ignores where the

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

8.

ABAXIS' OPP. TO CEPHEID'S MOT. FOR
PARTIAL SUMMARY JUDGMENT
CASE NO. C 10-2840 LHK

1   very same witness, Dr. Leute, actually says that he believes Abaxis could have made 10mm

2   beads:

3

4   ███████████████████████████████████████████████████

5

6   ███████████████████████████████████████████████████

7   (Rodriguez Decl., Ex. 11 at 108:6-15.)  Cepheid did not even bother to ask about 3.5mm beads,

8   but given that Dr. Leute believed that Abaxis could have obtained 10mm beads, a jury could

9   properly infer that they could have obtained 3.5mm beads as well.  When Cepheid did ask one of

10  the inventors about making larger beads, she affirmed that they were able to and had made ███

11  ███ [6]  (See Rodriguez Decl., Ex. 17 at 194:22-195:9.)

12          Cepheid also contends that the term "bead" somehow lacks adequate description in the

13  original application.  Cepheid cites no evidence whatsoever on the question of whether a person

14  of ordinary skill would consider the original application to disclose a "bead."  Cepheid also

15  conveniently ignores the extensive documentation at Abaxis, dated prior to the original filing

16  date, that uses the word "bead" in describing the beads made by Abaxis using the process

17  disclosed in the original patent specification.  (See, e.g., Rodriguez Decl., Ex. 12 at ABAX

18  000208 ████████████████████████████████████████████

19  ████████████████████████████████████████████████████

20  ███ ); id. at ABAX 000902 ████████████████████████████

21  ███████ ); id. at ABAX 001845 ███████████████████████

22  ████████████████████████████████████ id. at ABAX 000019; id. at ABAX

23  002357; id. at ABAX 002593; id. at ABAX 002799; id. at ABAX 003045; id. at ABAX 003772;

24  id. at ABAX 020761; id. at ABAX 020806; id. at ABAX 020867; id. at ABAX 021015; id. at

25

26

27  ─────────────────

28  [6] Using the same calculation as done in footnote 5, supra, the diameter of a sphere with a volume
    of ███████████ .

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

9.

ABAXIS' OPP. TO CEPHEID'S MOT. FOR
PARTIAL SUMMARY JUDGMENT
CASE NO. C 10-2840 LHK

ABAX 021071; *id.* at ABAX 021111; *id.* at ABAX 021139; *id.* at ABAX 021370; *id.* at ABAX 021464; *id.* at ABAX 101277; *id.* at ABAX 123289.)[7]

When viewed in the light most favorable to Abaxis, this extensive use of the word "bead" certainly supports a finding that persons of ordinary skill in the art would consider the original application to support the use of the term.

**B.      Factual Issues Regarding the Teramecs Agreement and the ▮▮▮▮▮ Also Preclude Summary Judgment**

While Cepheid's motion can be denied solely on the Section 112 issue, factual issues also preclude granting of the motion based on either the Teramecs agreement or the ▮▮▮▮▮, even if the '563 and '684 patent claims at issue are not entitled to the original filing date.

As Cepheid concedes, the Abaxis product ▮▮▮▮▮▮▮▮▮ as of the time of the Abaxis initial public offering.  (*See* Rodriguez Decl., Ex. 11 at 68:21-69:11; *id.*, Ex. 13 at at 143:5-16; *id.*, Ex. 14 at 365:21-366:23.)  Abaxis' IPO was the first ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  (*See id.,* Ex. 11 at 132:4-9; *id.*, Ex. 14 at 366:8-23.)  Because Abaxis' product was ▮▮▮▮▮▮, this case presents a factual scenario that is not typical, and that raises factual issues that must be decided by the jury.

With respect to the Teramecs agreements, Cepheid's attempt to align the patent claims with the subject matter of the Teramecs agreements misleadingly fails to point out that the testimony Cepheid cites has no correlation to anything actually supplied or offered under the Teramecs agreements as of 1991, because nothing was supplied under those agreements until 1996.  (*See* Rodriguez Decl., Ex. 15 at ABAX 203892.)  Accordingly, Cepheid's analysis of the claims for purposes of the Teramecs agreements is entirely theoretical.  Cepheid does not and cannot identify even a single bead meeting the claim limitations that Abaxis "offered" in any way to Teramecs.

Nor is Cepheid able to show that the agreements themselves, even in the absence of any physical beads, qualify as an offer for sale.  To qualify as an offer for sale, an offer must meet the "norms of traditional contractual analysis."  *Rotec Indus., Inc., v. Mitsubishi Corp.*, 215 F.3d

---

[7] Abaxis has cited 20 such documents, but can provide many more at the Court's request.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

10.

