*E-FILED: August 17, 2012*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ABAXIS, INC.,<br><br>        Plaintiff,<br>  v.<br><br>CEPHEID,<br><br>        Defendant.<br>_____/ | No. C10-02840 LHK (HRL)<br><br>**ORDER RE DISCOVERY DISPUTE JOINT REPORT #1**<br><br>[Re: Docket No. 111] |

      Plaintiff Abaxis, Inc. (Abaxis) sues defendant Cepheid for alleged infringement of several patents, as well as for alleged breach of a license agreement. The patents-in-suit concern reagent beads that are used in point-of-care diagnostic testing.

      At issue in Discovery Dispute Joint Report (DDJR) #1 is whether Dr. Vincent M. Powers, Cepheid's Vice President of Intellectual Property, should be allowed to access Abaxis' "Highly Confidential–Attorney's Eyes Only" information dated prior to 1995. The matter is deemed suitable for determination without oral argument. CIV. L.R. 7-1(b). Having considered the parties' respective positions, the court concludes that Dr. Powers should not have such access.

      When determining whether in-house counsel should be permitted to access confidential information of its competitor, the court must strike a balance between a party's interest in safeguarding its confidential information and the opposing party's right to have the benefit of

counsel of its choice. See Brown Bag Software v. Symantec Corp., 960 F.2d 1465, 1470 (9th Cir. 1992). In balancing these interests, the court considers the risk of inadvertent disclosure of the confidential information, as well as the potential impairment to the opposing party's case if the requested access to the information is denied. See id.

Access to confidential information cannot be denied, however, solely because of counsel's in-house status. U.S. Steel Corp. v. United States, 730 F.2d 1465, 1468 (Fed. Cir. 1984). Whether an unacceptable opportunity for inadvertent disclosure exists must be determined by examination of the specific facts of each case on a counsel-by-counsel basis. Id. Nonetheless, a request for access might properly be denied where in-house counsel are involved in "competitive decisionmaking," a term that the Federal Circuit has defined as "shorthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." Id. at 1468 n.3. This is the crucial factor because the courts in U.S. Steel and the cases relying upon it were largely concerned with the difficulty "for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so." In re Deutsche Bank Trust Co. Americas, 605 F.3d 1373, 1378 (Fed.Cir.2010); see also Brown Bag Software, 960 F.2d at 1470-72.

As presented to this court, DDJR #1 concerned the application and interpretation of sections 7.1 and 7.3(b) of the stipulated protective order then in effect. (Dkt. No. 23). In sum, those sections provided that (1) a party's use of another party's protected material is limited to the prosecution of, defense of, and attempts to settle this litigation; and (2) a party's in-house counsel may access the other side's highly confidential information, but cannot share that information with anyone involved in competitive decisionmaking. The instant dispute came to a head when Abaxis learned that Cepheid had disclosed some of plaintiff's information to Dr. Powers. Cepheid says that Dr. Powers was given only a "small quantity" of Abaxis documents dated 1993 or earlier. Defendant also says that it stopped providing Dr. Powers with designated materials in August 2011 when Abaxis first raised its concerns. Abaxis contended that limits on

access to confidential information needed to be more precisely described because, in its view, defendant failed to self-police compliance with the protective order's terms. Cepheid argued that the protective order needed no modification and accused Abaxis of attempting to rewrite the terms of that stipulated order after-the-fact. Nevertheless, the parties agreed to the entry of an amended protective order proposed by Abaxis, and this court entered it on the docket. (Dkt. No. 118). That amended order remains in effect.

Most relevant for present purposes, the amended protective order retains the provision that a party's in-house counsel may access the other side's highly confidential information, but cannot disclose that information to anyone involved in competitive decisionmaking. The amended order, however, includes a patent prosecution bar that prevents anyone who accesses technical materials from engaging in the prosecution of patents with claims directed to methods for producing dissolvable lyophilized reagent beads. (Dkt. No. 118, Section 7.5). Additionally, the amended protective order includes a "Decision-Making Bar," that prohibits anyone with access to documents dated 1995 and later from participating in decisions relating to the production, design, or licensing of dissolvable lyophilized reagent beads. (Id., Section 7.6). Both the patent prosecution bar and the decision-making bar remain in effect for up to one year after final termination of this litigation. (Id. Sections 7.5, 7.6).

As noted above, the dispute here is whether Dr. Powers should be permitted to access Abaxis' highly confidential information—and, as a compromise, Cepheid has agreed that any such access (if allowed) will be limited to information dated prior to 1995. Abaxis says that in the years between August 19, 1991 (when the application for the first of the patents-in-suit was filed) and 1995, it was developing technology concerning efficient mass production and manufacturing of reagent beads, as well as technology relating to the incorporation of the beads into Abaxis' products. Plaintiff further asserts that some of that technology is not claimed in the patents-in-suit—e.g., particular dispensing tips, the use of degassing, the development of the chambers for the reagent, the sample chamber in the rotor, the design of rotor channels, manufacture of the rotor, fluidics control within the rotor, and the instrument used with the rotor. Abaxis says that it has spent substantial resources developing its manufacturing

3

1  techniques, and it does not want other companies riding on the coattails of its hard work.  And,
2  in any event, it does not want Dr. Powers to have access to its highly confidential technical[1]
3  information, notwithstanding that his access would be limited to pre-1995 material.

4  The big bone of contention is whether Dr. Powers is involved in "competitive
5  decisionmaking."  There appears to be no serious dispute about Dr. Power's decisionmaking
6  responsibilities.  By defendant's own account, Dr. Powers oversees Cepheid's patent
7  prosecution work.  He also advises the company and participates in decisions concerning
8  product design to avoid third party patents.  He was involved in an attempted design around at
9  issue in this litigation.  And, this court is told that he is also involved in the company's licensing
10 decisions.

