Juanita R. Brooks (CA # 75934 / brooks@fr.com)
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

John M. Farrell (CA # 99649 / jfarrell@fr.com)
Steven C. Carlson (CA # 206451 / steven.carlson@fr.com)
Limin Zheng (CA # 226875 / zheng@fr.com)
Rebecca Charnas Grant (CA #264214 / rgrant@fr.com)
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone: (650) 839-5070
Facsimile: (650) 839-5071

Jonathan E. Singer (CA #187908/singer@fr.com)
Rebecca L. Shult (*pro hac vice*/Shult@fr.com)
FISH & RICHARDSON P.C.
60 South Sixth Street, Suite 3300
Minneapolis, MN 55402
Telephone: (612) 335-5070
Facsimile: (612) 288-9696

Brian J. Doyle (*pro hac vice*/byd@fr.com)
FISH & RICHARDSON P.C.
601 Lexington Ave, 52nd Floor
New York, NY 10022
Telephone: (212) 765-5070
Facsimile: (212) 258-2291

*Additional counsel listed on last page*

Attorneys for Defendant and Counterclaimant
CEPHEID

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(SAN JOSE DIVISION)

| | |
|---|---|
| ABAXIS, INC., | Case No. C 10-2840 LHK (HRL) |
| Plaintiff-Counterdefendant, | **CEPHEID'S MOTIONS *IN LIMINE*** |
| v. | |
| CEPHEID, | |
| Defendant-Counterclaimant. | |

**Cepheid's Motion in Limine No. 1:   Exclusion of argument or suggestion concerning Cepheid's pre-suit advice of counsel**

The Court should preclude Abaxis from making any suggestion that Cepheid did not obtain opinions of counsel prior to commercializing beads made by the Beadulator or Beadmaster processes, or any suggestion that Cepheid did obtain legal advice but refuses to disclose it. Cepheid did obtain legal opinions before selling beads made by the accused processes.  Cepheid has exercised its right to maintain its privilege and not rely on those opinions at trial.  During the pretrial meet and confer, Cepheid requested that Abaxis stipulate that it may not argue or suggest that Cepheid did not obtain legal advice in support of its development and/or use of the Beadulator or the Beadmaster, which would moot the present motion.  Abaxis refused to so stipulate.  Thus, at trial, Abaxis apparently intends to suggest to the jury an untruth – that Cepheid did *not* seek advice of counsel.  Abaxis might also unfairly argue that Cepheid did obtain legal advice that Cepheid refuses to disclose.  Any such suggestion would place Cepheid in the impossible legal situation of either sitting silent and allowing Abaxis' arguments to go unrebutted, to Cepheid's detriment, or explaining to the jury that Cepheid did in fact obtain opinions of counsel, in which case the jury will draw an adverse inference from the fact that Cepheid did not disclose those opinions.  Either result fundamentally conflicts with Congress' and the Federal Circuit's guidance regarding opinions of counsel and Fed. R. Evid. 403.  *See* 35 U.S.C. § 298 ("The failure of an infringer to obtain the advice of counsel with respect to any allegedly infringed patent, or the failure of the infringer to present such advice to the court or jury, may not be used to prove that the accused infringer willfully infringed the patent or that the infringer intended to induce infringement of the patent."); *In re Seagate Techs., LLC*, 497 F.3d 1360, 1370 (Fed. Cir. 2007) (en banc) (recognizing the "inappropriate burdens on the attorney-client relationship" posed by argument that a defendant did not produce evidence of an opinion of counsel) (quoting *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1344-45 (Fed. Cir. 2004)); *see also Knorr*, 383 F.3d at 1343 (explaining the unfair dilemma that an accused infringer's failure to produce advice of counsel "would warrant the conclusion that it either obtained no advice of counsel or did so and was advised that its [activities] would be an infringement of valid U.S. Patents."). Similar

motions in limine are commonly granted. *See Baxter Healthcare v. Fresenius Medical Care Holdings*, No. C 07-1359 (PJH) (N.D. Cal.), D.I. 427, at 2 ("defendants' Motion in Limine No. 2 to preclude plaintiffs from arguing that defendants did not obtain a pre-suit opinion of counsel regarding the patents-in-suit are GRANTED.")

