COOLEY LLP
RICARDO RODRIGUEZ (No. 173003) (rr@cooley.com)
ADAM M. PIVOVAR (No. 246507) (apivovar@cooley.com)
BRYAN J. BOYLE (No. 253725) (bryan.boyle@cooley.com)
LAM K. NGUYEN (No. 265285) (lnguyen@cooley.com)
JAVIER TORRES (No. 271538) (jtorres@cooley.com)
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2155
Tel: (650) 843-5000
Fax: (650) 857-0663

Attorneys for Plaintiff-Counterdefendant
ABAXIS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ABAXIS, INC.,<br><br>Plaintiff-Counterdefendant,<br><br>v.<br><br>CEPHEID,<br><br>Defendant-Counterclaimant. | Case No. C 10-2840 LHK (HRL)<br><br>**ABAXIS' OPPOSITION TO CEPHEID'S MOTIONS *IN LIMINE***<br><br>**DEMAND FOR JURY TRIAL** |

**TABLE OF CONTENTS**

**Page**

I. ABAXIS' OPPOSITION TO CEPHEID'S MOTION IN LIMINE NO. 1: CEPHEID'S BELATED ATTEMPT TO INTRODUCE AN OPINION OF COUNSEL DEFENSE SHOULD BE REJECTED AND ABAXIS SHOULD BE PERMITTED TO ARGUE ITS ABSENCE TO THE JURY ............ 1

II. ABAXIS' OPPOSITION TO CEPHEID'S MOTION IN LIMINE NO. 2: CEPHEID'S COPYING OF ABAXIS' PATENTS IS HIGHLY PROBATIVE OF SEVERAL ISSUES IN THIS CASE ............ 4

III. ABAXIS' OPPOSITION TO CEPHEID'S MOTION IN LIMINE NO. 3: CEPHEID'S OVERBROAD REQUEST TO EXCLUDE INFORMATION REGARDING FDA RECALLS FOR ANY PURPOSE SHOULD BE REJECTED......... 7

IV. ABAXIS' OPPOSITION TO CEPHEID'S MOTION IN LIMINE NO. 4: CEPHEID'S MOTION IS UNTIMELY AND EXCLUSION OF CEPHEID'S REPRESENTATIONS TO THE FDA SERVES NO PURPOSE ............ 8

A. Cepheid's Motion Should Be Rejected as Inexcusably Late ............ 8

B. Cepheid's Motion Should Also Be Rejected If Considered on the Merits ............ 8

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Baxter Healthcare v. Fresenius Medical Care Holdings*
No. C 07-1359 (PJH), ECF No. 427 (N.D. Cal. June 10, 2010) .......... 2

*Bendix Commercial Vehicle, Sys., LLC v. Haldex Brake Prods. Corp.*
No. 1:09 CV 176, 2011 WL 9347 (N.D. Ohio Jan. 3, 2011) .......... 2, 3

*Cold Spring Harbor Lab. v. Ropes & Gray LLP*
840 F. Supp. 2d 473 (D. Mass. 2012) .......... 7

*Creative Internet Adver. Corp. v. Yahoo! Inc.*
Civ. A. No. 6:07cv354, 2009 WL 2382132 (E.D. Tex. July 30, 2009) .......... 1

*Funai Elec. Co. v. Daewoo Elecs. Corp.*
593 F. Supp. 2d 1088 (N.D. Cal. 2009), *aff'd*, 616 F.3d 1357 (Fed. Cir. 2010) .......... 4

*GSI Grp., Inc. v. Sukup Mfg. Co.*
591 F. Supp. 2d 977 (C.D. Ill. 2008) .......... 1, 2

*i4i Ltd. Partnership v. Microsoft Corp.*
598 F.3d 831 (Fed. Cir. 2010) .......... 3, 4

*In re Katz Interactive Call Processing Patent Litig.*
No. 07-ML-01816-B-RGK(FFMx), 2009 WL 3698470 (C.D. Cal. Mar. 11, 2009) .......... 1

