Juanita R. Brooks (CA # 75934 / brooks@fr.com)
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Telephone:  (858) 678-5070
Facsimile:  (858) 678-5099

John M. Farrell (CA # 99649 / farrell@fr.com)
Steven C. Carlson (CA # 206451 / steven.carlson@fr.com)
Limin Zheng (CA # 226875 / zheng@fr.com)
Rebecca Charnas Grant (CA #264214 / rgrant@fr.com)
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone: (650) 839-5070
Facsimile: (650) 839-5071

Jonathan E. Singer (CA #187908 / singer@fr.com)
Rebecca L. Shult (*pro hac vice* / shult@fr.com)
FISH & RICHARDSON P.C.
60 South Sixth Street, Suite 3300
Minneapolis, MN 55402
Telephone:  (612) 335-5070
Facsimile:  (612) 288-9696

Attorneys for Defendant and Counterclaimant
CEPHEID

*Additional counsel listed on last page*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
(SAN JOSE DIVISION)

| | |
|---|---|
| ABAXIS, INC., <br><br> Plaintiff and Counter-Defendant, <br><br> v. <br><br> CEPHEID, <br><br> Defendant and Counter-Claimant. | Civil Case No. 10-2840 LHK (HRL) <br><br> **CEPHEID'S OPPOSITIONS TO ABAXIS' MOTIONS IN LIMINE NOS. 1-5** <br><br> **Pretrial Conf. Date: August 29, 2012** <br><br> **Time:  2:00pm** <br><br> **Judge: Lucy H. Koh** |

## I. ABAXIS' MOTION IN LIMINE NO. 1 SHOULD BE DENIED

Abaxis seeks extraordinary relief not supported by case law or the current state of discovery. No case stands for the proposition that there is a subject matter waiver of privilege because a defendant asserts the defense of no infringement and received legal advice regarding that defense. Moreover, the documents Abaxis complains about have been produced, and the testimony Abaxis seeks is available.

The dispute over documents clawed back or withheld as privileged has been resolved by the parties in Abaxis's favor. Abaxis has the contested "design around" documents on CV, as well as any similar documents. On August 13, in order to streamline the case, Cepheid agreed to moot the pending discovery dispute before Magistrate Lloyd by producing the contested documents based on Abaxis's assertion that they were not privileged; Abaxis now has all those documents and anything else that it could possibly want.

These documents contain the same information Abaxis has long had – that Cepheid pursued a design around for its new "Beadmaster" process that included ensuring that beads made by the new process fell outside the limitation of requiring a CV of less than 3%. While Abaxis disparages that design around as a "mathematical abstraction," it is not, as the evidence at trial will demonstrate. Cepheid's beadmaster beads, when properly measured, have a CV of well above 3%, and thus do not infringe the claims having this limitation.

But more important to Abaxis' motion is the fact that Abaxis has long had detailed knowledge of Cepheid's bead making process and technical information related to the CV issue. Abaxis' original infringement contentions in 2010 assert, after Cepheid disclosed its bead data at the outset of the case, that the "raw data provided by Cepheid corresponds to the sum of two independent gaussian distributions and each has a weight variation of less than about 3% (e.g., 1.48% and 1.68% respectively)." Ex. 1 at 1.[1] Moreover, Abaxis' motion itself is filled with detail it has learned through discovery about precisely how the Beadmaster process works, and how the process was arrived at. Abaxis writes that "[t]he evidence shows that beads made using each dispense volume do in fact achieve a CV of less than 3% -- in fact, much less." Br. at 1. This

---

[1] Unless otherwise noted, exhibit citations refer to the Declaration of Steven C. Carlson, filed herewith.

1    CEPHEID'S OPPS TO ABAXIS' MOTIONS IN LIMINE
Civil Case No. 10-2840 LHK (HRL)

discovery was open to Abaxis. *See* Exs. 2 - 15 (deposition exhibits and other production documents reporting CV values of various dispense volumes).[2]  For Abaxis now to complain that it has somehow lacked that information and Cepheid should be barred from relying on the defense is simply not credible.

In addition to having the documents, Abaxis also has the requisite testimony available.  In addition to the extensive deposition testimony already taken, Cepheid is making available a Rule 30(b)(6) witness to discuss the produced documents and Cepheid's CV design-around, exactly as Abaxis requested from Magistrate Judge Lloyd.  With a month left before trial to prepare, Abaxis will be fully able to cross examine Cepheid witnesses on the how and why of the Cepheid design around.   There is simply no "sword-shield" issue here.   The jury will hear from Cepheid technical witnesses that it engineered the CV to be greater than 3%, precisely to avoid the patents at issue.

