1    COOLEY LLP
     RICARDO RODRIGUEZ (No. 173003) (rr@cooley.com)
2    BRYAN J. BOYLE (No. 253725) (bryan.boyle@cooley.com)
     LAM K. NGUYEN (No. 265285) (lnguyen@cooley.com)
3    Five Palo Alto Square
     3000 El Camino Real
4    Palo Alto, CA  94306-2155
     Tel:    (650) 843-5000
5    Fax:    (650) 857-0663

6    Attorneys for Plaintiff-Counterdefendant
     ABAXIS, INC.

7

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10                          SAN JOSE DIVISION

11

12   ABAXIS, INC.,                          Case No.  C 10-2840 LHK (HRL)

13                   Plaintiff-             **PLAINTIFF ABAXIS, INC.'S MOTIONS *IN***
                     Counterdefendant,      ***LIMINE***

14          v.

15   CEPHEID,                               **DEMAND FOR JURY TRIAL**

16                   Defendant-
                     Counterclaimant.

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

PLAINTIFF ABAXIS, INC.'S
MOTIONS *IN LIMINE*
CASE NO. C 10-2840 LHK (HRL)

# TABLE OF CONTENTS

**Page**

I. MOTION IN LIMINE 1:  EXCLUSION OF CEPHEID'S NON-INFRINGEMENT ARGUMENT RELATING TO THE 3% CLAIM LIMITATION ................................................................................................ 1

    A. Cepheid's Reliance on Its Non-Infringement Argument Precludes Assertion of the Attorney-Client Privilege on the Technical Development Details .......................................................................................... 1

        1. Cepheid's Decision to Rely on a Non-Infringement Defense Relating to the "CV" Requirement in Several Claims .............................. 1

        2. Cepheid Cannot Use the Privilege as a Sword and a Shield ...................... 2

        3. Additional Withheld Information Is Not Privileged ................................... 3

    B. Cepheid's Decision to Pursue the Design-Around Is Not Privileged ................... 4

    C. Cepheid's 3% Non-Infringement Argument Should Be Excluded ........................ 5

II. MOTION IN LIMINE 2:  EXCLUSION OF TESTIMONY BASED ON SELECTIVE DISCLOSURE OF CEPHEID'S BEADMASTER PROCESS ................... 6

    A. Cepheid's Alleged Design-Around Dispensing Process ......................................... 6

    B. Cepheid Should Not Be Able to Use the Protective Order as a Sword and Shield ..................................................................................................................... 6

    C. The Testimony Should Also Be Excluded as Misleading or Prejudicial, or Abaxis Should Be Permitted to Disclose the Process Details ................................ 8

III. MOTION IN LIMINE 3: EXCLUSION OF DISPARAGEMENT OF THE PATENT OFFICE ................................................................................................ 9

IV. MOTION IN LIMINE 4: ADVERSE INFERENCE DUE TO LATE PRODUCTION OF DOCUMENTS ......................................................................... 10

V. MOTION IN LIMINE 5: USE OF FULL DISCOVERY RECORD FOR NEW AND RECENT INFRINGEMENT .............................................................. 11

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i.

**PLAINTIFF ABAXIS, INC.'S
MOTIONS *IN LIMINE*
CASE NO. C 10-2840 LHK (HRL)**

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**CASES**

4

*Akiona v. United States,*
 938 F.2d 158 (9th Cir. 1991) ................................................................................................ 10

5

*Am. Med. Sys., Inc. v. Laser Peripherals, LLC,*
 712 F. Supp. 2d 885 (D. Minn. 2010) .................................................................................... 9

6

7

*Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.,*
 No. C 92-20643 RMW, 1995 WL 261407 (N.D. Cal. Apr. 25, 1995) ................................... 9

8

9

*Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.,*
 672 F.3d 1335 (Fed. Cir. 2012) ............................................................................................ 11

10

*Bausch & Lomb, Inc. v. Alcon Labs., Inc.,*
 79 F. Supp. 2d 252 (W.D.N.Y. 2000) .................................................................................... 9

11

12

*Bone Care Int'l LLC v. Pentech Pharms., Inc.,*
 No. 08-CV-1083, 2010 WL 3928598 (N.D. Ill. Oct. 1, 2010) .............................................. 10

13

*Georgia-Pacific Corp. v. U.S. Plywood Corp.,*
 318 F. Supp 1116 (S.D.N.Y. 1970) ........................................................................................ 5

