UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| ABAXIS, INC., | ) | |
| Plaintiff, | ) | Case No.: 10-CV-2840-LHK |
| v. | ) | |
| CEPHEID, | ) | |
| Defendant. | ) | |

**PRELIMINARY JURY INSTRUCTIONS**

Dated: September 20, 2012

*Lucy H. Koh*
LUCY H. KOH
United States District Judge

## 1.  DUTY OF JURY

Ladies and gentlemen: You are now the jury in this case. It is my duty to instruct you on the law.

These instructions are preliminary instructions to help you understand the principles that apply to civil trials and to help you understand the evidence as you listen to it. You will be allowed to keep this set throughout the trial to which to refer. This set of instructions is not to be taken home and must remain in the jury room when you leave in the evenings. At the end of the trial, I will give you a final set of instructions. It is the final set of instructions which will govern your deliberations.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

## 2.  BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE

When a party has the burden of proof on any claim or defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

### 3.  BURDEN OF PROOF -  CLEAR AND CONVINCING EVIDENCE

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means you must be persuaded by the evidence that the claim or defense is highly probable. This is a higher standard of proof than proof by a preponderance of the evidence.

You should base your decision on all of the evidence, regardless of which party presented it.

### 4.   WHAT IS EVIDENCE

The evidence you are to consider in deciding what the facts are consists of:

      1. the sworn testimony of any witness;

      2. the exhibits which are received into evidence; and

      3. any facts to which the lawyers have agreed.

## 5. WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they will say in their opening statements, will say in their closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition sometimes testimony and exhibits are received only for a limited purpose; when I give a limiting instruction, you must follow it.

(4) Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

### 6.  EVIDENCE FOR LIMITED PURPOSE

Some evidence may be admitted for a limited purpose only.

When I instruct you that an item of evidence has been admitted for a limited purpose, you must consider it only for that limited purpose and for no other.

## 7.   DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

### 8.  RULING ON OBJECTIONS

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore the evidence. That means that when you are deciding the case, you must not consider the evidence that I told you to disregard.

### 9.  CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case and any bias or prejudice;

(5) whether other evidence contradicted the witness's testimony;

(6) the reasonableness of the witness's testimony in light of all the evidence; and

(7) any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

## 10. IMPEACHMENT EVIDENCE – WITNESS

The evidence that a witness lied under oath on a prior occasion may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

## 11. CONDUCT OF THE JURY

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

> Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via e-mail, text messaging, or any Internet chat room, blog, Web site or other feature. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

> Because you will receive all the evidence and legal instruction you properly may consider to return a verdict: do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.

The law requires these restrictions to ensure the parties have a fair trial based on the same evidence that each party has had an opportunity to address. A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over. If any juror is exposed to any outside information, please notify the court immediately.

### 12. NO TRANSCRIPT AVAILABLE / TAKING NOTES

During deliberations, you will have to make your decision based on what you recall of the evidence. You will not have a transcript of the trial. I urge you to pay close attention to the testimony as it is given.

If at any time you cannot hear or see the testimony, evidence, questions or arguments, let me know so that I can correct the problem.

If you wish, you may take notes to help you remember the evidence. If you do take notes, please keep them to yourself until you and your fellow jurors go to the jury room to decide the case. Do not let note-taking distract you. When you leave, your notes should be left in the jury room. No one will read your notes. They will be destroyed at the conclusion of the case.

Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of your fellow jurors.

### 13. STIPULATIONS OF FACT

The parties have agreed to certain facts that will be read to you. You should therefore treat these facts as having been proved.

1.  Abaxis is a California corporation with its principal place of business in Union City, California.

2.  Cepheid is a California corporation with its principal place of business in Sunnyvale, California.

3.  Venue is proper in this District. The Court has subject matter and personal jurisdictions over each of the parties.

4.  On May 9, 1995, the United States Patent and Trademark Office ("USPTO") issued the '732 patent, entitled "Reagent Compositions for Analytical Testing," naming Steven N. Buhl, Bhaskar Bhayani, Chi-Sou Yu, and Thuy N. Tang as inventors. The patent application leading to the issuance of the '732 patent (hereinafter "the '732 application") was filed on August 19, 1991. The term of the '732 patent expired on May 9, 2012.