ABAXIS' OPP. TO CEPHEID'S MOT. FOR
PARTIAL SUMMARY JUDGMENT
CASE NO. C 10-2840 LHK

1246, 1254-55 (Fed. Cir. 2000).  This includes the price, the goods to be sold, the quantity, time of delivery, and terms of payment.  *Moldflow Corp. v. Simcon, Inc.*, 296 F. Supp. 2d 34, 41-44 (D. Mass. 2003).  Here, the contracts fail to meet these requirements.  Most significantly, the "goods to be sold" requirement presents a disputed issue of fact for the jury to resolve.

Unlike the case law identified by Cepheid, the agreements here nowhere impose any requirement whatsoever on Abaxis to supply the patented beads of the invention to Teramecs.  As testified to by Dr. Ostoich of Abaxis and as confirmed by a reading of the contracts, they fail to specify or require any particular type of reagent:



(Rodriguez Decl., Ex. 14 at 443:3-9; *see also id.* at 337:6-12, 338:3-14.)   Cepheid's brief repeatedly refers to the "dried reagent beads" to be sold under the agreements, but the fact of the matter is that the agreements nowhere refer to the reagents this way.  Rather, they just use the term "reagent."[8]  Thus, the contracts leave open the possibility to use a reagent of any form, whether powder, liquid, or other form.  Accordingly, the issue here is not whether the invention itself was "ready for patenting," but whether contracts cannot constitute an offer to sell *the invention*, because Abaxis was not obligated in any way to supply the claimed beads.

Because the Abaxis rotor was still in development, the possibility of using a different reagent is not illusory.  As Gary Stroy testified, fundamental aspects of the rotor design were called into question:

---

[8]  Accordingly, Cepheid resorts to an SEC document to try to argue that the agreements are directed to dried reagent beads.  (Mot. at 9, n.5.)  But as Cepheid knows, the SEC filing is referring to a prototype device that was "replaced by a completely different design." (Rodriguez Decl., Ex. 14 at 339:14-20.)  In any event, such an SEC filing cannot change the plain language of the agreements, which clearly do not require the use of the patented beads.  *See* Cal. Civ. Code § 1638 ("The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity."); *F.B.T. Prods., LLC v. Aftermath Records*, 621 F.3d 958, 963 (9th Cir. 2010), *cert. denied*, 131 S. Ct. 1677 (2011), *reh'g denied*, 131 S. Ct. 2482 (2011) ("Parol evidence is properly admitted to construe a contract only when its language is ambiguous").

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

11.

ABAXIS' OPP. TO CEPHEID'S MOT. FOR
PARTIAL SUMMARY JUDGMENT
CASE NO. C 10-2840 LHK

1

2

3

(Rodriguez Decl., Ex. 13 at 143:5-144:19.)  These development changes were significant enough

4

that they resulted in the departure of the CEO at the time, Richard Leute:

5

6

7

8

(*Id.* at 73:15-74:17.)

9

Accordingly, the use of a different form of reagent was certainly possible if the rotor design

10

required it.  Moreover, as testimony elicited by Cepheid demonstrates, Abaxis even had to

11

redesign the analyzer that was referred to in the Teramecs agreements to a "completely different

12

design."  (*Id.*, Ex. 14 at 339:14-20.)  That Abaxis could do this further demonstrates that there

13

was no obligation on Abaxis' part to provide Teramecs with a product in any particular form.

14

Cepheid will no doubt still attempt to argue that because the rotors might have included the

15

patented beads, they still constitute an offer for sale.  However, given the record, this is a question

16

for a jury to decide, along with the factual question of whether the development status of the

17

Abaxis product was such that the "time of delivery" requirement of an offer for sale is met.[9]

18

Even the fundamental question of where the agreement was signed, also presents a factual

19

issue.  *See* 35 U.S.C § 102(b) ("the invention was … in public use or on sale *in this country*, more

20

than one year prior to the date of the application for a patent in the United States" (emphasis

21

added)); *see also Robbins Co. v. Lawrence Mfg. Co.*, 482 F.2d 426, 434 (9th Cir. 1973)

22

("Whether or not such a sale is consummated in a foreign country, we hold that the product is 'on

23

sale' in the United States, within the proscription of the statute, if substantial activity prefatory to

24

a sale occurs in the United States.  An offer for sale, made in this country, is sufficient prefatory

25

activity occurring here, to bring the matter within the statute.").  In another instance of Cepheid

26

27

28

---

[9] Cepheid also misleadingly cites testimony that it argues show that the rotors of the agreement included the beads.  (Mot. at 10-11.)  But this testimony is referring to the fact that eventually, six years later, rotors were sold to Teramecs.  Nothing was provided to Teramecs until then, nor did the agreements require the sale of reagent in dried bead form at any time.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

12.