11 Arguing that Cepheid and Abaxis are not competitors, defendant nevertheless maintains
12 that Dr. Powers is not involved in any *competitive* decisionmaking.  Here, Cepheid points out
13 that plaintiff previously told the court that the parties do not make competing products and that
14 their relationship is (or was) simply one of licensor and licensee.  Even so, the fact that the
15 parties "are not direct competitors hardly forecloses the inquiry."  Phoenix Solutions, Inc. v.
16 Wells Fargo Bank, N.A., 254 F.R.D. 568, 579 (N.D. Cal. 2008).  In Phoenix Solutions, the court
17 concluded that plaintiff's counsel was engaged in competitive decisionmaking, even though the
18 plaintiff was a holder of intellectual property in speech recognition systems and the defendant
19 was a bank.  The court reasoned that this was so because "the very fact that [defendant] is being
20 sued by [plaintiff] for infringement of the patents-in-suit indicates that [plaintiff] believes the
21 parties have at least some overlapping interest in the same industry."  Id.  Abaxis asserts, and
22 Cepheid does not deny, that Cepheid manufactures reagent beads for use in all of its products.
23 Moreover, the fact that there is (or was) a licensing agreement between the parties indicates that
24 they have an overlapping interest in the technology at issue.  Under the circumstances presented
25 here, this court concludes that Dr. Powers is involved in "competitive decisionmaking," and

---

[1] Abaxis has, on a case-by-case basis, allowed Dr. Powers to access certain types of information (e.g., financial information) for purposes of facilitating settlement and mediation efforts.  And, Cepheid agrees that he will not have any access to plaintiff's current financial data, except for high-level summaries agreed to by the parties.

4

1 plaintiff has a valid concern that its highly confidential information will be put at risk of
2 inadvertent disclosure.

3 There are, however, some mitigating factors. The risk of harm to Abaxis is lessened
4 here because Dr. Powers would, under the amended protective order, be subject to a patent
5 prosecution bar for up to one year after the final termination of this litigation. While the
6 protective order imposes a decision-making bar, in negotiating those terms the parties evidently
7 agreed that it would suffice for that bar to apply only to those who access information dated
8 1995 and later.[2] Cepheid is willing to limit Dr. Powers' access to information dating back
9 approximately two decades.

10 At the same time, however, no one disputes the confidentiality or sensitivity of the
11 information in question. And, both of the stipulated protective orders entered in this matter
12 contemplate that highly confidential information should be off-limits to anyone involved in
13 "competitive decisionmaking." Additionally, plaintiff says that Dr. Powers is a fact witness re
14 the attempted design around at issue, and it is concerned that his memory may be tainted if he is
15 allowed to access its designated materials. Although this court has no reason to question Dr.
16 Powers' good faith or integrity, the court also understands that in-house counsel often cannot
17 simply forget or compartmentalize what he or she has learned. Claiming that Dr. Powers has
18 highly specialized knowledge relevant to this suit, Cepheid argues that his ability to access pre-
19 1995 information (i.e., the period the claimed invention was being developed and the patents-in-
20 suit were being prosecuted) is crucial to its ability to properly defend this lawsuit. Cepheid no
21 doubt values Dr. Powers' knowledge and advice in the management of this lawsuit. But,
22 defendant has at least seven outside litigation attorneys, plus one in-house attorney (Mr.
23 Burrows), who all have access to the pre-1995 information in question. Cepheid has not
24 convinced this court that it will be seriously prejudiced in mounting a proper defense without

---

[2] Abaxis nevertheless argues that to the extent Dr. Powers has already been given more than "de minimis" access to its designated information, he should be subject to a decisionmaking bar precluding him from participating in decisions relating to the production, design, or licensing of dissolvable lyophilized reagent beads for up to one year after final termination of this litigation. On the record presented, this court cannot tell whether the prior disclosure of designated materials was more than "de minimis."

5

1  Dr. Powers' access to Abaxis' highly confidential information.  Accordingly, on balance and
2  after having considered legitimate competing interests and possible prejudice, this court
3  concludes that Cepheid has not shown that its stated need for Dr. Powers' access to plaintiff's
4  highly confidential information outweighs even the mitigated risk of harm to Abaxis.

    Based on the foregoing, the court finds that Dr. Powers should not be permitted to
6  access Abaxis' pre-1995 highly confidential information.

7       SO ORDERED.
8  Dated: August 17, 2012

                                            _____
                                            HOWARD R. LLOYD
                                            UNITED STATES MAGISTRATE JUDGE

5:10-cv-02840-LHK Notice has been electronically mailed to:

Bryan John Boyle    bryan.boyle@cooley.com, mweiand@cooley.com

Carolyn Chang    cchang@fenwick.com, vschmitt@fenwick.com

David James Miclean    DMiclean@MicleanLaw.com, dmiclean@micleangleason.com, Smurphy@micleangleason.com

Jacqueline Tio    tio@fr.com

Jonathan Elliot Singer    singer@fr.com, gonzales@fr.com, skarboe@fr.com

Lam Khanh Nguyen    lnguyen@cooley.com, tberryhill@cooley.com

Limin Zheng    zheng@fr.com, horsley@fr.com

Lynn Harold Pasahow    lpasahow@fenwick.com, tchow@fenwick.com

Rebecca Charnas Grant    rgrant@fr.com, varelas@fr.com

Ricardo Rodriguez    rodriguezr@cooley.com, douglasjar@cooley.com, elliottds@cooley.com, tanisawakm@cooley.com

Ryan Aftel Tyz    rtyz@fenwick.com, icampos@fenwick.com

Steven C. Carlson    scarlson@fr.com, lopacinski@fr.com, philip.wu@fr.com

Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.