**Cepheid's Motion in Limine No. 2:   Exclusion of evidence that language in Cepheid's patent was copied from Abaxis' patents.**

The law firm of Townsend Townsend Khouri and Crew, which later became Townsend and Townsend and Crew, and now Kilpatrick Townsend & Stockton (collectively, "Townsend"), prosecuted three of Abaxis' patents-in-suit.  Cepheid retained this same law firm to prepare certain of its patent applications.  Abaxis contends that language from Abaxis' patent application was copied into two of Cepheid's patent applications.  The way that Townsend drafted Cepheid's patent applications is probative of nothing, yet highly prejudicial.

First, the text of Cepheid's patent application is not relevant to infringement.  The infringement analysis requires a comparison of Abaxis' patents and Cepheid's beadmaking processes and beads, <u>not</u> a comparison between Abaxis' patents and Cepheid's patent application:

> "A determination of infringement requires a two-step analysis. The court must determine (1) the scope and meaning of the patent claims asserted, and (2) how the properly construed claims compare to the allegedly infringing device.  Comparison of the claims to the accused device requires a factual determination that every claim limitation or its equivalent is found in the accused device."

*International Rectifier Corp. v. IXYS Corp.*, 361 F.3d 1363, 1369 (Fed. Cir. 2004).  Abaxis' attempted patent-to-patent comparison has no more grounding than the forbidden product-to-product comparison. *See Zenith Laboratories, Inc. v. Bristol-Myers Squibb Co.*, 19 F.3d 1418, 1423 (Fed. Cir. 1994) ("As we have repeatedly said, it is error for a court to compare in its infringement analysis the accused product or process with the patentee's commercial embodiment or other version of the product or process; the only proper comparison is with the claims of the patent.").

Nor is the alleged patent copying relevant to willfulness. Indeed even Abaxis' own expert obtained his own patent having text copied from another patent, and he agreed that there is nothing wrong with doing so:

> Q. So you wouldn't ascribe any bad intent –
>
> A. No, no, no.
>
> Q. -- if Cepheid –
>
> A. No, I didn't intend to say like this was plagiarism or something. Of course not, no.
>
> Q. Okay. So you don't think there's anything wrong with Cepheid having used language –
>
> A. No.
>
> Q. -- from an Abaxis patent?
>
> A. No, I don't think there's anything wrong with it. I just think it is interesting technically to use the same language to describe the same process.
>
> Q. Okay. And when you say "interesting," you don't think there's anything wrong going on?
>
> A. No, I didn't mean to imply that.
>
> Q. Would you be surprised to learn that you did the same thing yourself?
>
> A. No.

Carpenter Dep. 9:7-24, April 25, 2012 (attached as Ex. 1).

Indeed, Abaxis never even attempted to establish relevance. Although it notified Cepheid in November 2011 that it would like to depose Kenneth Weber, a prosecution partner at Townsend, Abaxis never went forward with the deposition, and never even issued a subpoena for the deposition.

Although probative of nothing, this "patent copying" theory is highly prejudicial. The jury is likely to be confused by the similarities of the two companies' patents. It must therefore be excluded under Fed. R. Evid. 403. Excluding this line of questioning also avoids the need for Cepheid to question Dr. Carpenter about his own patent copying, which of course is irrelevant but would be necessary to counter Abaxis' diversions. Allowing evidence related to alleged copying of the patent text would only divert the jury's attention from the real issues at hand in this trial.

Furthermore, Abaxis' contention is untimely under the Court's July 20, 2012 Order. Cepheid produced the complete file histories of the patent applications in question on March 8, 2011. Abaxis subpoenaed Townsend for information relating to these patents on May 24, 2011, and the firm produced its documents on August 12, 2011. Abaxis deposed Cepheid's in-house counsel, Dr. Vince Powers, on January 26, 2012, concerning this topic. The only post-February 1, 2012 discovery that Abaxis identifies relevant to its "patent copying" theory is Abaxis' deposition of Mr. William McMillan, in which Mr. McMillan responded that he did not recall the source of the allegedly copied patent text. *See* Deposition of William McMillan at 56:4-59:25 (attached as Ex. 2). Thus, Abaxis had received all substantive discovery on its "patent copying" theory prior to February 1, 2012, and thus under the Court's July 20, 2012 Order this contention is untimely.