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*
725 F. Supp. 2d 474 (D. Del. 2010) .......... 3

*Presidio Components Inc. v. Am. Technical Ceramics Corp.*
723 F. Supp. 2d 1284 (S.D. Cal. 2010), *reconsideration denied*, No. 08-CV-335-IEG (NLS), 2010 WL 3384995 (S.D. Cal. Aug. 25, 2010) .......... 1

*Read Corp. v. Portec, Inc.*
970 F.2d 816 (Fed. Cir. 1992) .......... 3

*Sargent Mfg. Co. v. Cal-Royal Prods., Inc.*
Civ. A. No. 3:08-CV-408 (VLB), 2012 WL 603268 (D. Conn. Feb. 24, 2012) .......... 3

*In re Seagate Tech., LLC*
497 F.3d 1360 (Fed. Cir. 2007) .......... 1, 2, 3

*Spectralytics, Inc. v. Cordis Corp.*
649 F.3d 1336 (Fed. Cir. 2011) .......... 1, 4

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Tyco Healthcare Grp., LP v. Applied Med. Res. Corp.*
Civ. A. No. 9:06-CV-151, 2009 WL 5842063 (E.D. Tex. Mar. 30, 2009)............................... 1

*VNUS Med. Techs., Inc. v. Diomed Holdings, Inc.*
527 F. Supp. 2d 1072 (N.D. Cal. 2007) ........................................................................ 3

**STATUTES**

35 U.S.C. § 298 ........................................................................................................ 2

**OTHER AUTHORITIES**

J. Matel, A Guide to the Legislative History of the America Invents Act: pt. II of II, 21 Fed. Cir. B.J. 539 (2012)........................................................................................ 2

Fed. R. Civ. P. 37 ...................................................................................................... 2

## I. ABAXIS' OPPOSITION TO CEPHEID'S MOTION IN LIMINE NO. 1: CEPHEID'S BELATED ATTEMPT TO INTRODUCE AN OPINION OF COUNSEL DEFENSE SHOULD BE REJECTED AND ABAXIS SHOULD BE PERMITTED TO ARGUE ITS ABSENCE TO THE JURY

Cepheid's request to exclude evidence regarding any opinion of counsel—or lack thereof—should be rejected, for several reasons. First, contrary to Cepheid's argument, failure to seek advice of counsel is still relevant to the issue of willfulness even after *Seagate*. The *Seagate* opinion itself characterized the advice of counsel as "***crucial***": "[a]lthough an infringer's reliance on favorable advice of counsel, or conversely his failure to proffer any favorable advice, is not dispositive of the willfulness inquiry, ***it is crucial to the analysis***." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1369 (Fed. Cir. 2007) (emphasis added). This has subsequently been recognized by several courts. *Presidio Components Inc. v. Am. Technical Ceramics Corp.*, 723 F. Supp. 2d 1284, 1324 (S.D. Cal. 2010) ("[T]he Federal Circuit did not hold that failure to obtain opinion of counsel was legally irrelevant. Rather, the court noted that the issue of willfulness must be analyzed under the 'totality of the circumstances' approach."), *reconsideration denied*, No. 08-CV-335-IEG (NLS), 2010 WL 3384995 (S.D. Cal. Aug. 25, 2010); *Spectralytics, Inc. v. Cordis Corp.*, 649 F.3d 1336, 1348 (Fed. Cir. 2011) ("Precedent has [] clarified that the ***failure to obtain*** an opinion of counsel or otherwise investigate the patent situation can be considered, in the totality of the circumstances.") (emphasis added); *In re Katz Interactive Call Processing Patent Litig.*, No. 07-ML-01816-B-RGK(FFMx), 2009 WL 3698470, at *3 (C.D. Cal. Mar. 11, 2009) ("It is important to note that despite the lack of adverse inference, the Federal Circuit still allows a jury to consider the absence of an opinion."); *Creative Internet Adver. Corp. v. Yahoo! Inc.*, Civ. A. No. 6:07cv354, 2009 WL 2382132, at *5 (E.D. Tex. July 30, 2009) ("[T]he lack of opinion of counsel is one factor of many that the jury could have taken into account in determining whether Defendant willfully infringed."); *Tyco Healthcare Grp., LP v. Applied Med. Res. Corp.*, Civ. A. No. 9:06-CV-151, 2009 WL 5842063, at *3 (E.D. Tex. Mar. 30, 2009) ("The seminal question is whether a jury, after *Seagate*, can hear testimony that a defendant did not seek advice of counsel in determining whether, under the totality of the circumstances, any infringement by the defendant was willful. This court holds that it can, again, as long as no adverse inference is drawn as to what the advice may have been."); *GSI Grp., Inc. v. Sukup Mfg.*