Finally, we note that Abaxis cites not a single case for the extraordinary relief that it seeks. That is because there are none – otherwise, every defendant who relied on counsel to craft a defense would be said to have "waived privilege." *See, e.g.*, *Rhone-Poulenc Rorer Inc. v. Home Indemnity Co.*, 32 F.3d 851, 863 (3d Cir. 1994) ("[T]he advice of the infringer's counsel is not placed in issue, and the privilege is not waived, unless the infringer seeks to limit its liability by describing that advice and by asserting that he relied on that advice.").  And in any event, the issue is moot – the documents have been produced and the requested witness has been proffered. Abaxis's motion should be denied.

## II.     ABAXIS' MOTION IN LIMINE NO. 2 SHOULD BE DENIED

Abaxis' motion is remarkable in what it fails to tell the Court.  Some of the earliest bead-dropping at Abaxis was done on a chilled solid surface.  Ex. 16 at ABAX003215.  Abaxis soon abandoned that approach and opted instead to dispense its reagents into liquid nitrogen. *Id.* Abaxis inventor Chi-Sou Yu recalled her work dispensing reagents onto a chilled substrate, and was questioned in deposition on the differences between dispensing into liquid nitrogen and dispensing onto a chilled substrate. *See* Rodriguez Declaration, Exh. E at 23:2-26:14.  Inventor

---

[2] Abaxis' statement that "Cepheid has refused to disclose any development or activity prior to its decision to proceed with the final two dispensing volumes that it ultimately chose" is simply false. *See, e.g.*, Ex. 2 [Tso Exh. 81] (summarizing data for different dispense volumes and ratios of beads).

1  Vladimir Ostoich also recalled the concept of dispensing onto a chilled substrate, and likewise
2  testified about the differences between the two approaches.  *See* Rodriguez Declaration, Exh. F at
3  31:1-33:22.  It is this testimony that Abaxis seeks to bury.

4        This questioning was fair and straightforward, with hardly an objection drawn.  Abaxis
5  now seeks to exclude it because its own witnesses agreed that dispensing beads onto a chilled
6  substrate was different than dispensing into liquid nitrogen.  This testimony is highly probative,
7  because it directly undermines Abaxis' contention that dispensing beads onto a chilled plate is
8  "equivalent" to dispensing into liquid nitrogen.  Rule 403 has no application here because the
9  testimony is directly probative in refuting Abaxis' theory that solids and liquids are equivalent.
10 And at trial, Abaxis is free to question its witnesses about their views of the differences between
11 dispensing onto solid plates versus into liquid nitrogen, and put its witnesses' admissions into
12 whatever context Abaxis sees fit.

13       There is no protective order dispute.  Cepheid had no obligation to inform Abaxis'
14 inventors about how Cepheid's plate is configured.  Nor did Cepheid have the obligation to
15 specify in its questioning the details of the plates in interest – these were Abaxis' own plates after
16 all.  Cepheid did not "distort testimony" – it simply received refreshingly candid answers from
17 witnesses with ample foundation.  At trial, Abaxis can work with these admissions to the best of
18 its ability. As for Abaxis' request to disclose Cepheid's confidential information to Abaxis'
19 inventors, it will be an open court, and much of the description of Cepheid's technology is already
20 public.  Beyond what is already public, Cepheid has no obligation to disclose its confidences to
21 Abaxis personnel.

22 **III.   ABAXIS' MOTION IN LIMINE NO. 3 SHOULD BE DENIED**

23       Cepheid has no intention to "disparage" the Patent Office and has told Abaxis so during
24 the meet and confer prior to submitting the joint pretrial statement.[3]  Nor does Cepheid intend to
25 offer any "speculation" or "generalized testimony" concerning the Patent Office's workload.
26 However, Cepheid is entitled to present appropriate evidence to "point out when deference to the

---

[3]  During the meet and confer, Cepheid requested that Abaxis draft a proposed stipulation that may potentially moot Abaxis' Motion in Limine No. 1.  While Abaxis agreed to consider Cepheid's request during the telephone conference, it subsequently informed Cepheid that it would just proceed with its motion.

Patent Office's determination is not appropriate (e.g. by showing through a technical expert and the prosecution history that the examiner did not consider pertinent prior art)." *Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.*, No. C 92-20643 RMW, 1995 WL 261407, at *3 (N.D. Cal. Apr. 25, 1995); *see also Microsoft Corp. v. i4i Ltd. Partnership,* 131 S.Ct. 2238, 2251 (2011) ("When warranted, the jury may be instructed to consider that it has heard evidence that the PTO had no opportunity to evaluate before granting the patent.").