14

15

*Glover v. BIC Corp.,*
 6 F.3d 1318 (9th Cir. 1993) ................................................................................................... 11

16

17

*In re Echostar Commc'ns Corp.,*
 448 F.3d 1294 (Fed. Cir. 2006) .............................................................................................. 2

18

19

*In re Google Inc.,*
 462 F. App'x 975 (Fed. Cir. 2012) ......................................................................................... 5

20

*In re Seagate Tech., LLC,*
 497 F.3d 1360 (Fed. Cir. 2007) .............................................................................................. 5

21

22

*Loops, LLC v. Phoenix Trading, Inc.,*
 C08-1064 RSM, Dkt. No. 152, slip op. (W.D. Wash. March 3, 2010) ................................ 10

23

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.,*
 523 F.3d 1051 (9th Cir. 2008) ................................................................................................ 8

24

25

*Siemens Med. Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.,*
 Civ. No. 07-190-SLR, 2008 U.S. Dist. LEXIS 63624 (D. Del. Aug. 20, 2008) ................... 7

26

27

*Tex. Digital Sys. v. Telegenix, Inc.,*
 308 F.3d 1193 (Fed. Cir. 2002) .............................................................................................. 8

28

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

ii.

**PLAINTIFF ABAXIS, INC.'S**
**MOTIONS *IN LIMINE***
**CASE NO. C 10-2840 LHK (HRL)**

*United States v. Amlani,*
169 F.3d 1189 (9th Cir. 1999) ........................................................................................ 7

**OTHER AUTHORITIES**

2-22 Fed. Trial Guide § 22.50 ............................................................................................. 8

Fed. R. Evid. 401, 402 ........................................................................................................ 9

Fed. R. Evid. 403 ........................................................................................................... 8, 9

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii.

PLAINTIFF ABAXIS, INC.'S
MOTIONS *IN LIMINE*
CASE NO. C 10-2840 LHK (HRL)

I.    **Motion in Limine 1:   Exclusion of Cepheid's Non-infringement Argument Relating to the 3% Claim Limitation**

    A.    **Cepheid's Reliance on Its Non-Infringement Argument Precludes Assertion of the Attorney-Client Privilege on the Technical Development Details.**

        1.    **Cepheid's Decision to Rely on a Non-Infringement Defense Relating to the "CV" Requirement in Several Claims.**

The patents in this case relate to reagent beads that are used in point-of-care diagnostic testing.[1] These reagent beads are within cartridges, mixed with a sample (usually blood) and then evaluated to provide indications of various metrics, such as blood cholesterol level. Accordingly, the reagent beads are critical to a point-of-care system, because they avoid the need to manually prepare the blood sample for analysis. Abaxis is pursuing infringement of two Cepheid processes: Cepheid's original process, on which it obtained a license and paid royalties[2], and a second alleged design-around, on which Cepheid has not paid any royalties.

Among Abaxis' patent claims in this case are process claims that recite, among other things, the precise dispensing of a reagent solution into liquid nitrogen, which results in a frozen bead, after which the frozen bead is further processed according to the claimed invention. Several of the patent claims require that the beads made by this process have a "CV" of 3% or less. The "CV" is a measure of the disparity of the weight of the beads; a 3% or less CV means that the coefficient of weight variation of the beads is less than 3%. This low weight variation helps to assure uniformity among the beads, to assure consistency in diagnostic results.

Cepheid is pursuing a non-infringement defense based on the 3% CV claim limitation, arguing that its redesigned process results in a CV of more than 3%. Abaxis, however, discovered that this alleged CV is nothing more than a mathematical abstraction. Cepheid makes its beads by dispensing at one volume, changing the dispense volume during a run, and then mixing the beads together in a container of liquid nitrogen. The evidence shows that beads made using each dispense volume do in fact achieve a CV of less than 3%--in fact, much less. But Cepheid argues that it can contrive a CV by physically and mathematically combining the

---

[1] *See, e.g.*:  http://www.abaxis.com/about_us/ and http://www.cepheid.com/company/about-us.
[2] Abaxis terminated the license to Cepheid, but Cepheid continues to use the original process.

Cooley LLP
Attorneys At Law
Palo Alto

1.

Plaintiff Abaxis, Inc.'s
Motions *in Limine*
Case No. C 10-2840 LHK (HRL)

1    weights of the beads made using the different dispense volumes.