5.  On April 29, 1997, the USPTO issued the '597 patent, entitled "Reagent Compositions for Analytical Testing," naming Steven N. Buhl, Terri Bogart, Tammy Burd, Bhaskar Bhayani, Christian Skieller, Chi-Sou Yu, Thuy N. Tang, Vladimir E. Ostoich, Branko Huč, and Carol T. Schembri as inventors. The patent application leading to the issuance of the '597 patent was filed on May 8, 1995, as a continuation of the '732 application. This Court has held that the term of the '597 patent expired on May 9, 2012.

6.  On July 7, 1998, the USPTO issued the '563 patent, entitled "Dried Chemical Compositions," naming Steven N. Buhl, Bhaskar Bhayani, Chi-Sou Yu, and Thuy N. Tang as inventors. The patent application leading to the issuance of the '563 patent (hereinafter "the '563 application") was filed on June 6, 1995, as a continuation of a patent application (now abandoned) that was a continuation-in-part of the '732 application. The term of the '563 patent will expire on July 7, 2015.

7.  On June 26, 2001, the USPTO issued the '684 patent, entitled "Dried Chemical Compositions," naming Steven N. Buhl, Bhaskar Bhayani, Chi-Sou Yu, and Thuy N. Tang as inventors. The patent application leading to the issuance of the '684 patent was filed on August 24, 1998 as a division of the '563 application. The term of the '684 patent expired on August 19, 2011.

8.  Abaxis owns all rights, title, and interest in United States patent numbers 5,413,732, 5,624,597, 5,776,563, and 6,251,684.

9.  On September 30, 2005, Abaxis and Cepheid entered into a license agreement (hereinafter "the License Agreement") whereby Abaxis granted Cepheid a license to certain patents, including the patents-in-suit.

10.  Cepheid paid Abaxis royalties under the License Agreement for products made by Cepheid's original bead-making process, the Beadulator process.

11.     In or about Fall 2009, Cepheid began producing some of its products, including Xpert MRSA, using a bead-making process called the Beadmaster process.  Cepheid did not pay royalties to Abaxis for products made by the Beadmaster process.  Cepheid continued to pay royalties for products made by the Beadulator process.

12.     On October 1, 2010, Abaxis terminated the License Agreement.

### 14. DEPOSITION IN LIEU OF LIVE TESTIMONY

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

You should consider deposition testimony, presented to you in court in lieu of live testimony, insofar as possible, in the same way as if the witness had been present to testify.

**15. USE OF INTERROGATORIES OF A PARTY**

Evidence may be presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side. These answers were given in writing and under oath, before the actual trial, in response to questions that were submitted in writing under established court procedures. You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

**16. EXPERT OPINION**

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions. Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

### 17. BENCH CONFERENCES AND RECESSES

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess. Please understand that while you are waiting, we are working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we will do what we can to keep the number and length of these conferences to a minimum. I may not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

## 18. WHAT A PATENT IS AND HOW ONE IS OBTAINED

This case involves a dispute relating to United States patents.  Before summarizing the positions of the parties and the legal issues involved in the dispute, let me take a moment to explain what a patent is and how one is obtained.

Patents are granted by the United States Patent and Trademark Office (sometimes called "the PTO").  A valid United States patent gives the patent owner the right to prevent others from making, using, offering to sell, or selling the patented invention within the United States, or from importing it into the United States, during the term of the patent without the patent holder's permission.  A violation of the patent owner's rights is called infringement.  The patent owner may try to enforce a patent against persons believed to be infringers by a lawsuit filed in federal court.

The process of obtaining a patent is called patent prosecution.  To obtain a patent one must file an application with the PTO.  The PTO is an agency of the federal government and employs trained examiners who review applications for patents.  The application includes what is called a "specification," which must contain a written description of the claimed invention telling what the invention is, how it works, how to make it and how to use it so others skilled in the field will know how to make or use it.  The specification concludes with one or more numbered sentences.  These are the patent "claims."  When the patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.