ABAXIS' OPP. TO CEPHEID'S MOT. FOR
PARTIAL SUMMARY JUDGMENT
CASE NO. C 10-2840 LHK

ignoring directly contrary evidence, it cites only a small subset of the testimony that it elicited from witnesses on this issue.  The actual signatory to the agreements, Richard Leute, reviewed his personal notebooks and ███████████████████████████████████:

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

(Rodriguez Decl., Ex. 11 at 133:22-135:14; *see also id.* at 51:18-52:22.)  Gary Stroy, similarly, ████████████████████████ and could only speculate on ████████████████:

███████████████████████████████████████████████████

███████████████████████████████████████████████████

 (*Id.*, Ex. 13 at 156:3-18.)  And Dr. Ostoich confirmed that his understanding of where the agreements were signed was based on supposition, not actual knowledge:

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

(*Id.*, Ex. 14 at 323:12-324:7.)  Cepheid is plainly not entitled to summary judgment even on this basic question of where the agreements actually were signed.

The ████████ also raises issues of fact that cannot be resolved on summary judgment. While Cepheid cites testimony relating to the disclosure of beads and demonstrations during the ████████, Cepheid yet again simply ignores the contrary evidence.  Gary Stroy, an Abaxis founder who participated in the ████████, testified that there were ████████████ ████████████, and that doing so would have been troublesome at best, due to liability issues:

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

13.

ABAXIS' OPP. TO CEPHEID'S MOT. FOR
PARTIAL SUMMARY JUDGMENT
CASE NO. C 10-2840 LHK

1

2

3

4   (Rodriguez Decl., Ex. 13 at 139:12-140:17; *see also id.* at 98:12-21.)  Mr. Stroy also testified that

5   ███████████ would have been ill advised, because the fact that the ████████████

6   ████████ made such real-time demonstrations too risky:

7

8

9

10  (*Id.* at 143:18-144:19.)  Instead, the ████████ focused on descriptions of how the product would

11  likely work.  (*Id.*; *see also id.* at 141:4-21.)  Thus, while Cepheid goes to great lengths to try to

12  show that beads within the claims were made for demonstration purposes, it fails to show as a

13  matter of law that the beads were actually demonstrated on the ████████.  Testimony from Mr.

14  Stroy shows that the ████████ included primarily photographs of the components, and that the

15  rotors themselves were not shown.  (*Id.* at 96:3-97:1.)

16          Cepheid also ignores the nature of the attendees at the ████████.  Here, the ████████

17  ████████ were directed at investors, whom Mr. Stroy characterizes as generally unconcerned with

18  the specifics of the technology.  (Rodriguez Decl., Ex. 13 at 104:21-105:5.)  Further, Mr. Stroy

19  said  that  the  largest  presentation  ████████████████.  (*Id.* at 100:13-18.)

20  Accordingly, substantial factual questions remain regarding whether the ████████ even qualify

21  as a public use.  *See Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1380 (Fed. Cir. 2005)

22  (noting that factors for public use include "the nature of the activity that occurred in public [and]

23  public access to the use"); *see also Motionless Keyboard Co. v. Microsoft Corp.*, 486 F.3d 1376,

24  1385 (Fed. Cir. 2007) (holding that no public use occurred upon disclosure to potential investors).

25          Thus, the ████████ also presents a number of disputed factual issues that preclude

26  summary judgment, such as whether any of the patented beads were actually shown, and to how

27  many people, and if actual beads were transported to each road show event, and whether those

28  beads met the dissolution requirements of the claims.  (*See* Rodriguez Decl., Ex. 13 at 99:25-

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

14.

ABAXIS' OPP. TO CEPHEID'S MOT. FOR
PARTIAL SUMMARY JUDGMENT
CASE NO. C 10-2840 LHK

100:5, 100:13-18, 105:15-18, 146:17-147:7, 147:19-148:2.)