**Cepheid's Motion in Limine No. 3:   Exclusion of evidence related to FDA recalls**

Both Cepheid and Abaxis have had FDA recalls. These FDA recalls concern the parties' commercial products, which involve intricate fluidics, chemistry, optics, and measurement technologies wholly unrelated to the issues in this case.

Abaxis has never suggested that the FDA recalls are relevant to this case. Neither in its infringement contentions, nor in its willfulness allegations, has Abaxis attempted to tie the FDA recalls to any issue in this case. Therefore, by Abaxis' own disclosures, the FDA recalls are probative of nothing.[1]

However, testimony about FDA recalls would be highly prejudicial, and thus should be excluded under Rule 403. Any reference to the parties' product recalls would be unfairly prejudicial because it may tarnish the parties' reputations in the minds of the jurors, despite the

---

[1] The reason Cepheid brings this motion is because during pretrial meet and confer, Cepheid proposed the following stipulation but Abaxis refused to so stipulate: "The parties agree that neither party will present any evidence of or make any argument about FDA recalls for purposes of challenging or criticizing the safety and/or efficacy of the other party's product or otherwise disparaging the other party's product." Instead, Abaxis proposed to insert the word "solely" before "for purposes of." Thus, Abaxis apparently intends to use FDA recalls for some unidentified purposes.

1  recalls' irrelevance. If Abaxis were permitted to present evidence related to Cepheid's recalls,
2  Cepheid would be compelled to spend valuable time providing the full story about its recalls to the
3  jury. Furthermore, Cepheid would be forced to counter Abaxis' arguments with evidence of
4  Abaxis' own recalls. This is a patent trial, not a product liability trial, and the Court should
5  preclude this sideshow under Rule 403 by excluding any evidence of FDA recalls.

**Cepheid's Motion in Limine No. 4: Exclusion of evidence concerning FDA equivalency**

The Court should preclude Abaxis from proffering evidence or argument about Cepheid's communications with the FDA (or the lack of such communications) regarding the equivalency of the beads from the Beadulator and Beadmaster products.

Abaxis may attempt to argue that because Cepheid has treated its Beadulator and Beadmaster beads equivalently for purposes of FDA filings, that the beads must somehow be identical or equivalent for patent infringement purposes. Cepheid's FDA filings do not distinguish between beads made on the Beadulator and beads made on the Beadmaster. This is appropriate, because as Abaxis' CEO Clint Severson explained, "The FDA is looking for performance of your product. They're not looking for how you make it." Severson Dep. 90:18-19, February 16, 2012 (attached as Ex. 3). Although Cepheid's two processes yield beads that perform equivalently for purposes of the safety and efficacy of the products, there are differences between the beads relevant to the patent issues in this case. Abaxis should not be permitted to draw an inference from the absence of statements to the FDA that the beads made by the Beadulator and Beadmaster processes are the same for purposes of the patent trial.

In its infringement contentions and interrogatory responses, Abaxis has never articulated a theory by which communications (or the absence of communications) with the FDA would be relevant to infringement or willfulness. Accordingly, these communications (or absence of communications) are probative of nothing. *See The Johns Hopkins University v. Datascope Corp.*, 543 F.3d 1342, 1349 n.3 (Fed. Cir. 2008) ("…FDA equivalence is irrelevant to patent law because it involves fundamentally different inquiries."); *see also Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersystems Gmbh*, 2008 WL 410413 (D. Colo. 2008), *rev'd on other grounds*,

603 F.3d 943, 964–65 (Fed. Cir. 2010) (finding case exceptional and awarding attorneys' fees against patentee where patentee argued that a statement to the FDA that accused device was substantially equivalent to the patentee's product was an admission of infringement under the doctrine of equivalents).  Furthermore, evidence of Cepheid's communications with the FDA would be prejudicial, because such arguments would confuse the jury by injecting irrelevant legal issues into this patent case.

Dated:  August 20, 2012                                    FISH & RICHARDSON P.C.


By:  */s/ Steven C. Carlson*
     Steven C. Carlson

Attorneys for Defendant and Counterclaimant
CEPHEID

*Additional counsel*
Jacqueline Tio (pro hac vice / jtio@fr.com)
FISH & RICHARDSON P.C.
1180 Peachtree Street, NE, 21st Floor
Atlanta, GA 30309
Telephone: (404) 892-5005
Facsimile:   (404) 892-5002

30640418.doc