*Co.*, 591 F. Supp. 2d 977, 981 (C.D. Ill. 2008) ("An alleged infringer's decision not to secure an opinion is relevant to show willfulness."). Cepheid nowhere even attempts to address the above case law.

Furthermore, Cepheid's citation to *Baxter Healthcare v. Fresenius Medical Care Holdings*, No. C 07-1359 (PJH), ECF No. 427 (N.D. Cal. June 10, 2010), is inapposite, as shown by the portion of the quoted sentence which Cepheid omitted: "defendants' Motion in Limine No. 2 to preclude plaintiffs from arguing that defendants did not obtain a pre-suit opinion of counsel regarding the patents-in-suit, are GRANTED based on the stipulation of counsel at the conference." *Id.* at 2 (emphasis added). There has been no such stipulation here, and given the stipulation in Baxter, it cannot be cited as authority for the exclusion that Cepheid seeks. Cepheid's reliance on the recently amended version of 35 U.S.C. § 298 is also misplaced. The legistlative history shows that the provision is not applicable in this case:

> One noteworthy flaw in this provision [§ 298] as enacted by the final public law is that it was not given its own effective date. As a result, this section is governed by the AIA's default effective date, at section 35 of the Act, which provides that provisions of the bill without their own effective dates "shall take effect upon the expiration of the 1-year period beginning on the date of the enactment of this Act and shall apply to any patent issued on or after that effective date." In other words, unless this matter is remedied in subsequent legislation, the applicability of § 298 of title 35 will depend not on when the lawsuit in which § 298 is sought to be applied was filed, but rather on when the patent in suit was issued.

J. Matel, A Guide to the Legislative History of the America Invents Act: Part II of II, 21 Fed. Cir. B.J. 539, 589-90 (2012)[1] (footnotes omitted). Since all of the patents in suit were issued long before the effective date of this newly amended statute, the statute simply does not apply.

Moreover, Cepheid cannot merely rely on a conclusory statement that it obtained opinion of counsel.[2] An infringer's reliance on an advice of counsel defense "is not dispositive of the willfulness inquiry." *Seagate*, 497 F.3d at 1369. *See also Bendix Commercial Vehicle, Sys., LLC v. Haldex Brake Prods. Corp.*, No. 1:09 CV 176, 2011 WL 9347, at *4 (N.D. Ohio Jan. 3, 2011)

---

[1] Available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2088887.

[2] Abaxis served interrogatories on Cepheid regarding the decision making process and individuals involved with Cepheid's purported "design around" that should have elicited this information during discovery. Cepheid's untimely disclosure of the alleged existence of an "opinion" is therefore untimely and any attempts for Cepheid to rely on its existence should be precluded pursuant to Federal Rule of Civil Procedure 37.