For example, Cepheid is entitled to present evidence through its expert or through Abaxis' witnesses involved in the prosecution of the patents-in-suit to show that the Patent Office was not aware of and did not consider the Buxton patent or other prior art references pertinent to Cepheid's invalidity defenses, or that the Patent Office never had an opportunity to consider the implication of Abaxis' commercial activities that took place more than one year before it filed the application that resulted in the '563 and '684 patents. *See id*.

The cases cited by Abaxis do not support the sweeping exclusion it seeks. They merely stand for the uncontroversial proposition that speculation and generalized testimony are improper. Indeed, as discussed above, in *Applied Materials*—one of the cases Abaxis relies on—Judge Whyte expressly noted that his ruling would "not prevent [the defendant] from presenting appropriate evidence to try and meet its burden and to point out when deference to the Patent Office's determination is not appropriate[.]" *Id.*[4] In *Bausch & Lomb, Inc. v. Alcon Labs., Inc.*, 79 F. Supp. 2d 252, 255 (W.D.N.Y. 2000), another case Abaxis relies on, the court held that while *generalized testimony* about problems in the Patent Office was inadmissible, the defendant may seek to offer evidence "that there actually were defects in the particular application process at issue in this case, thus suggesting that deference to the PTO's determination may not be appropriate." Similarly, in *Bone Care Int'l LLC v. Pentech Pharm., Inc.*, No. 08–CV–1083, 2010 WL 3928598, at *15 (N.D. Ill. Oct. 1, 2010), yet another case relied on by Abaxis, the court held that the defendant "may offer any extant facts regarding acts or omissions in the applications giving rise to the [patent at issue]." Likewise, in this case, to the extent there are specific

---

[4] The Court also cautioned that should the plaintiff "open[] the door by presenting evidence suggesting that some extraordinary deference is due in this case[,]" the court would reconsider its ruling. *Applied Materials*, 1995 WL 261407, at *3.

problems or irregularities that occurred during the prosecution, the jury is entitled to hear this relevant evidence in assessing the validity of Abaxis' patents.

Moreover, Abaxis' motion in limine should be denied as vague and ambiguous. In *GSI Group, Inc. v. Sukup Mfg. Co.*, in rejecting a similar motion to "Preclude [the defendant] from Denigrating the Patent Office or its Examiners," the court held:

> The Motion is DENIED. The Motion is again vague. Sukup's counsel is obligated to limit its statements and arguments to matters that can be supported by the evidence and fair inference therefrom, and further limited in the terms that they may use by their general ethical duties and their obligations as officers of the court. GSI's counsel, of course, may object if they believe Sukup's counsel is going beyond these limits. The Motion, however, is denied.

*GSI Group, Inc. v. Sukup Mfg. Co.*, 641 F. Supp. 2d 732, 735 (C.D. Ill. 2008).

For these reasons, Abaxis' Motion in Limine No. 3 should be denied.

### IV. ABAXIS' MOTION IN LIMINE NO. 4 SHOULD BE DENIED

During preparation for trial, Cepheid's counsel noticed that it had not produced a document that although not relevant to any of the accused products or processes, nor any of the alleged embodying products or process, mentioned "Abaxis." Out of an abundance of caution, counsel for Cepheid re-audited its production to confirm it had produced all responsive documents concerning "Abaxis," and found about 5 non-privileged, marginally responsive documents that were not produced. None of the 5 documents have anything to do with bead-making. Nonetheless, Cepheid immediately turned over these documents to Abaxis, including the two documents identified in Abaxis' present motion in limine. (*See* Rodriguez Decl. Exs. I and J.) There is no legal authority supporting the sanction Abaxis now seeks that punishes Cepheid for voluntarily producing documents.

Because of its grave and prejudicial impact, an adverse inference is only appropriate in cases where a party *destroys* or *withheld* evidence, not when a party—as Cepheid does here—*produces* evidence. This is clear from the 9th Circuit authority Abaxis cites:

> Generally, a trier of fact may draw an adverse inference from the *destruction of evidence* relevant to a case.

> The adverse inference is based on two rationales, one evidentiary and one not. The evidentiary rationale is nothing more than the common sense observation that a party who has notice that a document is relevant to litigation and *who proceeds to destroy the document* is more likely to have been threatened by the document than is a party in the same position who does not destroy the document. . . .
>
> The other rationale for the inference has to do with its prophylactic and punitive effects. Allowing the trier of fact to draw the inference presumably deters parties from *destroying relevant evidence* before it can be introduced at trial.

*Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991) (quoting *Nation-Wide Check Corp. v. Forest Hills Distribs., Inc.*, 692 F.2d 214, 218 (1st Cir. 1982)) (emphasis added).