2         Although Cepheid is relying on a non-infringement argument relating to the use of the two

3    sets of pumps dispensing at two precise volumes, it has refused to allow discovery into the

4    development and selection of these volumes, citing the attorney-client privilege.  Cepheid has

5    refused to disclose any development or activity prior to its decision to proceed with the final two

6    dispensing volumes that it ultimately chose.  The privilege wall Cepheid has erected includes

7    experiments conducted relating specifically to its two final dispense volumes (10 and 10.7

8    microliters), as well as experimentation relating to any other dispense volumes.  Cepheid claims

9    that it has disclosed information regarding the "final implementation" and "qualification" of its

10   process misses the point, because this is information that was generated only after Cepheid settled

11   on the 10/10.7 dispense volumes.[3]

12                      **2.       Cepheid Cannot Use the Privilege as a Sword and a Shield.**

13        Having chosen to rely on its dispense-volume argument, Cepheid cannot now shield its

14   development from disclosure.  Courts have long held that the privilege cannot be used as both a

15   sword and a shield, to allow a litigant to selectively disclose only the information that is helpful to

16   its case.  *See, e.g., In re Echostar Commc'ns Corp.*, 448 F.3d 1294, 1302 (Fed. Cir. 2006)

17   (discussing the policy of preventing "sword-and-shield litigation tactics" in the context of reliance

18   on advice of counsel).  That is precisely what Cepheid is trying to do here.[4] Cepheid argues that it

19   may withhold the development information because it is not relying on it.  But this merely begs

20   the question presented here:  Can Cepheid disclose only the information on which it relies?  The

21   doctrine of waiver and the policy of preventing sword and shield tactics both preclude such

22   selective disclosure.  Indeed, if Cepheid's arguments were accepted, companies could shield the

23   history of all their development processes by simply having them "directed by counsel."

24        Cepheid may argue that it received legal advice pertaining to the technical development

---

25   [3]  While Cepheid is correct that Abaxis questioned Cepheid's witnesses about Cepheid's
26   development work, questions related to the alternate dispense volumes and about documents
     reflecting that information were met with instructions not to answer.

27   [4]  Because Cepheid has not elected to rely on an opinion of counsel, Abaxis is not seeking the
28   legal advice provided to Cepheid regarding the final dispense volumes or the alternative dispense
     volumes that Cepheid tried.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

2.

PLAINTIFF ABAXIS, INC.'S
MOTIONS *IN LIMINE*
CASE NO. C 10-2840 LHK (HRL)

1   and the alternatives that it did not choose.  However, Cepheid no doubt received legal advice

2   regarding the final dispense volumes that it did choose, and which it has disclosed for the purpose

3   of pursuing its non-infringement defense.  Cepheid should not be able to selectively disclose only

4   the technical details that it will use to help its case, while denying Abaxis technical details and

5   development that will no doubt hurt Cepheid's position.   The documents that Cepheid has

6   "inadvertently" disclosed, and on which Abaxis challenges Cepheid's claim of privilege, show

7   that the development of Cepheid's argument can in fact be traced back to a mathematical

8   abstraction, and it was developed as such.   One document refers to "Creating a Bi-Modal

9   Population" by shifting the mathematical average, and makes reference to the "original true CV,"

10  which is less than 3%. (CEPH0059266.)  Another document Cepheid has attempted to clawback

11  shows that it was clear and known to Cepheid that each of the dispense volumes individually

12  were overwhelmingly resulting in CV values of less than 3%.   (CEPH0168047.)   This

13  information is highly relevant to the issue of infringement, as it confirms that Cepheid's

14  arguments are (1) just mathematical abstractions; and (2) the CV measurements are in fact less

15  than 3%, for both the current dispense volumes and the alternates that it tried.  Indeed, Cepheid's

16  own expert admitted that the Beadmaster results in a bimodal distribution[5] and Cepheid's own

17  documents show that that bimodal distribution was centered around two populations, each with a

18  CV of less than about 3%. (Rodriguez Decl., Ex. B at CEPH0059270-72.)

19          Accordingly, even if technical development guided by counsel would ordinarily be

20  privileged, here that privilege has been waived.   Cepheid should have produced all relevant

21  information consistent with this subject matter waiver.