After the applicant files the application, a PTO patent examiner reviews the patent application to determine whether the claims are patentable and whether the specification adequately describes the invention claimed.  In examining a patent application, the patent examiner reviews records available to the PTO for what is referred to as "prior art."  The examiner also will review prior art if it is submitted to the PTO by the applicant.  Prior art is defined by law, and I will give you at a later time specific instructions as to what constitutes prior art.  In general, prior art includes things that existed before the claimed invention, that were publicly known, or used in a publicly accessible way in this country, or that were patented or described in a publication in any country.  The examiner considers, among other things, whether each claim defines an invention that is new, useful, and not obvious in view of the prior art.  A patent lists the prior art that the examiner considered; this list is called the "cited references."

After the prior art search and examination of the application, the patent examiner then informs the applicant in writing what the examiner has found and whether any claim is patentable, and thus will be "allowed."  This writing from the patent examiner is called an "office action."  If the examiner rejects the claims, the applicant then responds and sometimes changes the claims or submits new claims.  This process, which takes place only between the examiner and the patent applicant, may go back and forth for some time until the examiner is satisfied that the application and claims meet the requirements for a patent.  The papers generated during this time of communicating back and forth between the patent examiner and the applicant make up what is called the "prosecution history." All of this material becomes available to the public no later than the date when the patent issues.

The fact that the PTO grants a patent does not necessarily mean that any invention claimed in the patent, in fact, deserves the protection of a patent.  For example, the PTO may not have had

available to it all the information that will be presented to you.  A person accused of infringement has the right to argue here in federal court that a claimed invention in the patent is invalid because it does not meet the requirements for a patent.

I will play a 17-minute video called "An Introduction to the Patent System."  This video was prepared by the Federal Judicial Center, and further explains what patents are, how inventors get them, the role of the Patent and Trademark Office, and why patent disputes arise that require resolution by a jury.  The video uses a sample patent as an illustration.  Your Jury Notebooks contain this sample patent so you can refer to it when the video discusses it.

**19. PATENTS AT ISSUE**

There are four patents asserted in this case.

United States Patent Nos. 5,413,732, 5,624,597, 5,776,563, and 6,251,684.

Patents are often referred to by their last three digits, so these patents may be referred to in shorthand as the '732, '597, '563, and '684 patents.

## 20. SUMMARY OF PATENT CONTENTIONS

To help you follow the evidence, I will now give you a summary of the positions of the parties. I will then tell you what each side must prove to win on each of its contentions.

The parties in this case are Abaxis, Inc. and Cepheid. The case involves four United States patents obtained by several Abaxis employees, and transferred by them to Abaxis. For convenience, these patents will often be referred to as "the patents in suit."

The first patent involved in this case is United States Patent Number 5,413,732, which lists Steven N. Buhl, Bhaskar Bhayani, Chi-Sou Yu and Thuy N. Tang as the inventors.

The second patent involved in this case is United States Patent Number 5,624,597, which lists Steven N. Buhl, Terri Bogart, Tammy Burd, Bhaskar Bhayani, Christian Skieller, Chi-Sou Yu, Thuy N. Tang, Vladmir E. Ostoich, Branko Huc and Carol T. Schembri as the inventors.

The third patent involved in this case is United States Patent Number 5,776,563, which lists Steven N. Buhl, Bhaskar Bhayani, Chi-Sou Yu and Thuy N. Tang as the inventors.

The fourth patent involved in this case is United States Patent Number 6,251,684, which lists Steven N. Buhl, Bhaskar Bhayani, Chi-Sou Yu and Thuy N. Tang as the inventors.

Abaxis filed suit in this court seeking money damages from Cepheid for allegedly infringing certain claims of the patents in suit by making, using, selling, and offering to sell products that Abaxis argues are made with processes and compositions covered by several claims of the patents in suit. The Cepheid products and methods that are alleged to infringe are the "Beadulator" and "Beadmaster" processes and products made using the "Beadulator" and "Beadmaster" processes.

In particular, Abaxis alleges that Cepheid has infringed the following claims of Abaxis' patents:

- Claims 1, 2, 3, 4, and 6 of the '732 patent

- Claims 1, 2, 3, 4, 5, 7, 8, 9, 10, 13, 14, 16, 17, and 18 of the '597 patent

- Claims 1 and 3 of the '563 patent

- Claims 12 and 13 of the '684 patent

For convenience, the parties and I will often refer to these claims of Abaxis' patents as the "asserted claims."

Abaxis contends that Cepheid's infringement has been willful.