## V. CEPHEID SHOULD NOT BE PERMITTED TO IMPROPERLY RAISE ARGUMENTS IN REPLY THAT IT SHOULD HAVE RAISED IN ITS OPENING BRIEF

As shown above, Cepheid's motion ignores virtually all of the evidence of record in the case that contradicts its position. Cepheid has no excuse for failing to address that evidence, and thereby giving Abaxis an opportunity to respond to Cepheid's arguments. Cepheid's failure to present any arguments to address this evidence is plainly gamesmanship that should not be permitted, and courts have so held. *See, e.g., Eberle v. Anaheim*, 901 F.2d 814, 817-18 (9th Cir. 1990); *Dimension One Spas, Inc. v. Coverplay, Inc.*, Civ. No. 03cv1099-L(CAB), 2008 WL 4165034, at *7 (S.D. Cal. Sept. 5, 2008); *Semitool, Inc. v. Dynamic Micro Sys. Semiconductor Equip. GmbH*, No. 3:01-CV-01391-WHA, 2002 WL 34213426, at *4 (N.D. Cal. Sept. 5, 2002); *Thompson v. Comm'n of Internal Revenue*, 631 F.2d 642, 649 (9th Cir. 1980); *Coos County Bd. of County Comm'rs v. Kempthorne*, 531 F.3d 792, 812 (9th Cir. 2008).

For example, in one case, the moving party moved for summary judgment on the issue of breach of a covenant of good faith and fair dealing, on the ground that it was duplicative of a breach of contract claim. *Rudwall v. Blackrock, Inc.*, No. C09-5176 TEH, 2011 WL 767965, at *11 (N.D. Cal. Feb. 28, 2011). The opposition demonstrated that the claims challenged separate conduct. The movant's attempt to present a new responsive argument was rejected:

> In BlackRock's reply, the company argues that Rudwall has produced no evidence that the reason BlackRock terminated Rudwall was to avoid paying him a bonus. That may be true, but *because this argument was made for the first time in BlackRock's reply, Rudwall was not afforded an opportunity to respond with citations to evidence in the record.* "It is well established in this circuit that the general rule is that appellants cannot raise a new issue for the first time in their reply briefs." *Eberle v. City of Anaheim,* 901 F.2d 814, 818 (9th Cir.1990) (citations, quotations, and alteration omitted). Accordingly, BlackRock's motion for summary judgment as to Rudwall's second claim for relief is DENIED.

*Rudwall*, 2011 WL 767965, at *11 (emphasis added).

Courts have also applied this rule of fairness to improper expansions of points made, but not fully supported, in opening briefs. For example, in a trademark case on a motion to dismiss, the court held:

> Plaintiff also argues that Defendants are precluded from seeking the cancellation of the '788 mark given their prior decision to abandon their Petition to Cancel

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

15.

ABAXIS' OPP. TO CEPHEID'S MOT. FOR
PARTIAL SUMMARY JUDGMENT
CASE NO. C 10-2840 LHK

1

before the Trademark Board. (Mot. at 9.) This issue is not properly before the Court. In its moving papers, Plaintiff failed to cite any authority to support this contention. Yet, in its reply brief, Plaintiff cites, for the first time, a number of cases, in addition to expanding the legal basis of its argument to frame it in terms of estoppel. (Reply at 11.) *As a matter of fairness, the Court does not consider arguments raised for the first time in a reply. See Eberle v. City of Anaheim,* 901 F.2d 814, 818 (9th Cir.1990).

2

3

4

5

*Protech Diamond Tools, Inc. v. Liao,* No. C 08-3684 SBA, 2009 WL 1626587, at *9 (N.D. Cal.

6

June 8, 2009) (emphasis added).

7

Abaxis has used the evidence of record in responding to Cepheid's motion, and has not

8

added any new evidence.  Cepheid was clearly aware of the contrary evidence, and in fact it

9

obtained much of it in the very depositions that it took.  To meet its burden on summary

10

judgment, Cepheid needed to specifically address this contrary evidence, and provide Abaxis with

11

an opportunity to respond to its arguments.  Having failed to do so, Cepheid cannot now prejudice

12

Abaxis by holding its arguments until reply.  Cepheid's motion should be denied.

13

**VI.    CONCLUSION**

14

For the foregoing reasons, Cepheid's motion for partial summary judgment should be

15

denied.

16

17

Dated: May 31, 2012                              COOLEY LLP

18

19

by: _____ /s/
                                                        Ricardo Rodriguez

20

Attorneys for Plaintiff-Counterdefendant Abaxis, Inc.

21

22

1031890/HN

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

16.

ABAXIS' OPP. TO CEPHEID'S MOT. FOR
PARTIAL SUMMARY JUDGMENT
CASE NO. C 10-2840 LHK