("An opinion of counsel is not an automatic or irrefutable defense to willfulness . . . ."). Defendants wishing to use an opinion of counsel defense to willfulness must make several showings. First, the opinion of counsel must have actually been followed by the infringer. *See id.* ("An opinion of counsel . . . does not insulate an infringer from a finding of willfulness, if the infringer did not rely on the opinion when it made the decision to infringe."). Second, reliance on the opinion must have been reasonable, and the opinion itself must have been competently drafted. *See id*. Third, the advice in the opinion must have been objective and un-biased. *See Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 725 F. Supp. 2d 474, 478 (D. Del. 2010). Fourth, the opinion must not have been conclusory in nature and must have included legal and factual analysis. *See VNUS Med. Techs., Inc. v. Diomed Holdings, Inc.*, 527 F. Supp. 2d 1072, 1076 (N.D. Cal. 2007); *see also Sargent Mfg. Co. v. Cal-Royal Prods., Inc.*, Civ. A. No. 3:08-CV-408 (VLB), 2012 WL 603268, at *12 (D. Conn. Feb. 24, 2012). Finally, the timing of the opinion must be considered, as a post-litigation opinion of counsel is "of marginal value." *Power Integrations*, 725 F. Supp. 2d at 478. In short, under *Seagate*, Cepheid is free to refrain from asserting an advice of counsel defense to willfulness, as this would no longer result in an adverse inference with regards to wilfulness. *Seagate*, 497 F.3d at 1371. However, should Cepheid choose to rely on an advice of counsel defense, it must make several showings, and Abaxis should be allowed to present evidence and argument to the contrary. Cepheid's motion makes clear that what it wants to be able to argue to the jury is that it received a favorable opinion, without disclosing the opinion, but at the same time prevent Abaxis from arguing that the opinion may not have been favorable. This is plainly unfair and should be rejected.

Additionally, the failure to obtain advice of counsel is relevant to enhanced damages. Since 1992, enhanced damages has been considered under the nine factors set forth by the Federal Circuit in *Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992). The second *Read* factor is "whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed." *Id.* at 827. In *i4i Ltd. Partnership v. Microsoft Corp.*, the Federal Circuit emphasized that the *Read* factors were "distinct and separate" from the factors considered in the willfulness determination.

598 F.3d 831, 859 (Fed. Cir. 2010). The Federal Circuit has also emphasized that "*Seagate* did not change the application of the *Read* factors with respect to enhancement of damages when willful infringement under § 285 is found." *Spectralytics*, 649 F.3d at 1349 (vacating district court's denial of enhanced damages). Thus, failure to obtain advice of counsel has been, and still is, post-*Seagate*, relevant to enhanced damages. *See, e.g.*, *Funai Elec. Co. v. Daewoo Elecs. Corp.*, 593 F. Supp. 2d 1088, 1114 (N.D. Cal. 2009), *aff'd*, 616 F.3d 1357 (Fed. Cir. 2010).

## II. ABAXIS' OPPOSITION TO CEPHEID'S MOTION IN LIMINE NO. 2: CEPHEID'S COPYING OF ABAXIS' PATENTS IS HIGHLY PROBATIVE OF SEVERAL ISSUES IN THIS CASE

Cepheid's request to exclude the evidence of copying from Abaxis patents is highly relevant to several issues in the case and should be rejected. A simple comparison between a Cepheid patent application and the patents in this case shows virtually word-for-word copying of several passages:

| Abaxis' '732 Specification | Cepheid's US Application No. 10/949,157 | Cepheid's US Application No. 10/949,266 |
|---|---|---|
| **The drops are uniform and precisely measured so that the resulting dried reagent spheres have uniform mass.** | **The drops are uniform and precisely measured so that the resulting dried reagent spheres have uniform mass.** | **The drops are uniform and precisely measured so that the resulting dried reagent spheres have uniform mass.** |
| **When the drops are uniform and precisely measured, the imprecision of the mass (coefficient of weight variation) of the reagent spheres prepared from the drops is less than about 3%, and preferably between about 0.3% and about 2.5%. To further decrease the** coefficient of **weight variation, the aqueous solution** is preferably **degassed using a vacuum pump or vacuum line before the drops of solution are dispensed.** | **When the drops are uniform and precisely measured, the imprecision of the mass (coefficient of weight variation) of the reagent spheres prepared from the drops is less than about 3%, and preferably between about 0.3% and about 2.5%. To further decrease the weight variation, the aqueous solution** may be **degassed using a vacuum pump or vacuum line before the drops of solution are dispensed.** | **When the drops are uniform and precisely measured, the imprecision of the mass (coefficient of weight variation) of the reagent spheres prepared from the drops is less than about 3%, and preferably between about 0.3% and about 2.5%. To further decrease the weight variation, the aqueous solution** may be **degassed using a vacuum pump or vacuum line before the drops of solution are dispensed.** |