The *Loops LLC v. Phoenix Trading, Inc.* case relied on by Abaxis does not state a different rule. In *Loops*, the court awarded adverse inference only after finding that "[t]he record shows that relevant requested documents either exist and are being withheld or existed during the pendency of this litigation and were lost or destroyed by Defendants." *Loops LLC v. Phoenix Trading, Inc.*, C08-01064 RSM, Dkt. No. 152, slip op. (attached as Ex. 17 to Carlson Declaration), at 1. The court made its findings "based on the deposition testimony summarized above and the remainder of the record" that showed that the specific documents at issue had existed but had "*not been produced.*" *Id.* at 7. Under these circumstances, the court concluded that although it was unclear whether these documents were being withheld or had been destroyed or lost, "the distinction is irrelevant." *Id.*

Here, there is not even an allegation of destruction of evidence. Nor has Abaxis identified any evidence in the record supporting its unfounded suggestion that Cepheid must somehow be withholding relevant evidence. Remarkably, Abaxis' argument is solely based on Cepheid's *production* of the evidence. As Cepheid informed Abaxis during the meet and confer, the documents identified by Abaxis (Rodriguez Decl. Exs. I and J) had nothing to do with bead-making, the only subject matter relevant to this lawsuit.[5]

---

[5] Abaxis makes much noise about CEPH0195478 (Rodriguez Decl. Ex. J), which includes a notation "Abaxis visit." Setting aside whether this "visit" was actually made (in which case, Abaxis surely has this information) or merely contemplated or suggested, the document is dated 1998, long before Cepheid started developing its first bead-making process.

1   The adverse inference Abaxis seeks mischaracterizes the documents and gives Abaxis an
2   unfair advantage. Cepheid should not be punished for being thorough with its production. The
3   documents speak for themselves, and Abaxis does not dispute that these documents have nothing
4   to do with the issues in this case. At trial, Abaxis is free to use the documents with appropriate
5   witnesses to try to establish whatever it wishes to establish.

For these reasons, Abaxis' Motion in Limine No. 4 should be denied.

## V. ABAXIS' MOTION IN LIMINE NO. 5 SHOULD BE DENIED

As Cepheid explained to Abaxis during the meet and confer and stated in the Joint Pretrial Statement, in July, Cepheid made beads for its Flu assay using the Beadulator process that historically had been made by the Beadmaster process, but has never sold these beads. (*See* Dkt. No. 225 at 20.)

This is not "new infringement." The Beadulator process used by Cepheid in July for its Flu assay is no different than the original Beadulator process that Cepheid had developed. Abaxis' contentions would have been the same as to any Beadulator products. Indeed, the parties agreed to streamline the trial by identifying a representative assay (the "Ba 4-Plex (Anthrax) assay product") for the Beadulator products. *See id.* at 9-10 ("an exemplar set of Cepheid's products may be presented and will represent the respective accused products"). Including the additional Flu assay lots (which were never sold) among the other Beadulator products at issue does not change the case.

As the parties agree, the Court's Order at the July 19, 2012 Case Management Conference limited Abaxis' infringement contentions concerning the Beadulator process and products and willfulness contentions to those based solely on documents and testimony produced by Cepheid on and after February 1, 2012. (*Id.* at 2 n.1.) Abaxis cannot be allowed to circumvent the Order under this "new infringement" theory. While Cepheid agreed that Abaxis could account for the new Flu assay in the present litigation, that is not ground for undoing the Court's July 20, 2012 Order.

---

Moreover, to the extent these document had any relevance to Abaxis' "willfulness" claim, this claim had only recently become part of the case, when the Court reversed in part the Magistrate Judge's prior rulings on July 19, 2012.

1   Indeed, Abaxis' proposal would be extremely confusing for the jury – it would invite otherwise-excluded material to be considered for the sole purpose of considering the willfulness of the production of lots of Flu assay beads that were never sold.  Thus, in addition to being inconsistent with the Court's July 20, 2012 Order, Abaxis' motion should also be denied under Rule 403, as being unduly prejudicial and probative of nothing.

For these reasons, Abaxis' Motion in Limine No. 5 should be denied.

Dated:  August 22, 2012				FISH & RICHARDSON P.C.

						By:  */s/ Steven C. Carlson*
						     Steven C. Carlson

						Attorneys for Defendant and Counterclaimant
						CEPHEID

*Additional counsel*

Brian J. Doyle (*pro hac vice* / bdoyle@fr.com)
FISH & RICHARDSON P.C.
601 Lexington Ave, 52nd Floor
New York, NY 10022
Telephone:  (212) 765-5070
Facsimile:  (212) 258-2291

Jacqueline Tio (*pro hac vice* / jtio@fr.com)
FISH & RICHARDSON P.C.
1180 Peachtree Street, NE, 21st Floor
Atlanta, GA 30309
Telephone: (404) 892-5005
Facsimile:   (404) 892-5002