22                  **3.       Additional Withheld Information Is Not Privileged.**

23          Even if some development information remained privileged, Cepheid still should have

24  produced technical information relating to the development that simply does not qualify for the

25  attorney-client privilege.  Abaxis respectfully requests that the Court review documents that were

26

27  _____

28  [5] Declaration of Ricardo Rodriguez in Support of Plaintiff Abaxis, Inc.'s Motions *In Limine*
    ("Rodriguez Decl."), Ex. A, Williams Depo. at 204:2-7.

Cooley LLP
Attorneys At Law
Palo Alto

3.

Plaintiff Abaxis, Inc.'s
Motions *in Limine*
Case No. C 10-2840 LHK (HRL)

allegedly "inadvertently" produced.[6]   A review of these documents shows that they contain technical information with no mention of legal advice, which is likely why they were "inadvertently" produced.[7] While Cepheid may have received legal advice relating to these experiments and analysis, it should not have withheld the technical experiments themselves, given its decision to rely on its dispense-volume argument.

### B.      Cepheid's Decision to Pursue the Design-Around Is Not Privileged.

Cepheid originally took a license to the Abaxis patents in 2005.  Documents produced by Cepheid in this case suggest that Cepheid has been pursuing a design-around option for a very long time.   For example, some documents project a drop-off or elimination of royalties. However, when witnesses have been asked about the basis for these expectations, they have been instructed not to answer on the basis of privilege.

Cepheid has proffered no reason why the decision to pursue a design-around is, by itself, legal advice.  While some legal advice relating to the patent laws and design-around may have been sought, the desire to pursue a non-infringing alternative, and the decision to do so, was a business decision.   Indeed, Cepheid's CEO testified obliquely that avoiding the payment of royalties was consistent with his overall goals for the company.  (Rodriguez Decl., Ex. C, Bishop Depo. at 40:13-41:22.)  In one email that Cepheid has "inadvertently" produced and clawed-back based on privilege, the CEO communicates the signing of the Abaxis license and that "we are proceeding with the rework program."   This email should not be withheld on the basis of privilege.

The decision to seek a design-around, and its timing, are highly relevant to willfulness and damages.   The evidence in this case shows that Cepheid wanted reagent beads that were

---

[6] In total, Cepheid has clawed back 30 documents, of which many address the development work at issue here. Abaxis has sequestered a copy of these documents pursuant to the Protective Order solely for use in raising this issue with the Court and is submitting them for review.  (Rodriguez Decl., Ex. K.)  When Cepheid was notified that Abaxis intended to file under seal the documents Cepheid had clawed back, Cepheid informed Abaxis that it could file them publicly. Cepheid has clearly waived any claim of privilege over the subject matter of these documents.
[7] Indeed, for one document that was clawed back, a virtually identical one was produced after Cepheid had already clawed the earlier-produced document back.

Cooley LLP
Attorneys At Law
Palo Alto

4.

Plaintiff Abaxis, Inc.'s
Motions in Limine
Case No. C 10-2840 LHK (HRL)

1  physically and functionally the same as the beads it was already making using its licensed

2  process.  In other words, Cepheid wanted to "have its cake and eat it too."  These constraints

3  made it extraordinarily difficult for Cepheid to seek a true design-around, and Abaxis contends

4  that it failed to achieve a design-around.  Given the many years that it took Cepheid to achieve its

5  purported design-around, it was not an easy task.  This shows the substantial risk Cepheid was

6  taking in trying to avoid Abaxis' patents, as well as the advantages of the invention over other

7  options.  *In re Seagate Tech., LLC*, 497 F.3d 1360, 1372 (Fed. Cir. 2007); *Georgia-Pacific Corp.*

8  *v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1131 (S.D.N.Y. 1970) (Factor 9); *In re Google Inc.*,

9  462 F. App'x 975, 977-78 (Fed. Cir. 2012).

10         **C.     Cepheid's 3% Non-Infringement Argument Should Be Excluded.**

11         Given the foregoing refusal to provide discoverable information, Cepheid's non-

12  infringement argument relating to the 3% claim limitation should be excluded.  As a result of

13  Abaxis' disclosure of its intent to seek exclusion of the 3% non-infringement argument, Cepheid

14  has recently offered to produce technical documents relating to the development of the 3%

15  limitation that it believes Abaxis contends are not privileged, and to provide a deposition on those

16  documents.  This offer, however, cannot undo the prejudice to Abaxis.  First, the offer simply

17  comes too late.  Trial is only a few weeks away, and Cepheid's proposal leaves Abaxis with no

18  ability to conduct follow-up discovery based on what it learns from either the documents or