Cepheid denies that it has infringed the asserted claims of the patents in suit and denies that any alleged infringement is willful. Cepheid also argues that the asserted claims are invalid. Invalidity is a defense to infringement.

Cepheid also alleges that Abaxis wrongfully terminated the license to the patents in suit.

Your job will be to decide whether the asserted claims of the patents in suit have been infringed and whether those claims are invalid. If you decide that any asserted claim of the patents in suit has been infringed and is not invalid, you will then need to decide any money damages to be awarded to Abaxis to compensate it for the infringement. You will also need to make a finding as to whether the infringement was willful. If you decide that any infringement was willful, that decision should not affect any damage award you give. I will take willfulness into account later.

You may hear evidence that Cepheid has its own patents or that Cepheid improved on the patents in suit. While this evidence is relevant to some issues you will be asked to decide, a party can still infringe even if it has its own patents in the same area. You will be instructed after trial as to what, if any, relevance these facts have to the particular issues in this case. Meanwhile, please keep an open mind.

Before you decide whether Cepheid has infringed the asserted claims of the patents in suit or whether the claims are invalid, you will need to understand the patent claims. As I mentioned, the patent claims are numbered sentences at the end of the patent that describe the boundaries of the patent's protection. It is my job as judge to explain to you the meaning of any language in the claims that needs interpretation.

I have already determined the meaning of certain terms of the claims of some of the patents in suit. You will be asked to apply my definitions of these terms in this case. My definitions are in your Jury Notebooks. However, my interpretation of the language of the claims should not be taken as an indication that I have a view regarding issues such as infringement and invalidity. Those issues are yours to decide.

## 21. SUMMARY OF BREACH OF CONTRACT CONTENTIONS

Abaxis and Cepheid entered into a license agreement under which Cepheid paid Abaxis a license fee in the form of ongoing royalty payments in order to use the technologies covered by the patents in suit.

Abaxis claims that Cepheid breached this contract by ending its royalty payments to Abaxis. Abaxis also claims that Cepheid's breach of this contract caused harm to Abaxis for which Cepheid should pay.

Cepheid denies that it failed to comply with the provisions of the license agreement.   Cepheid claims that Abaxis wrongfully terminated the license.

## 22. OUTLINE OF TRIAL

The trial will now begin. First, each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show.

The presentation of evidence will then begin. Witnesses will take the witness stand and the documents will be offered and admitted into evidence. There are two standards of proof that you will apply to the evidence, depending on the issue you are deciding. On some issues, you must decide whether something is more likely true than not. On other issues you must use a higher standard and decide whether it is highly probable that something is true.

Abaxis will present its evidence on its contention that the asserted claims of the patents in suit have been and continue to be infringed by Cepheid and that the infringement has been and continues to be willful. These witnesses will be questioned by Abaxis' counsel in what is called direct examination. After the direct examination of a witness is completed, the opposing side has an opportunity to cross-examine the witness. To prove infringement of any claim, Abaxis must persuade you that it is more likely than not that Cepheid has infringed that claim. To persuade you that any infringement was willful, Abaxis must prove that it is highly probable that the infringement was willful.

After Abaxis has presented its witnesses, Cepheid will call its witnesses, who will also be examined and cross-examined. Cepheid will present its evidence that the asserted claims of the patents in suit are invalid. To prove invalidity of any claim, Cepheid must persuade you that it is highly probable that the claim is invalid. In addition to presenting its evidence of invalidity, Cepheid will put on evidence responding to Abaxis' infringement and willfulness contentions.

Abaxis will then return and will put on evidence responding to Cepheid's contention that the asserted claims of the patents in suit are invalid. Abaxis will also have the option to put on what is referred to as "rebuttal" evidence to any evidence offered by Cepheid of non infringement or lack of willfulness.

Finally, Cepheid will have the option to put on "rebuttal" evidence to any evidence offered by Abaxis on the validity of the claims of the patents in suit.

Because the evidence is introduced piecemeal, you need to keep an open mind as the evidence comes in and wait for all the evidence before you make any decisions. In other words, you should keep an open mind throughout the entire trial.

After the evidence has been presented, I will give you final instructions on the law that applies to the case and the attorneys will make closing arguments. Closing arguments are not evidence. After the instructions and closing arguments, you will then decide the case.