| | | |
|---|---|---|
| **Typically, the frozen drops are lyophilized for about 4 hours to about 24 hours at about 50 to about 450 mTorr, preferably, about 6 hours at about 200 mTorr. The reagent spheres typically comprise less than about 6% residual moisture, preferably less than about 3%.** | **Typically, the frozen drops are lyophilized for about 4 hours to about 24 hours at about 50 to about 450 mTorr, preferably, about 6 hours at about 200 mTorr. The** final **reagent spheres typically comprise less than about 6% residual moisture, preferably less than about 3%.** | **Typically, the frozen drops are lyophilized for about 4 hours to about 24 hours at about 50 to about 450 mTorr, preferably, about 20 hours at about** 100 **mTorr. The** final **reagent spheres typically comprise less than about 6% residual moisture, preferably less than about 3%.** |
| Thus, **the reagent spheres of the present invention are prepared from reagents suitable for any of the above analytical assays. Typically, an aqueous solution comprising the reagents is prepared. To ensure uniform composition of the reagent spheres, the solution** must be **homogeneous and all constituents** must be **fully dissolved or in suspension**. | **The reagent spheres of the present invention are prepared from reagents suitable for any of the** protein based **analytical assays** of the invention. **Typically, an aqueous solution comprising the reagents is prepared. To ensure uniform composition of the reagent spheres, the solution** is made **homogeneous and all constituents** are **fully dissolved or in suspension**. | |

(Declaration of Ricardo Rodriguez in Support of Abaxis' Opposition to Cepheid's Motions *In Limine* ("Rodriguez Decl."), Ex. A, U.S. Patent. No. 5,413,732, Col. 5:19-25, 31-39, 40-47; *id.*, Ex. B, U.S. Patent Appl. No. 10/949,157, ¶¶ 71-73, 78; *id.*, Ex. C, U.S. Patent Appl. No. 10/949,266, ¶¶ 80-81, 87 (bold indicates matching text).) These passages are not in the background section of Cepheid's patent application. Rather, they reside in the substantive portion of the application that is intended to convey Cepheid's own invention. And yet the passages provide no indication that they were cut and pasted from the Abaxis patents in this case.

Even given the Court's order regarding evidence prior to February 1, 2012, Abaxis has obtained substantial evidence relating to copying as it pertains to infringement, willfulness, and the secondary considerations of non-obviousness. This evidence includes: (1) documents showing that Cepheid specifically evaluated the Abaxis patents in connection with the development of its reagent beads (Rodriguez Decl. Ex. D at CEPH0181705-47; Ex. E at CEPH0196893); (2) testimony and documents demonstrating visits to Abaxis (*Id.*, Ex. F at

CEPH0195478; Ex. G, McMillan Depo. at 61:10-20); (3) the importance of the accused reagent beads to Cepheid as being used in virtually every Cepheid product (*Id.*, Ex. H, Bishop Depo. at 104:7-108:23); (4) Cepheid's blatant use of former Abaxis employees in connection with the development of both the Beadulator and Beadmaster processes (*Id.*, Ex. I, Chang Depo. at 22:20-23:1, 33:17-25, 35:11-37:24; Ex. J, Christel Depo. at 48:22-49:4; Ex. K, Dority Depo. at 12:16-13:9, 14:9-16, 50:12-18; Ex. G, McMillan Depo. at 23:15-23); and (5) the evaluation of even Abaxis' device graphics and menus for use with Cepheid products. (Rodriguez Decl., Ex. L at CEPH0195449; Ex. M at CEPH0195465-71; Ex. N at CEPH0195479.)