19  depositions.  Second, Cepheid's proposal would merely reward it for its dilatory conduct.  As

20  discussed further in Abaxis' Motions in Limine 3 and 4, Cepheid continues to produce relevant

21  documents after the close of discovery including productions received on August 3, 6, 7, 9, 10, 16

22  and 20—the last one being barely more than a month before trial.  No doubt, if Abaxis were to

23  accept Cepheid's offer, there would be additional late productions in addition to the clawed back

24  documents.  Third, the offer does not address the waiver of privilege.  As set forth above,

25  Cepheid's decision to use the 3% non-infringement argument, on which it obviously received

26  legal advice, results in a subject matter waiver.  Cepheid's proposal would still allow it to

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

5.

PLAINTIFF ABAXIS, INC.'S
MOTIONS *IN LIMINE*
CASE NO. C 10-2840 LHK (HRL)

1   selectively retain documents that it viewed as privileged.[8]   Accordingly, for all these reasons, the

2   exclusion of the 3% non-infringement argument remains the appropriate remedy.

3   **II.    MOTION IN LIMINE 2:  EXCLUSION OF TESTIMONY BASED ON SELECTIVE DISCLOSURE OF CEPHEID'S BEADMASTER PROCESS**

4

5          **A.    Cepheid's Alleged Design-Around Dispensing Process.**

6          As set forth above, several of the asserted claims recite the use of liquid nitrogen or a

7   cryogenic liquid to freeze liquid reagent beads.   In an attempt to design around this claim

8   limitation, Cepheid's Beadmaster process uses a specially made metal plate in a process that was

9   designed to produce beads equivalent to the use of liquid nitrogen.  (Rodriguez Decl., Ex. C,

10  Bishop Depo. at 47:23-48:7, 70:14-71:10; *id.*, Ex. D, Levy Depo. at 92:3-18.)   Cepheid

11  accomplished this making of equivalent beads by, among other things: (1) using liquid nitrogen to

12  freeze the metal plate by submerging it; (2) designing the metal plate to have specialized round

13  dimples to result in round beads; (3) designing the metal plate to have a small cylindrical bore

14  underneath the dimples, which can hold liquid nitrogen during dispensing; (4) using the metal

15  plates for only a limited amount of time during dispensing; and (5) using liquid nitrogen again

16  after dispensing to dip the metal plates into, for further processing of the beads.    Cepheid has

17  designated as confidential the discovery in this case relating to this process.

18         **B.    Cepheid Should Not Be Able to Use the Protective Order as a Sword and Shield.**

19

20         Despite the confidential designation of the details of the Cepheid process, Cepheid's

21  counsel asked a number of Abaxis witnesses about the use of a cold plate instead of liquid

22  nitrogen, in order to try to elicit admissions that it would use in this case.  For example, Cepheid's

23

---

[8] In a letter to Judge Lloyd today, Cepheid asserted it was producing "responsive" documents and would provide a deposition.  (ECF No. 216.) On that basis, late this afternoon Judge Lloyd held that portion of the motion as moot, noting that Cepheid has agreed to produce documents that it initially asserted were privileged. (ECF No. 218.)  Abaxis received Cepheid's production this evening and thus has not yet been able to fully review it.  Cepheid's cover letter for the production indicates that it has maintained redactions based on privilege, which suggests it may also be withholding documents based on privilege and that Cepheid is not conceding a subject matter waiver.  (Rodriguez Decl., Ex. M.)  No such redactions, or the withholding of any documents, were identified in the letter to Judge Lloyd.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

6.

PLAINTIFF ABAXIS, INC.'S
MOTIONS *IN LIMINE*
CASE NO. C 10-2840 LHK (HRL)

1    counsel asked one witness "why is dropping onto a chilled substrate different than the approach
2    of dispensing directly into liquid nitrogen?"  (Rodriguez Decl., Ex. E, Yu Depo. at 25:12-14.)
3    Cepheid asked similar questions of several other witnesses.  (*Id.*, Ex. F, Ostoich Depo. at 31:1-
4    35:21; *id.*, Ex. G, Huc Depo. at 30:5-31:7; *id.*, Ex. L, Skieller Depo.  at  35:13-37:5; *id.*, Ex. H,
5    Chatterjee Depo. at 91:25-96:9.)  Notably, Cepheid asked these questions even of witnesses who
6    had no experience, recollection, or knowledge of the use of cold plates in this manner.  (*Id.*, Ex.
7    G, Huc Depo. at 30:5-10 ("Q: Do you, do you recall […] any efforts to drop the reagents onto a
8    chilled substrate instead of into liquid nitrogen?  A: I don't recall that."); *id.*, Ex. L, Skieller Depo.
9    at 35:13-23 ("Q: Yeah I've seen a document that relates to dispensing drops onto a – a cold sheet?
10   A: So I don't believe we did that at Abaxis."); *id.*, Ex. H, Chatterjee Depo. at 95:25-96:4.)