The copying of Abaxis patents into Cepheid patent applications is further probative evidence of Cepheid's willingness to copy. The copying is probative of infringement because it demonstrates that even as late as September 2010, Cepheid was still looking to Abaxis technology for use in its processes, even an alleged design-around process. In addition, Cepheid testimony shows that Cepheid intended to leave the lyophilization aspect of its process unchanged between the Beadulator and Beadmaster processes. Thus, from an infringement standpoint, the patent application demonstrates a continued use of the lyophilization claim element of virtually all the asserted claims. (Rodriguez Decl., Ex A, '732 patent, claims 1-4, 6; Ex. O, '597 patent, claims 1-5, 7-10, 13; Ex. P, '563 patent, claims 1, 3; Ex. Q patent, '684, claims 12-13.)

The copying of the Abaxis patents is also probative of the secondary indicia of non-obviousness of the asserted claims. Even as late as September 2004, the copying from Abaxis patents shows that Cepheid still continued to look to the Abaxis technology—not the prior art—in developing its processes. This is directly contrary to Cepheid's position that Abaxis' invention was obvious.

Finally, the copying is also relevant to willfulness. Cepheid claims that given the Court's order regarding post-February 1 2012 evidence, only one witness provided information on the Cepheid patent applications. This is incorrect. The other named inventors provided testimony as well. (Rodriguez Decl., Ex. R, Jones Depo. at 136:13-139:10; Ex. G, McMillan Depo. at 54:8-60:5; Ex. S, Moon Depo. at 90:18-92:16.) Collectively, all of the named inventors claimed ignorance of the source of the copied passages. (Rodriguez Decl., Ex. R, Jones Depo. at 138:12-

139:10; Ex. G, McMillan Depo. at 55:9-57:12, 58:20-60:5; Ex. S, Moon Depo. at 91:13-92:16.) Contrary to Cepheid's argument, this alleged ignorance is further evidence of copying, not a lack thereof. If any of the inventors had recalled actually developing the aspects of the processes in these passages, they could have recalled doing so, or it may have been in their laboratory notebooks. Their complete lack of recollection of developing any of these processes is fully consistent with the copying of the passages from the Abaxis patents: if the passages had been copied, of course none of the inventors would have any knowledge of having developed the methods.

Cepheid tries to soften the impact of the copying by citing to the testimony of Abaxis witnesses. But none of these witnesses were asked whether it was appropriate for Cepheid to claim the copied processes as its own, without attribution, as the patent applications clearly do. Further, Cepheid is free to cross-examine these witnesses on the issue, and thus the testimony goes to the weight of the evidence, rather than justify exclusion. Indeed, one court has harshly criticized the type of copying that Cepheid did in the patent application. *See Cold Spring Harbor Lab. v. Ropes & Gray LLP*, 840 F. Supp. 2d 473, 477-78 (D. Mass. 2012). Cepheid's motion should be denied.

## III. ABAXIS' OPPOSITION TO CEPHEID'S MOTION IN LIMINE NO. 3: CEPHEID'S OVERBROAD REQUEST TO EXCLUDE INFORMATION REGARDING FDA RECALLS FOR ANY PURPOSE SHOULD BE REJECTED

Cepheid's motion regarding the exclusion of FDA recalls should be rejected as overbroad. During the meet and confer process, Abaxis had proposed a mutual agreement in which both parties would agree to forego using FDA recalls ***solely*** for the purpose of disparagement of each other's products. Cepheid rejected this proposal and now seeks a one-way exclusion of any use of Cepheid's FDA recalls for any purpose in the case.

Cepheid's recent additional document production demonstrates why such an exclusion is simply too broad. Documents produced by Cepheid less than a month ago, and long after the close of discovery, show that in June or July of 2012, Cepheid decided to change its process for making its flu product beads from the Beadmaster to the original Beadulator product. (Rodriguez Decl., Ex. T at CEPH0195229.) This change was motivated by failures of the flu product. (*Id.*,

Ex. U at CEPH0195393-407.) A search of recalls shows that as recent as 2010, Cepheid was subject to a recall of its flu product.[3] Because companies plainly want to avoid recalls, this evidence of a prior recall of the flu product is probative of a motivation to return to the Beadulator process to make the flu product, despite the infringement issues associated with such a return. Cepheid's motion would improperly exclude this recall evidence even though it is probative of this incentive to willfully infringe, and should be rejected.