11        In asking these questions, Cepheid nowhere asked the witnesses to compare liquid
12   nitrogen to the actual Beadmaster plate and process.  Rather, Cepheid's counsel simply referred
13   generally to the use of a cold plate.  Abaxis could not, and still cannot disclose to the witnesses
14   the true details of Cepheid's process, given the confidentiality designation by Cepheid.  However,
15   Cepheid plainly intends to try to use its misleading and incomplete questions as well as the
16   witness' answers to support its argument of non-infringement for its actual process and metal
17   plate, not just the use of a cold plate.  Given this improper use of the protective order, Abaxis
18   asked Cepheid on December 28, 2011 to allow disclosure of its process to these witnesses.
19   Cepheid refused.

20        Principles of fundamental fairness dictate that "[a] party should not be allowed to use
21   confidential information as both a shield and a sword."  *Siemens Med. Solutions USA, Inc. v.*
22   *Saint-Gobain Ceramics & Plastics, Inc.*, Civ. No. 07-190-SLR, 2008 U.S. Dist. LEXIS 63624, at
23   *3-4 (D. Del. Aug. 20, 2008) ("If [a witness] is not permitted to share his work product with the
24   parties in [the] litigation, he should not be allowed to rely on his recollection of said work product
25   in [the] litigation").  Courts also prevent parties from using privileged information as a sword and
26   shield in the attorney-client context.  *United States v. Amlani*, 169 F.3d 1189, 1194-95 (9th Cir.
27   1999) (prohibiting defendant from asserting government disparagement of his attorney led him to
28   discharge the attorney, and subsequently invoking attorney-client privilege as to communications

Cooley LLP
Attorneys At Law
Palo Alto

7.

Plaintiff Abaxis, Inc.'s
Motions *in Limine*
Case No. C 10-2840 LHK (HRL)

1  relating to attorney substitutions).

2  These principles are applicable here.  Cepheid repeatedly asked deponents about "chilled

3  substrate[s]" without specifying whether they were dimpled or flat, or identifying any of the

4  details of its process.  Ms. Yu's deposition transcript reveals that she only addressed flat

5  substrates.  For example, she referenced "half dome" and "cookie type shaped" beads, which flat

6  substrates would likely produce.  (Rodriguez Decl., Ex. E, Yu Depo. at 22:1-26:14.)  By contrast,

7  because it was designed to be equivalent, Cepheid's process produces rounded beads.  Although

8  companies may shield their confidential information, they may not withhold that information to

9  distort testimony.

10  **C.**   **The Testimony Should Also Be Excluded as Misleading or Prejudicial, or
       Abaxis Should Be Permitted to Disclose the Process Details.**

11

12  Courts regularly exclude evidence when its probative value is substantially outweighed by

13  the risk that it will be misinterpreted by or will mislead the jury.  *Nationwide Transp. Fin. v. Cass*

14  *Info. Sys., Inc.*, 523 F.3d 1051, 1060 (9th Cir. 2008) (excluding testimony concerning UCC law,

15  because the UCC did not impose legal obligations on defendant and "may confuse or mislead the

16  jury"); Fed. R. Evid. 403.  Ambiguity "in critical details may render testimony confusing."  2-22

17  Fed. Trial Guide § 22.50 (citing *Tex. Digital Sys. v. Telegenix, Inc.*, 308 F.3d 1193, 1218 (Fed.

18  Cir. 2002) (witness provided uncertain testimony concerning date of public use in patent case:

19  "the witness was certain the devices were being sold 'prior to 1986' but couldn't remember if

20  they were sold as early as 1983").