## IV. ABAXIS' OPPOSITION TO CEPHEID'S MOTION IN LIMINE NO. 4: CEPHEID'S MOTION IS UNTIMELY AND EXCLUSION OF CEPHEID'S REPRESENTATIONS TO THE FDA SERVES NO PURPOSE

### A. Cepheid's Motion Should Be Rejected as Inexcusably Late

At Cepheid's request, the parties' joint pretrial statement set forth a deadline of August 7, 2012 for each party to identify to the other side its intended motions in limine. (ECF No. 193.) The Court entered this deadline. (ECF No. 199.) On August 7, Cepheid identified the above three motions in limine, but not this fourth motion in limine. During the meet and confer process, Abaxis' counsel informed Cepheid that its identification of this motion in limine was untimely, and that it would challenge the motion on that basis. (Rodriguez Decl. ¶ 23.) Cepheid's counsel offered no excuse for late disclosure. (*Id.*) Further, despite knowing of Abaxis' position, Cepheid's moton itself offers no recognition of the tardy disclosure, much less any excuse for it. Cepheid's motion should therefore be rejected outright as untimely.

### B. Cepheid's Motion Should Also Be Rejected If Considered on the Merits

Cepheid's motion seeks to exclude proper evidence that is probative of infringement and willfulness. One critical aspect of the development of Cepheid's Beadmaster process is an internal technical limitation that Cepheid imposed: that the beads made by the Beadmaster process be functionally the same, and have the same properties as the Beadulator beads. (Rodriguez Decl., Ex. V, Tso Depo. at 95:20-96:9, 114:13-115:3.) Indeed, Cepheid did not even want to have to change the freeze drying process already in place for the Beadulator process. (*Id.*, Ex. V, Tso Depo. at 83:20-24.) Cepheid's belief that the processes produced beads that were so

[3] Available at http://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfRes/res.cfm?ID=89842.

equivalent that the process changes did not need to be disclosed to the FDA demonstrates the actual, technical equivalence of the beads made by these two processes. This equivalence is highly probative to the doctrine of equivalents in this case. At a minimum, it supports Abaxis' position that the beads made by the two processes function in the same way, and the processes to make them provide the same result. This is further confirmed by Cepheid's admission, by virtue of the lack of any expert non-infringment opinion, that its Beadulator process infringes claims 1, 2, 7, 8, 9, and 13 of the '597 patent and claims 12 and 13 of the '684 patent. Cepheid should not be permitted to exclude this clearly relevant and probative evidence.

This evidence is also relevant to willfulness, for similar reasons. The evidence in this case shows that Cepheid did not undertake a true design-around process because it wanted to have beads that were the same, and could be used in the same products and processing already in place at Cepheid. (Rodriguez Decl., Ex. V, Tso Depo. at 95:20-96:9, 114:13-115:3; Ex. W at CEPH0194454-55.) These constraints, which were motivated by the desire to avoid spending more money than necessary, made it far more risky for Cepheid to try to avoid the Abaxis patents, and Abaxis believes it failed to do so. Cepheid's decision that it did not have to disclose to the FDA the changes to its process because the beads were the same, is highly relevant to Abaxis' assertion that Cepheid wanted to "have its cake and eat it too" in connection with its alleged design-around, and thus knowingly undertook an improperly substantial risk of infringing the Abaxis patents.

Accordingly, Cepheid's motion to exclude this evidence should be denied.

Dated: August 22, 2012

COOLEY LLP

by: /s/
Ricardo Rodriguez

Attorneys for Plaintiff-Counterdefendant
Abaxis, Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that counsel of record have consented to electronic service and are being served with a copy of this document electronically.

Dated: August 22, 2012

/s/ *Ricardo Rodriguez*
Ricardo Rodriguez

1053004