21  Here, since Cepheid failed to apprise deponents of its technology, deponents likely

22  assumed the surface was flat, and that there were no other process changes that helped to make

23  the beads equivalent.  In fact, Ms. Yu, in response to Cepheid's counsel's question, made it clear

24  that she was talking about a flat surface, "And so it will freeze into – *it's not a bead because it*

25  *touched a flat*, so it's like a half dome."  (Rodriguez Decl., Ex. E, Yu Depo. at 23:13-15

26  (emphasis added).)  As stated above, Ms. Yu's discussion of "half dome" and "cookie type

27  shaped," forms when addressing "chilled substrate[s],"  further reveals her testimony only applies

28  to completely flat surfaces.  Thus, the answers are misleading for the purpose that Cepheid

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

8.

PLAINTIFF ABAXIS, INC.'S
MOTIONS *IN LIMINE*
CASE NO. C 10-2840 LHK (HRL)

1    intends to use them.

2              The testimony here may also be excluded when the danger of unfair prejudice

3    substantially outweighs its probative value.  Fed. R. Evid. 403.  Here, the deponents had no

4    opportunity to adequately evaluate whether Cepheid and Abaxis use similar or different

5    processes, because Cepheid marked confidential the details of its process.  This leaves Abaxis

6    unable to elicit the testimony that is actually probative: a comparison of Cephied's actual process.

7    Thus, the testimony should be excluded, or at a minimum, Abaxis should be permitted to disclose

8    Cepheid's actual process to these witnesses.

9    **III.    MOTION IN LIMINE 3: EXCLUSION OF DISPARAGEMENT OF THE PATENT OFFICE**

10             Abaxis requests that the Court preclude any evidence or arguments suggesting that the

11   PTO is overworked, backlogged, not competent, or otherwise not functioning in a proper manner.

12   Any such evidence is irrelevant and an improper subversion of the presumption of validity.  *See*

13   Fed. R. Evid. 401, 402; *Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.*,

14   No. C 92-20643 RMW, 1995 WL 261407, at *3 (N.D. Cal. Apr. 25, 1995) ("Testimony about

15   overwork, quotas, awards or promotions at the Patent Office, or the number of patents that issue

16   annually or insinuating that the Patent Office does not do its job properly is excluded. Such

17   evidence would be irrelevant speculation and would constitute an inappropriate attack on the

18   Patent Office.") (granting in part motion in limine to exclude testimony).  *See also Am. Med. Sys.,*

19   *Inc. v. Laser Peripherals, LLC*, 712 F. Supp. 2d 885, 903 (D. Minn. 2010) (granting patentee's

20   motion to exclude defendant's expert testimony that the "patent examiner 'has very limited access

21   to non-patent prior art' and 'does not leave the Patent Office to search for prior art nor does he or

22   she visit or telephone the inventor to request prior art from the inventor.'. . .  [On the grounds

23   that] [s]uch statements are inadmissible because they seek to call into question the statutory

24   presumption of validity . . . ."); *Bausch & Lomb, Inc. v. Alcon Labs., Inc.*, 79 F. Supp. 2d 252,

25   255-56 (W.D.N.Y. 2000) (excluding testimony about "the problems Examiners encounter with

26   the completeness or 'file integrity' of the [prior art repositories]," "the difficulties Examiners face

27   in discovering and obtaining prior art references other than patents" and testimony regarding "the

28   time constraints under which Examiners in the PTO must operate" on the grounds that such

9.

testimony is "generalized testimony about problems in the PTO that is not admissible") (internal citations and quotations omitted); *Bone Care Int'l LLC v. Pentech Pharms., Inc.*, No. 08-CV-1083, 2010 WL 3928598 (N.D. Ill. Oct. 1, 2010) (granting in part plaintiff's motion in limine, holding that defendant's expert would "not be permitted to offer generalized testimony about potential memory problems of examiners or other non-case specific testimony insinuating that the PTO does not do its job properly") (internal citation and quotation omitted).

## IV.  MOTION IN LIMINE 4: ADVERSE INFERENCE DUE TO LATE PRODUCTION OF DOCUMENTS

On August 7, 2012, long after the February 2012 close of discovery, Cepheid produced documents that show: (1) evaluation of the Abaxis products and market; and (2) a visit to Abaxis. These documents are dated 2004 and 1998 respectively and should have been produced long ago. (Rodriguez Decl., Exs. I and J.)  Abaxis asked many questions of witnesses regarding visits to Abaxis, and though some witnesses recalled visits, the many details such as the particular time of the visit had been forgotten.  Given the late production, the inability to seek testimony or follow-up discovery on these documents, and the questions raised about what other documents may exist, Abaxis is entitled to an adverse inference as a result of the late-produced documents.  *See Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991).  While the typical scenario for granting an adverse inference involves the destruction of evidence, these same rationales also apply where, like here, a party has withheld evidence.  *See  Loops, LLC v. Phoenix Trading, Inc.*, C08-1064 RSM, Dkt. No. 152, slip op. at 6 (W.D. Wash. March 3, 2010).  The fact that Cepheid ultimately produced at least some documents should be of no consequence.  To hold otherwise would reward Cepheid's late production of documents and would contravene the "prophylactic and punitive" rationale underlying the use of adverse inferences: "[a]llowing the trier of fact to draw the inference presumably deters parties from destroying relevant evidence before it can be introduced at trial." *Akiona*, 938 F.2d at 161.

Cepheid contends that these documents were produced as a result of a quality control check of its production.  But this does not eliminate the prejudice to Abaxis, nor does it explain why they were not produced earlier.  Furthermore, bad faith is not a requisite for an adverse

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

10.

PLAINTIFF ABAXIS, INC.'S
MOTIONS *IN LIMINE*
CASE NO. C 10-2840 LHK (HRL)

inference instruction.  *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993).  Abaxis thus requests that the Court provide Abaxis with the following instructions to the jury as established facts in this case:

(1) On or about August 2004, Cepheid had evaluated Abaxis' products and their commercial market; and

(2)  On or about June 1998, Cepheid evaluated Abaxis' instrument and discussed a visit to Abaxis.

## V.     MOTION IN LIMINE 5: USE OF FULL DISCOVERY RECORD FOR NEW AND RECENT INFRINGEMENT

Beginning on August 3, 2012, Cepheid produced documents showing that on or about June 2012, Cepheid made the decision to change the process for making the beads for its flu product from the Beadmaster process to the predecessor Beadulator process.  Counsel for Cepheid represented that: (1) flu beads were in fact made using the Beadulator process; (2) those beads were not sold; and (3) the flu product beads were returned to production by the Beadmaster process.  Counsel for Cepheid also represented that it was Cepheid's position that the alleged limited production of the flu beads by the Beadulator process was a part of this case.

This production of flu beads using the Beadulator process is a new infringement that did not exist until June 2012, was not revealed until August 2012, and thus could not have been part of Abaxis' infringement or willfulness contentions.  Thus, it is a new infringement subject to a new cause of action.  *See Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1345 (Fed. Cir. 2012) ("In patent cases, this court has applied the general rule that res judicata does not bar the assertion of new rights acquired during the action which might have been, but were not, litigated.") (internal quotations omitted). If brought as a new cause of action, this willful infringement would not be subject to the Court's order in this case limiting evidence of Beadulator infringement, or of willfulness.  *See id.* ("While a party may seek to pursue claims that accrue during the pendency of a lawsuit adjudicated in that lawsuit, the party is not required to do so, and res judicata will not be applied to such accruing claims if the party elects not to have them included in the action.").  Accordingly, if this infringement is to be part of the present case, as

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

11.

PLAINTIFF ABAXIS, INC.'S
MOTIONS *IN LIMINE*
CASE NO. C 10-2840 LHK (HRL)

Cepheid contends it is, this infringement also should not be subject to the Court's order in this case limiting evidence of Beadulator infringement.  To hold otherwise would improperly allow Cepheid to obtain the benefit of the Court's order for an entirely new cause of action.  Nothing in the purpose or text of the local rules permits the limitations on contentions to be transferred from one case to another.

Abaxis therefore requests that the Court hold that for the infringement resulting from the Beadulator production of the flu beads, there is no limitation on the evidence of infringement or willfulness.

Dated: August 20, 2012                    COOLEY LLP

by: _____/s/_____
                    Ricardo Rodriguez

Attorneys for Plaintiff-Counterdefendant
Abaxis, Inc.

Cooley LLP
Attorneys At Law
Palo Alto

12.

PLAINTIFF ABAXIS, INC.'S
MOTIONS *IN LIMINE*
CASE NO. C 10-2840 LHK (HRL)

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that counsel of record have consented to electronic service and are being served with a copy of this document electronically.


Dated:  August 20, 2012                         /s/ *Ricardo Rodriguez*
                                                                  Ricardo Rodriguez


1052950 /HN

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

13.

PLAINTIFF ABAXIS, INC.'S
MOTIONS *IN LIMINE*
CASE NO. C 10-2840 LHK (HRL)